**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FEDERAL TREASURY ENTERPRISE
SOJUZPLODOIMPORT and OAO "MOSCOW
DISTILLERY CRISTALL,"

        *Plaintiffs,*

        *v.*

SPIRITS INTERNATIONAL B.V., SPI SPIRITS
LIMITED, SPI GROUP SA, YURI SHEFLER,
ALEXEY OLIYNIK, ALLIED DOMECQ
INTERNATIONAL HOLDING B.V., ALLIED
DOMECQ SPIRITS & WINE USA, INC.,
WILLIAM GRANT & SONS USA, WILLIAM
GRANT & SONS, INC., and STOLI GROUP
(USA) LLC,

        *Defendants.*

Civil Action No. 1:14-CV-00712 (SAS)

**ECF CASE**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' JOINT MOTION TO DISMISS

Eugene D. Gulland
Bingham B. Leverich
David M. Zionts
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004–2401
(202) 662–6000

*Attorneys for SPI Defendants*

Edward T. Colbert
KENYON & KENYON LLP
Kenyon & Kenyon LLP
1500 K Street, N.W.
Washington, D.C. 20005-1257
(202) 220–4280

*Attorneys for William Grant Defendants*

David H. Bernstein
Michael Schaper
Carl Micarelli
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909–6000

*Attorneys for Allied Domecq Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

PROCEDURAL BACKGROUND......................................................................... 3

    A.    Initial District Court Dismissal In 2006 And The First Appeal In 2010 ............... 3

    B.    The Third Amended Complaint And Dismissal In 2011 ....................................... 4

    C.    The Second Appeal And Affirmance Of The Dismissal ...................................... 6

    D.    New Complaint ........................................................................................... 7

THE RELEVANT FACTS ................................................................................... 8

    A.    Ownership Of The U.S. STOLICHNAYA Marks................................................ 8

    B.    The Russian Federation's Efforts To Re-Nationalize The Marks ....................... 10

ARGUMENT ...................................................................................................... 11

I.    FTE'S CLAIMS ARE BARRED BY RES JUDICATA. ................................. 11

    A.    After Ten Years Of Subjecting Defendants To Their "Artificially Constructed" Litigation, It Is Too Late For FTE To Attempt To Cure Its Standing Defect Through A New Assignment. ............................................... 11

    B.    None of FTE's Claims Survive.......................................................................... 17

II.    THE NEW ASSIGNMENT DOES NOT CURE FTE'S LACK OF STANDING. ......... 19

III.    FTE CANNOT ESTABLISH A DEFECT IN DEFENDANTS' CHAIN OF TITLE, AND THEREFORE CANNOT STATE A CLAIM.......................................... 21

IV.    FTE'S CLAIMS ARE TIME-BARRED. ....................................................... 23

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akhenaten v. Najee, LLC,*
    544 F. Supp. 2d 320 (S.D.N.Y. 2008)........................................................................18

*Anderson v. Rochester-Genesee Reg'l Transp. Auth.,*
    337 F.3d 201 (2d Cir. 2002)......................................................................................10

*Anheuser-Busch, Inc. v. Du Bois Brewing Co.,*
    175 F.2d 370 (3d Cir. 1949)......................................................................................24

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................................21, 22

*Aviation Software, Inc. v. United States,*
    101 Fed. Cl. 656 (2011) ............................................................................................18

*Browning Debenture Holders' Comm. v. DASA Corp.,*
    454 F. Supp. 88 (S.D.N.Y. 1978)..............................................................................14

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002)..................................................................................9, 11

*Charles Atlas, Ltd. v. DC Comics, Inc.,*
    112 F. Supp. 2d 330 (S.D.N.Y. 2000).......................................................................25

*Cieszkowska v. Gray Line New York,*
    295 F.3d 204 (2d Cir. 2002)......................................................................................17

*Conopco, Inc. v. Campbell Soup Co.,*
    95 F.3d 187 (2d Cir. 1996)........................................................................................24

*Cuban Cigar Brands N.V. v. Upmann Int'l, Inc.,*
    457 F. Supp. 1090 (S.D.N.Y. 1978), *aff'd,* 607 F.2d 995 (2d Cir. 1979)...............23

*EDP Med. Computer Sys., Inc. v. United States,*
    480 F.3d 621 (2d Cir. 2007)......................................................................................11

*Esquire Trade & Fin., Inc. v. CBQ, Inc.,*
    562 F.3d 516 (2d Cir. 2009)......................................................................................18

*Financial Matters, Inc. v. PepsiCo, Inc.,*
    No. 92 Civ. 7497, 1993 WL 378844 (S.D.N.Y. Sept. 24, 1993)...................9, 10, 23

*FTE v. Spirits Int'l N.V.* ("*FTE I*"),
    425 F. Supp. 2d 458 (S.D.N.Y. 2006)..........................................................3, 5, 10

*FTE v. Spirits Int'l N.V.* ("*FTE II*"),
    623 F.3d 61 (2d Cir. 2010)....................................................................4, 8, 17, 21

*FTE v. Spirits Int'l N.V.* ("*FTE II Summary Order*"),
    400 F. App'x 611 (2d Cir. 2010) ...............................................................4, 15, 22

*FTE v. Spirits Int'l B.V.* ("*FTE III*"),
    No. 04 CV 08510 (GBD), 2011 WL 4005321 (S.D.N.Y Sept. 1, 2011) ........................ *passim*

*FTE v. SPI Spirits Ltd.* ("*FTE IV*"),
    726 F.3d 62 (2d. Cir. 2013), *cert. denied*, 134 S. Ct. 1291 (2014) .................................. *passim*

*FTE v. SPI Spirits Ltd.*,
    134 S. Ct. 129 (2014).........................................................................................7

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*,
    93 F.3d 774 (Fed. Cir. 1996), *amended on reh'g in part*, 104 F.3d 1296 (Fed.
    Cir. 1996) ..................................................................................................12

*Gillig v. Nike, Inc.*,
    602 F.3d 1354 (Fed. Cir. 2010)..........................................................................13

*Greenlight Capital, Inc. v. GreenLight (Switz.) S.A.*,
    No. 04 Civ. 3136, 2005 WL 13682 (S.D.N.Y. Jan. 3, 2005)........................................25

*Gucci Am., Inc. v. Frontline Processing Corp.*,
    721 F. Supp. 2d 228 (S.D.N.Y. 2010)...................................................................19

*In re Sonus Networks, Inc., S'holder Derivative Litig.*,
    499 F.3d 47 (1st Cir. 2007)...............................................................................14

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982)......................................................................................12

*L-Tec Electronics Corp. v. Cougar Electronic Org., Inc.*,
    198 F.3d 85 (2d Cir. 1999)..............................................................................17

*Lennon v. Seaman*,
    63 F. Supp. 2d 428 (S.D.N.Y. 1999).....................................................................23

*Minvielle, LLC v. Atl. Ref. Co.*,
    No. 05-1312, 2007 WL 2668715 (W.D. La. Sept. 6, 2007), *aff'd sub. nom.*
    *Frank C. Minvielle LLC v. Atl. Ref. Co.*, 337 F. App'x 429 (5th Cir. 2009) ....................12-13

*Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC,*
    760 F. Supp. 2d 384 (S.D.N.Y. 2011)................................................................19

*Procter & Gamble Co. v. Paragon Trade Brands, Inc.,*
    917 F. Supp. 305 (D. Del. 1995).....................................................................12

*Samuels v. N. Telecom, Inc.,*
    942 F.2d 834 (2d Cir. 1991)..........................................................................17

*Sporn v. MCA Records, Inc.,*
    448 N.E.2d 1324 (N.Y. 1983).......................................................................22

*Stebbins v. Nationwide Mut. Ins. Co.,*
    528 F.2d 934 (4th Cir. 1975)...................................................................14, 16

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.,*
    220 F. Supp. 2d 289 (S.D.N.Y. 2002)............................................................18

**Statutes**

15 U.S.C. § 1051................................................................................................19

15 U.S.C. § 1114...........................................................................................4, 19

15 U.S.C. § 1117................................................................................................25

15 U.S.C. § 1125................................................................................................19

**Other Authorities**

18A Wright & Miller, Fed. Prac. & Proc. § 4437 (2d ed.) ...........................13

5 McCarthy on Trademarks and Unfair Competition § 30:109 (4th ed. 2014) ...........................19

6 McCarthy on Trademarks and Unfair Competition  § 31:26 (4th ed. 2014) ...........................24

Restatement (Second) of Judgments § 20 (1982) ...................................14, 15

Restatement (Second) of Judgments § 51 ...................................................18

All Defendants move to dismiss all Claims asserted against them.  The Defendants here are (i) Spirits International B.V., SPI Spirits Limited, SPI Group SA, STOLI Group (USA) LLC, Yuri Shefler, and Alexey Oliynik (collectively "SPI"); (ii) Allied Domecq International Holdings B.V. and Allied Domecq Spirits & Wines USA, Inc. (collectively "Allied Domecq"); and (iii) William Grant & Sons USA and William Grant & Sons, Inc. (collectively "William Grant").

## INTRODUCTION

Refusing to take "no" for an answer—not even from the Court of Appeals for the Second Circuit—plaintiffs seek to relitigate the same claims they have already lost.

For nearly 20 years, SPI has openly and publicly supplied STOLICHNAYA vodka for sale in the United States through contractual agreements, first with PepsiCo, then with Allied Domecq and William Grant, and now with its own affiliates.  As part of the Russian Federation's campaign to re-nationalize the rights to the valuable STOLICHNAYA trademarks, the Russian government-owned Federal Treasury Enterprise Sojuzplodoimport ("FTE") filed suit in 2004.

The Russian Federation "artificially constructed" that case by having FTE assert its interests so that the Federation could escape the risks and burdens of its own participation.  *FTE v. Spirits Int'l B.V.* ("*FTE III*"), No. 04 CV 08510 (GBD), 2011 WL 4005321 (S.D.N.Y Sept. 1, 2011).  This strategic gambit ultimately proved to be the lawsuit's undoing.  Despite being on notice of this defect since 2005 and facing pointed questions from the Second Circuit in 2010 about the Russian Federation's non-participation, FTE adhered to its chosen course.  Finally (and predictably), the District Court on remand and then the Second Circuit held that FTE lacked standing to assert the Russian Federation's purported rights in the marks.  Furthermore, the Second Circuit rejected FTE's belated request to allow it to amend its complaint and join the Russian Federation to the case, observing that this path had always been open to it, and now "it is

simply too late." *FTE v. SPI Spirits Ltd.* ("*FTE IV*"), 726 F.3d 62, 84 n.18 (2d. Cir. 2013), *cert. denied*, 134 S. Ct. 1291 (2014).  After ten years, the litigation was over.

FTE and the Russian Federation, however, now interpret this rebuke as little more than a dare and attempt an end-run around the Second Circuit's instructions.  They claim to have "cured" the defect in their case through the expedient of a new, putative assignment that could (and should) have been executed when Defendants put them on notice of the defect in 2005.  Nevertheless, on the strength of a long-overdue purported "cure," FTE has re-filed what is in effect the same case.  This attempted *fifth* bite at the apple must fail, for multiple reasons.

*First*, fundamental principles of res judicata foreclose FTE's attempt to relitigate its case, and cannot be circumvented through its belated attempt to "cure" a defect it has known about for nearly a decade.  *Second*, FTE's attempted end-run around the Second Circuit's decision does not even succeed on its own terms, because the Russian Federation maintains the same operational ownership interest in the marks that the Court deemed fatal to FTE's case.  *Third*, FTE has not stated a single claim on which relief can be granted, since all of its claims are based on an antecedent misappropriation claim that expired nineteen years ago.  And *finally*, if FTE's fiction that it is proceeding under rights newly acquired from the Russian Federation is to be entertained, the necessary corollary is that the Russian Federation sat on those claims in bad faith for over a decade (at a minimum), and they are therefore barred by laches.

The Second Circuit meant what it said: after ten years, four complaints, two appeals, denial of certiorari, and enormous expense, "it is simply too late" to breathe new life into this litigation.  For all of the reasons set forth below, all claims should be dismissed and Defendants awarded their fees and costs.

## PROCEDURAL BACKGROUND

Although Plaintiffs have initiated a new proceeding, they themselves have admitted that "[t]he newly filed case arises out of the same transactions and occurrences as the earlier filed case [*i.e.*, case No. 1:04-cv-08510 before Judge Daniels] and largely involves the same parties." (DE 3 (Plaintiffs' Related Case Statement).)[1]   The procedural history of the prior case is therefore critical to this motion.

### A.    Initial District Court Dismissal In 2006 And The First Appeal In 2010

FTE[2] first asserted the same core claims alleged in this case nearly ten years ago, on October 28, 2004.  (GBD 1.)  Thereafter, FTE twice amended its complaint.  (GBD 3, 46.)   The Second Amended Complaint ("SAC") asserted 15 claims against SPI and Allied Domecq, including trademark ownership, trademark infringement, trademark dilution, unfair competition, false designation of origin, misappropriation, fraud, unjust enrichment, and copyright infringement.  (Ex. 1 to the Declaration of Eugene Gulland ("Gulland Decl.").)  Defendants moved to dismiss the SAC on several grounds, including that the marks were incontestable, and that FTE did not claim to be the owner of the marks and so lacked standing to assert trademark infringement and related claims.

Judge Daniels dismissed all but two claims in the SAC (which FTE then dismissed with prejudice (GBD 123)).  *FTE v. Spirits Int'l N.V.* ("*FTE I*"), 425 F. Supp. 2d 458 (S.D.N.Y. 2006).  The bulk of FTE's claims were dismissed for failure to plead any valid ground for

---

[1] "DE" refers to the docket entry number of the cited pleading in this matter.  "GBD" refers to the docket entry number of the cited pleading from the earlier proceedings before Judge George B. Daniels.

[2] Plaintiff Cristall's "rights as a plaintiff are purely derivative of those held by FTE, and FTE may not grant rights greater than its own," so any claim that is dismissed as to FTE must also be dismissed as to Cristall.  *FTE IV*, 726 F.3d at 66.  Accordingly, Defendants will refer only to FTE unless otherwise appropriate.

challenging Allied Domecq's incontestable rights in the marks.  *Id.* at 470–71.  The Court also observed that "there is no allegation that the Russian Federation *has ever purported to assign to FTE* the rights in the STOLICHNAYA trademarks."  *Id.* at 475 (emphasis added).

FTE appealed and the Second Circuit affirmed in part and remanded in part.  *FTE v. Spirits Int'l N.V.* ("*FTE II*"), 623 F.3d 61 (2d Cir. 2010).  The Second Circuit (i) affirmed dismissal of the fraud and unjust enrichment claims, *FTE v. Spirits Int'l N.V.* ("*FTE II Summary Order*"), 400 F. App'x 611, 614 (2d Cir. 2010), and (ii) remanded the remaining trademark, unfair competition, and misappropriation claims with an instruction that the district court treat "the question of the validity of the [January 2001 Pepsi-Co–Allied Domecq] assignment [as] antecedent to the question of incontestability" and the Lanham Act claims.  *FTE II*, 623 F.3d at 69.

The Second Circuit also pointedly noted the Russian Federation's failure to appear as a party plaintiff, and questioned FTE's ownership of the marks.  *FTE II Summary Order*, 400 F. App'x at 614. The Second Circuit instructed the district court "to determine, in the first instance, whether the required parties are before it."  *Id.*

B.      **The Third Amended Complaint And Dismissal In 2011**

On remand, Judge Daniels allowed FTE to amend its complaint for a third time.  The Third Amended Complaint ("TAC") narrowed FTE's claims, dropping its claims for fraud and unjust enrichment (dismissed on the merits in *FTE I* and affirmed by the Second Circuit) and its unfair competition and false designation of origin claims (voluntarily dismissed).  (Ex. 2 to Gulland Decl.; *see also* Ex. 3 to Gulland Decl. (GBD 123 ("Notice of Dismissal")).)  FTE also abandoned its claims for federal trademark dilution (SAC Claims 7 and 12), contributory unfair competition and false designation of origin (SAC Claim 8), and copyright infringement (SAC Claim 14).  It retained only six claims: federal trademark infringement under Section 32(1) of the

4

Lanham Act, 15 U.S.C. § 1114(1) (TAC Claims 1–2), declaratory and remedial relief based on FTE's alleged ownership of the U.S. STOLICHNAYA marks (TAC Claims 3–5), and common-law misappropriation (TAC Claim 6). The William Grant parties, which replaced Allied Domecq as SPI's U.S. distributors, were also added as defendants, and a new plaintiff, OAO "Moscow Distillery Cristall," replaced FTE's former licensees.

The TAC was also notable for what it did not allege. Even though the Defendants had been asserting standing objections since 2005, and despite the Second Circuit's skepticism that FTE was the proper party to assert the Russian Federation's alleged ownership rights, FTE and the Russian Federation adhered to their original litigation strategy of refusing to subject the Russian Federation to the Court's jurisdiction by joining it as a party. The TAC added no new allegations to support FTE's claim to be the proper party and did not allege any additional facts purporting to show that FTE had acquired the Russian Federation's rights.

Defendants moved to dismiss the TAC on several grounds. On September 1, 2011, Judge Daniels dismissed for lack of standing the Lanham Act and declaratory judgment claims (TAC Claims 1–5) and declined to exercise supplemental jurisdiction over the remaining common-law misappropriation claim (TAC Claim 6). *FTE III*, 2011 WL 4005321. The Court found that the Russian Federation's failure to join the litigation or to assign all of its rights—a fact it had noted in 2006, *FTE I*, 425 F. Supp. 2d at 475—was a fatal deficiency depriving FTE of standing to assert the Russian Federation's rights. *FTE III*, 2011 WL 4005321, at *5–7. Independent of the dismissal for lack of standing, Judge Daniels held that "[c]learly, the Russian Federation is an indispensable party," noting that the Russian Federation had attempted to "shield[]" itself from the obligations of a party "[b]y this artificially constructed litigation." *Id.* at *8 n.16.

### C.      The Second Appeal And Affirmance Of The Dismissal

On August 5, 2013, the Second Circuit affirmed the dismissal of all claims.  *FTE IV*, 726 F.3d 62.  The Second Circuit rejected FTE's argument that it was an assignee of the Russian Federation, explaining that (i) neither the TAC nor "documents incorporated into the complaint by reference and relied on by the plaintiffs in bringing suit" were sufficient to support an assignment (*id.* at 73), and (ii) "[e]ven if [the Court] were to treat the [Lanham] Act's formal writing requirement as potentially satisfied by aspects of [FTE's] Charter and the 2002 and 2005 decrees, those documents leave the Russian Federation with not only ownership, but simply too great an operational interest in the Marks" for FTE to be deemed an assignee (*id.* at 75).  The Court relied on the fact that "[t]he Charter expressly *prohibits* FTE from alienating or otherwise disposing of any property assigned to it by right of operative administration, and allows the Russian Federation to impound property transferred to FTE and to 'wind-up' FTE."  *Id.* at 77 (emphasis in original).  In short, FTE lacked standing as an assignee because its Charter "expressly reserve[s] to the Russian Federation certain rights that are generally inherent in the concept of ownership."  *Id.*

The Second Circuit also rejected FTE's argument that it was a "legal representative" of the Russian Federation, concluding that FTE could not serve as a "legal representative" because it could not "demonstrate both its legal authority to represent the [trademark] owner and that the trademark holder is legally incapable of representing itself."  *Id.* at 82.  With respect to the latter requirement, the Second Circuit noted that "in neither the original nor the operative complaint did FTE allege that the Russian Federation was incapable of bringing this suit," and "on appeal, FTE appears to acknowledge that the Russian Federation *could* appear."  *Id.*

Finally, the Second Circuit rejected FTE's request to remand the case to allow FTE to add the Russian Federation as a plaintiff in order to cure the standing defects that existed since the case was first filed nine years earlier:

> FTE has had ample time since 2004, when the original complaint was filed, to join the Russian Federation as a party and has failed to do so.  As early as July 2005, defendants argued that FTE's complaint should be dismissed for failure to join the Russian Federation.  Further, as described above, our October 2010 summary order expressed concerns about whether the Russian Federation should be joined in this litigation, *see* 400 Fed. Appx. at 614, and yet the Third Amended Complaint did not add the Russian Federation as a plaintiff.  *It is simply too late.*

*Id.* at 84 n.18 (emphasis added).

On February 24, 2014, the Supreme Court denied FTE's petition for certiorari.  *FTE v. SPI Spirits Ltd.*, 134 S. Ct. 129 (2014).

### D.    New Complaint

On February 4, 2014, FTE filed this action.  Once again, the Russian Federation is absent except for its role behind the scenes.

The new complaint asserts eleven claims.  All are premised on the same core allegations pled in the SAC and TAC: that Defendants have engaged in "unlawful misappropriation and unauthorized commercial exploitation" of the STOLICHNAYA trademarks.  (*Compare* Compl. ¶ 1 *with* SAC ¶ 1, TAC ¶ 1.)[3]    Moreover, with two exceptions—Claim 4 (common law trademark infringement) and Claim 6 (state trademark dilution), both of which are mere derivatives of previously pled, parallel federal claims—all of the claims asserted in the new complaint were previously alleged and dismissed with prejudice, or were abandoned.

Trademark Ownership Claims:    Claims 1, 7, 10, and 11 for federal trademark infringement and related claims for rectification and cancellation are virtually identical to TAC

---

[3] The factual background for the alleged misappropriation, described below, is also unchanged.

Claims 1, 2, 4, and 5, all of which were dismissed with prejudice by Judge Daniels, and affirmed by the Second Circuit.  Moreover, Claims 10 and 11 (for rectification and cancellation) mirror TAC Claims 4 and 5, which were dismissed as to Allied Domecq and William Grant for the additional reason that these defendants have claimed no present ownership interest in the marks.  *FTE III*, 2011 WL 4005321, at *8 n.17.  FTE did not appeal that holding.

Unfair Competition Claims:  Claims 2 and 5 for federal and common law unfair competition and false designation of origin are virtually identical to SAC Claims 5 and 13, which FTE voluntarily dismissed with prejudice to take the first appeal.  (GBD 123.)  Similarly, Claim 8 for contributory federal unfair competition is virtually identical to SAC Claim 8, which was derivative of the direct unfair competition that FTE dismissed.

Trademark Dilution Claim:  Claim 3 for federal trademark dilution is virtually identical to SAC Claim 12, which FTE also voluntarily abandoned after the Second Circuit remanded.

## THE RELEVANT FACTS

### A.    Ownership Of The U.S. STOLICHNAYA Marks

This case involves a dispute about ownership of the U.S. STOLICHNAYA marks following the collapse of the Soviet Union.  The STOLICHNAYA trademark was first registered in the United States in 1969 by a Soviet state-owned enterprise, which was later reorganized into the All-Union Foreign Economic Association Sojuzplodoimport ("VVO-SPI").  (Compl. ¶¶ 24–29.)  Under an agreement entered on June 19, 1991 (the "June 1991 Agreement"), VVO-SPI assigned the U.S. rights in the STOLICHNAYA mark and other marks to PepsiCo; PepsiCo agreed to re-assign the marks to VVO-SPI at the end of a ten-year term, or at the request of the Soviet Union.  (TAC ¶ 85; *see* Compl. ¶¶ 29, 39; *FTE II*, 623 F.3d at 64 n.3; Ex. 4 to Gulland

Decl. (GBD 50, Ex. 1, ¶ 4).)  PepsiCo recorded the assignment with the USPTO on June 27, 1991 (Reel/Frame No. 0793/0750).[4]

Plaintiffs allege that after the assignment of the U.S. marks to PepsiCo (*see* TAC ¶¶ 85-90), and during the "chaos" of the Soviet Union's collapse in 1991-1992 (Compl. ¶ 3), VVO-SPI's staff "conspired to make it appear that VVO-SPI (a state-controlled entity) had been lawfully transformed into a private joint stock company by creating a private company using a name, VAO-SPI, nearly identical to VVO-SPI, and by asserting in VAO-SPI's corporate charter that it was VVO-SPI's successor."  (Compl. ¶ 35.)  As FTE has previously acknowledged, in January 1992 VAO-SPI registered with the Moscow Registration Chamber under a corporate charter confirming it as the legal successor to VVO-SPI.  (TAC ¶¶ 37, 43, 48.)

In February 1992, VAO-SPI and PepsiCo entered an Addendum to the June 1991 Agreement, confirming VAO-SPI as the legal successor to VVO-SPI, and terminating the Russian government's right to request reassignment of the marks (TAC ¶ 90; Ex. 4 to Gulland Decl. (GBD 50, Ex. 2)).  In 1993, this Court rejected a contention that VAO-SPI was not VVO-SPI's legitimate corporate successor.  *Financial Matters, Inc. v. PepsiCo, Inc.*, No. 92 Civ. 7497, 1993 WL 378844, at *2 & n.4, *8 (S.D.N.Y. Sept. 24, 1993).  A supplemental agreement in 1994 between VAO-SPI and PepsiCo confirmed VAO-SPI's reversionary rights in the marks.  (TAC ¶ 91 & Ex. A.)  During this period and through 2000, PepsiCo sold vodka supplied by VAO-SPI and its successors, actively and openly using the STOLICHNAYA marks without protest from FTE, its predecessors, or the Russian Federation.

---

[4] The June 1991 Agreement expressly states that VVO-SPI "assigns" the marks to PepsiCo.  (Ex. 4 to Gulland Decl. (GBD 50, Ex. 1, ¶ 1).)  The Court may rely on that document as integral to the complaint, and disregard plaintiffs' mischaracterization of the Agreement as involving a "license" (Compl. ¶ 29).  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

In November 2000, SPI Spirits and Spirits International (hereinafter "SPI" for simplicity), as successors to the rights of VAO-SPI, entered into an agreement with Allied Domecq for the distribution of STOLICHNAYA products.  (Compl. ¶ 38; TAC ¶ 93.)  As the owner of the reversionary rights to the marks, SPI caused PepsiCo to assign the marks to Allied Domecq on January 1, 2001.  (Compl. ¶ 39; TAC ¶ 94.)  The assignment was recorded with the USPTO on January 4, 2001 (Reel/Frame No. 2170/0498).  In 2008, Allied Domecq assigned the marks to SPI (TAC ¶¶ 106, 108; USPTO Reel/Frame No. 3828/0485), which granted William Grant an exclusive license to use the marks under a distribution agreement (Compl. ¶ 48; TAC ¶ 109).  On January 1, 2014, STOLI Group (USA) LLC ("STOLI Group") became the authorized U.S. distributor of STOLICHNAYA products.  (Compl. ¶ 52.)

### B.     The Russian Federation's Efforts To Re-Nationalize The Marks

In 2000, shortly after Vladimir Putin became Acting President, the Russian Federation "decided to re-nationalize the rights to STOLICHNAYA trademarks."  *FTE I*, 425 F. Supp. 2d at 461.  The Russian Federation established FTE in 2001 specifically "to [r]ecover" these marks.  SAC at 26; *FTE I*, 425 F. Supp. 2d at 461.  These decisions (and the alleged "discovery" that led to them) came nearly a decade after the collapse of the Soviet Union and the public registration of VAO-SPI as the legal successor to VVO-SPI, and some seven years after the *Financial Matters* case disposed of previous challenges to the legality of this succession.

Consistent with the SAC, TAC, and FTE's Charter,[5] FTE alleges that it "is an economic entity owned by the Russian Federation organized and existing under the laws of Russia . . . and

---

[5] Although the Charter is not attached to the current complaint, the Court may take judicial notice of it because (i) FTE attached it to the TAC (Ex. N), and this Court and the Second Circuit expressly construed and relied on it, *see, e.g.*, *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2002) (court may take judicial notice of record of prior case (continued…)

was formed by the Russian Federation in December 2001 to assume operations and functions formerly performed by VVO-SPI." (Compl. ¶ 7.)  Unlike the SAC and TAC, however, the new complaint alleges that FTE—not the Russian Federation—owns the marks.  (Compl. ¶ 68.) More specifically, FTE alleges that, in an effort "to rectify its lack of standing" in the earlier proceedings (Compl. ¶ 66), it has obtained an "assignment" from the Russian Federation, in which "the Russian Federation assigned its right, title and interest in the STOLICHNAYA Marks in the United States to FTE, as well as all of the Russian Federation's claims against Defendants."  (Compl. ¶ 7 & Ex. A.)  The putative assignment states that its purpose is to "clarify and ensure beyond any doubt" that FTE has "good title," while adhering to the position that FTE "already ha[d] exclusive rights" in the marks.  (Compl. Ex. A.)

## ARGUMENT

## I.   FTE'S CLAIMS ARE BARRED BY RES JUDICATA.

### A.   After Ten Years Of Subjecting Defendants To Their "Artificially Constructed" Litigation, It Is Too Late For FTE To Attempt To Cure Its Standing Defect Through A New Assignment.

The doctrine of res judicata, or claim preclusion, "bars later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotation marks and citation omitted).  The dismissal of FTE's prior action was plainly issued by a court of competent jurisdiction, involved the same parties or their privies, and involved the same, and closely related, causes of action.  (*See* DE 3 (Related Case Statement).)  FTE

---

involving same parties), and (ii) the Charter is undisputedly the source of FTE's alleged authority and thus "'integral' to the complaint," *Chambers*, 282 F.3d at 153.

presumes, however, that the prior judgment against it was not "on the merits," and that by arranging for the Russian Federation to "rectify its lack of standing," FTE can escape the res judicata effect of the dismissal.  (Compl. ¶ 66.)  It cannot, for at least two reasons.

*First*, when prior claims are dismissed on jurisdictional grounds (as here), that judgment still has preclusive effect against attempts to relitigate the same jurisdictional question.  *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment.  It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal.").  A belated attempt to effect an assignment to cure a previous standing defect does not create a "new" basis for standing sufficient to override the res judicata effect of the previous judgment.  That is particularly so where, as here, the deficiency in standing has been a contested issue in the litigation for nearly a decade.

Even outside the context of FTE's "artificial" attempt to game the judicial system (*FTE III*, 2011 WL 4005321, at *8 n.16), courts have resisted the use of belated assignments to overturn prior litigation results.  A "*nunc pro tunc* assignment of patent and trademark rights" cannot cure a pre-existing standing defect, because "'parties should possess rights before seeking to have them vindicated in court.'"  *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779–80 (Fed. Cir. 1996), *amended on reh'g in part*, 104 F.3d 1296 (Fed. Cir. 1996) (quoting *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305 (D. Del. 1995)).

Indeed, one court has specifically rejected the notion that amending a prior assignment "cures the res judicata effect of the prior judgment," finding no persuasive authority for the proposition that "lack of standing/jurisdiction can be cured by a post-judgment attempt to confer

standing to the same party who was previously adjudged to be without standing." *Minvielle, LLC v. Atl. Ref. Co.*, No. 05-1312, 2007 WL 2668715, at *6 (W.D. La. Sept. 6, 2007), *aff'd sub. nom. Frank C. Minvielle LLC v. Atl. Ref. Co.*, 337 F. App'x 429 (5th Cir. 2009).

In this case, the Russian Federation has for years sought to pursue its supposed rights through FTE, while avoiding subjecting itself to this Court's jurisdiction. Only after being "adjudged to be without standing," first by Judge Daniels and then by the Second Circuit, did FTE seek to cure this defect through "a post-judgment attempt to confer standing." This *post hoc* attempt to avoid the res judicata effect of the prior dismissal cannot succeed.[6]

*Second*, even if a post-judgment assignment could in theory cure the defect in a prior action, and even if *this* assignment could cure the defect in FTE's case (*but see infra* Section II), res judicata principles nonetheless bar relitigation where, as here, FTE could easily have cured the defect earlier, and prejudiced the Defendants by failing to do so.

The leading treatise on federal procedure explains that "it has been recognized that special circumstances may make it 'manifestly unfair' to permit a second action after satisfying a precondition that easily could have been satisfied at the time of the prior action." 18A Wright &

---

[6] Moreover, the post-judgment assignment did not genuinely seek to "confer any new rights" on FTE, but instead "purport[s] only to clarify the original intentions of the parties." *Frank C. Minvielle LLC*, 337 F. App'x at 432. The new "assignment" expressly states that FTE "*already* has exclusive rights" in the marks (including the right to "hold" them), and that its purpose is simply to "*clarify* and ensure beyond any doubt" that FTE has "good title." (Compl. Ex. A (emphases added).)

The sole case of which Defendants are aware that allowed a second assignment to defeat the res judicata effect of a judgment is distinguishable. In *Gillig v. Nike, Inc.*, 602 F.3d 1354 (Fed. Cir. 2010), the plaintiff initially relied on a defective assignment, but quickly obtained a separate assignment to cure the defect—well before any court had ruled on the original claim. *Id.* at 1357. A second action was filed not because the plaintiff attempted to cure standing post-judgment (as in *Minvielle* and here), but simply because the district court in the first action exercised its discretion not to allow the complaint to be amended. *Id.* *Gillig* also did not involve a persistent refusal to cure the defect (despite notice of it), at great expense to the parties.

Miller, Fed. Prac. & Proc. § 4437 (2d ed.); Restatement (Second) of Judgments § 20, cmt. n (1982) (it may be "plainly unfair to subject the defendant to a second action" after the plaintiff corrects the defect in its case). "It would clearly be unfair to burden [the defendant] with a second action when the fact that the first action was not decided on the merits is due solely to [the plaintiff's] intentional disregard of [a] statutory precondition [to suit]." *Stebbins v. Nationwide Mut. Ins. Co.*, 528 F.2d 934, 938 (4th Cir. 1975); *see also In re Sonus Networks, Inc., S'holder Derivative Litig.*, 499 F.3d 47, 62 n.8 (1st Cir. 2007) (suggesting that preconditions to suit may not be cured post-judgment "when the plaintiff's failure to satisfy a precondition before bringing the first suit prejudices the defendants, making claim preclusion appropriate"); *Browning Debenture Holders' Comm. v. DASA Corp.*, 454 F. Supp. 88, 98 (S.D.N.Y. 1978) (after dismissal of first case for failure to post bond, it did "not matter whether there has been a judgment on the merits in this court or not," because the equitable result was to "spare [the defendant] from further harassment at the hands of a plaintiff who has already caused it to spend six years litigating frivolous claims and bad-faith motions").

If this rule is to have any force, it must bar FTE's attempt to take a fifth bite at the apple. The Russian Federation—the "owne[r]" of FTE (Compl. ¶ 7)—has for years tried to pursue its claims through FTE without relinquishing its rights as the alleged "true owner" of the STOLICHNAYA marks. That is not speculation or characterization—it was Judge Daniels' considered conclusion: "the Russian Federation . . . artificially constructed [this] litigation" in order to "shield[] itself" from the consequences of pursuing litigation, such as opening itself up to discovery. *FTE III*, 2011 WL 4005321, at *8 n.16. Defendants—and the judiciary—spent a decade's worth of time and resources litigating this case based on the way FTE and the Russian Federation had "artificially constructed" it. Having elected to pursue this strategy, FTE and the

Russian Federation cannot wipe the slate clean and "subject the [D]efendant[s] to a second action."  Restatement (Second) of Judgments § 20, cmt. n.

The unfairness of permitting this duplicative action is heightened by FTE's refusal to obtain the purported assignment earlier, despite repeated opportunities to do so.  Defendants first raised FTE's lack of standing to assert the Russian Federation's alleged rights *in 2005*.  (*See* Ex. 5 to Gulland Decl. (GBD 51 at 14–15).)  More specifically, in moving to dismiss the SAC, Defendants pointed out that FTE "fail[ed] to plead any facts suggesting that either the Russian Federation or FGUP [FTE's predecessor] ha[d] granted [FTE] any ownership interest in the U.S. rights in the STOLICHNAYA Marks."  (GBD 51 at 35.)  FTE did nothing to cure the defect.

In 2010, on FTE's first appeal, the Second Circuit expressly questioned whether either the Russian Federation or FGUP was a necessary party to the litigation, because the documents on which FTE relies "do[] not appear to be an obvious transfer of ownership" to FTE.  *FTE II Summary Order*, 400 F. App'x at 614.  Again, FTE did nothing to solve this problem; instead, it amended its complaint for the third time without either joining the Russian Federation or effecting an assignment of the ownership rights.

Not surprisingly, in 2011, Judge Daniels concluded that "the present record lacks any reference to a duly executed writing that purports to convey title or ownership of the Marks" to FTE and thus affirmatively held that FTE lacked standing.  *FTE III*, 2011 WL 4005321, at *6.  Again, FTE did nothing.

In its second appeal, rather than securing the still-absent assignment, FTE suggested for the first time in its *reply* brief that it might be willing to join the Russian Federation to the litigation if the Second Circuit concluded that FTE lacked standing to assert trademark ownership claims.  (Ex. 6 to Gulland Decl. (2d Cir. Dkt. # 105 (No. 11-4109-cv), at 27–28).)

The Second Circuit declined the offer as "too late," noting that there had already been "ample time" for FTE to do so.  *FTE IV*, 726 F.3d at 84 n.18.

Only in February 2014, six months after the Second Circuit decided *FTE IV* and two months after FTE had filed its petition for a writ of certiorari with the Supreme Court, did FTE finally purport to cure the standing defect by obtaining a written assignment of the marks from the Russian Federation.

For the reasons discussed below in Section II, the purported assignment does not cure FTE's standing defect.  But even if it did, it could not overcome the res judicata effect of the previous dismissal and resuscitate this long-running case.  Under these circumstances, where "the Russian Federation . . . artificially constructed [this] litigation," *FTE III*, 2011 WL 4005321, at *8 n.16, and FTE declined repeated opportunities to obtain an assignment, "[i]t would clearly be unfair to burden [the Defendants] with a second action."  *Stebbins*, 528 F.2d at 938.  This conclusion is confirmed by the Second Circuit's rejection of FTE's related eleventh-hour attempt to avoid the consequences of its litigation strategy by requesting a remand to join or substitute the Russian Federation, particularly in light of the standing and necessary party concerns the Second Circuit had raised in the *FTE II* Summary Order: "FTE has had ample time since 2004, when the original complaint was filed, to join the Russian Federation as a party and has failed to do so. . . . *It is simply too late.*"  *FTE IV*, 726 F.3d at 84 n.18 (emphasis added).  If it was too late for the Russian Federation to belatedly join the litigation in 2013, it is *a fortiori* "too late" now for the Russian Federation and FTE to circumvent the Second Circuit's decision with a new purported assignment.

After ten years of countless hours and resources expended in litigating FTE's claims, and in light of the Second Circuit's emphatic conclusion that FTE had reached the end of the road,

FTE may not override that decision through its current maneuver.  Fundamental res judicata principles dictate that FTE cannot achieve this anomalous result.

### B.     None of FTE's Claims Survive.

For the reasons discussed above, FTE is barred from bringing claims for trademark infringement (Claim 1), contributory infringement (Claim 7), rectification of register (Claim 10), and cancellation of registration (Claim 11).  Each of these claims was raised in the TAC and dismissed, and cannot be relitigated here.

The remainder of FTE's claims must also be dismissed, since res judicata "prevents a plaintiff from litigating claims that were *or could have been* raised in a prior action against the same defendant."  *Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205 (2d Cir. 2002) (emphasis added); *see also L-Tec Electronics Corp. v. Cougar Electronic Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) ("Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence.").  Versions of FTE's claims for federal unfair competition (Claim 2), state law unfair competition (Claim 5), and contributory unfair competition (Claim 8), as well as direct and contributory federal trademark dilution (Claims 3 and 9), were pled in the SAC, but voluntarily abandoned in the TAC.  FTE has also introduced, for the first time, state law trademark infringement and dilution claims (Claims 4 and 6).  All of these claims, which arise out of the same transactions and occurrences as FTE's infringement claims, "could have been raised" in the prior action but were not.  They cannot be asserted now.

FTE's unfair competition claims (Claims 2, 5, and 8) are also barred for a separate, additional reason.  To allow it to take its first appeal of the decision in *FTE I*, FTE voluntarily dismissed *with prejudice* prior versions of its unfair competition claims against Allied Domecq. (GBD 123 (dismissing SAC Claims 5 and 13)); *FTE II*, 623 F.3d at 66.  FTE's current unfair competition claim against Allied Domecq is, of course, barred by that dismissal.  *See Samuels v.*

*N. Telecom, Inc.*, 942 F.2d 834, 836 (2d Cir. 1991). FTE's contributory unfair competition claim against SPI (Claim 8), which is premised on liability for Allied Domecq's conduct, is likewise barred, because direct and contributory infringement claims are the same for res judicata purposes. *See Aviation Software, Inc. v. United States*, 101 Fed. Cl. 656, 663 (2011) (direct copyright infringement claim against United States precluded by dismissal of earlier contributory infringement claim against company that had licensed the allegedly infringing software to the United States); *see also* Restatement (Second) of Judgments § 51(1) (explaining that a judgment against one defendant "extinguishes any claim [the plaintiff] has against the other person responsible for his conduct").

FTE's voluntary dismissal of its direct unfair competition claim against Allied Domecq also precludes it from bringing the present version of that claim against William Grant and SPI. Once one party secures a judgment on a claim, its subsequent "successor[s] in interest" stand in privity and enjoy the benefit of that judgment. *Esquire Trade & Fin., Inc. v. CBQ, Inc.*, 562 F.3d 516, 520 (2d Cir. 2009); *see generally Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 328–30 (S.D.N.Y. 2008) (discussing privity). Here, after Allied Domecq secured the dismissal of the unfair competition claim against it, its rights as licensed distributor of STOLICHNAYA vodka passed to William Grant and then to STOLI Group. (Compl. ¶¶ 48, 52.) As Allied Domecq's successors in interest, William Grant and STOLI Group are entitled to be free from FTE's attempt to relitigate its claim that selling STOLICHNAYA vodka supplied by SPI constitutes unfair competition.[7]

---

[7] Although FTE's common law infringement claim (Claim 4) is new in title, it was in substance encompassed in its prior common law unfair competition claim. *See, e.g.*, *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 298 (S.D.N.Y. 2002) (noting that "the essence of unfair competition under New York common law" is trademark infringement). (continued…)

Finally, FTE baldly re-pleads its claims for rectification of register and cancellation of registration (Claims 10 and 11) against Allied Domecq.  (Compl. ¶¶ 117, 121–25.)  However, Judge Daniels held that FTE "cannot as a matter of law state a claim" for rectification or cancellation against Allied Domecq or William Grant, because "[t]hese defendants do not claim to have any present ownership interest in the Marks," and "the relief sought cannot be obtained from these non-registrant/owner defendants."  *FTE III*, 2011 WL 4005321, at *8 n.17.  This unappealed dismissal on the merits precludes FTE's attempt to plead the same claims.[8]

## II.   THE NEW ASSIGNMENT DOES NOT CURE FTE'S LACK OF STANDING.

Even if FTE could premise a new action on a belated cure to its standing defect, it has not succeeded in doing so.  Statutory standing to bring a trademark infringement claim under Section 32(1) of the Lanham Act is available only to "registrant[s]" of the marks at issue, including the original registrant's "assigns."  15 U.S.C. § 1114(1).[9]  In *FTE IV*, the Second Circuit held that FTE could not qualify as an "assign" of the Russian Federation under the Lanham Act.  726 F.3d at 73.  It reached this conclusion for two independent reasons: (1) the purported assignment was not effected by a "duly executed instrument in writing," and (2) it left the Russian Federation

---

Accordingly, the res judicata effect of FTE's voluntary dismissal of its common law unfair competition claim applies to Claim 4 as well.

[8] This result is also plainly correct on its merits.  *See, e.g.*, 5 McCarthy on Trademarks and Unfair Competition § 30:109, at 30–297 (4th ed. 2014) ("Only the trademark registrant . . . is the proper party defendant in a claim for cancellation of a registration.").  FTE's complaint admits that Allied Domecq does not claim to own the marks, and has no ongoing interest in the marks. (Compl. ¶¶ 12, 41, 48–49, 52–53, 125.)

[9] Standing for trademark dilution claims is similarly limited to "the owner" of the mark.  15 U.S.C. § 1125(c).  FTE likewise lacks standing for its parallel state law infringement and dilution claims.  *See Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 392–93 (S.D.N.Y. 2011) (ownership necessary to bring New York dilution claim); *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 246 n.6 (S.D.N.Y. 2010) ("Federal law and state common law infringement claims are analyzed identically.").

with "simply too great an operational interest in the Marks." *Id.* at 74–75. The new complaint alleges facts that might cure the first defect (had FTE not already subjected Defendants to a decade of litigation, *see supra* Section I), but does not and cannot allege facts to overcome the second.

The Second Circuit based its holding principally on FTE's Charter. (TAC Ex. N.) "[T]he Charter expressly states that '[t]he property of the enterprise shall be in federal [*i.e.*, Russian Federation] ownership,' and that the property shall be transferred to FTE only 'for operative administration in accordance with the laws of the Russian Federation.'" *FTE IV*, 726 F.3d at 76 (quoting Charter ¶¶ 13, 14). Moreover, "[t]he Charter expressly *prohibits* FTE from alienating or otherwise disposing of any property" transferred to it, and "allows the Russian Federation to impound property transferred to FTE and to 'wind-up' FTE." *Id.* at 77. FTE had also "identified no constraint on the Russian Federation's authority to use the Marks itself," to "withdraw FTE's rights to use the Marks," or to "grant others similar rights." *Id.* In sum, the relevant instruments "expressly reserve to the Russian Federation certain rights that are generally inherent in the concept of ownership." *Id.* The Second Circuit refused to treat FTE as an "assign" of the Russian Federation, when the Russian Federation retained such substantial control over the putatively assigned marks.

FTE now alleges that "[o]n February 3, 2014, the Russian Federation assigned its right, title and interest in the STOLICHNAYA Marks in the United States to FTE." (Compl. ¶ 7 & Ex. A.) But the complaint does not allege that FTE's Charter has been amended to make this putative assignment sufficient under the Second Circuit's holding. FTE does not allege that it is no longer prohibited "from alienating or otherwise disposing of" the marks, or that the Russian Federation has now lost the power to "impound" the marks or "wind-up" FTE. FTE has still

"identified no constraint on the Russian Federation's authority to use the Marks for itself," to "withdraw FTE's rights to use the Marks," or to "grant others" the right to use them. In the face of the dispositive limits on FTE's authority over the marks—as adjudicated by the Second Circuit—FTE cannot rescue its claims through a conclusory assertion that the marks have now been "assigned," attaching a document that is an "assignment" in name only. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Neither can it avoid the limits on its purported ownership by simply declining to mention its own Charter in the complaint. *See supra* n.5. Accordingly, since Claims 1, 3, 4, 6, 9, 10, and 11 may only be pursued by the assignee of a registrant, they should be dismissed for the independent reason that FTE *still* lacks standing to pursue them.[10]

## III.   FTE CANNOT ESTABLISH A DEFECT IN DEFENDANTS' CHAIN OF TITLE, AND THEREFORE CANNOT STATE A CLAIM.

This is not a usual trademark case in which the undisputed owner of a mark sues an infringer. To the contrary, public records reflect that *SPI* owns the marks: VVO-SPI assigned the marks to PepsiCo (with SPI succeeding to the reversionary rights); PepsiCo assigned the marks to Allied Domecq; and Allied Domecq assigned the marks to SPI. Absent some defect in this chain of title, Defendants' use of the marks cannot be wrongful, and none of FTE's claims— whether based on a theory of infringement, dilution, or unfair competition—is viable. Thus, as the Second Circuit explained, FTE's legal theory requires it to first prevail on the "antecedent" question of the "validity of the assignment from PepsiCo to Allied Domecq." *FTE II*, 623 F.3d at 69. Since no antecedent claim is available to it, its derivative trademark-based claims must be dismissed.

---

[10] A further consequence of the Russian Federation's continued interest in the marks is that it remains an indispensable party, and the case should be dismissed for that additional reason. *See FTE III*, 2011 WL 4005321, at *8 n.16 ("Clearly, the Russian Federation is an indispensable party.").

According to FTE, the critical flaw in Defendants' chain of title is that "SPI induced PepsiCo to purport to assign its rights to Allied Domecq," but in fact had no basis to do so, because "SPI is not VVO-SPI's successor in interest." (Compl. ¶¶ 39–40.)[11]  That claim in turn depends on FTE's assertion that, in the early 1990s, VVO-SPI "was not in fact transformed into VAO-SPI or otherwise privatized," and that instead VVO-SPI was "hijacked" and the marks "misappropriated" by SPI's predecessor in interest.  (Compl. ¶¶ 1, 34–36.)

As an initial matter, FTE has stripped nearly all factual detail from its current complaint, placing the full weight of its case on the conclusory allegation that VVO-SPI was not properly privatized.  While it appears to have done so in order to avoid the problems its own allegations caused in previous iterations of the case, the result is a complaint that does not allege "sufficient factual matter" that could show with "facial plausibility" that VVO-SPI was somehow "hijacked" and its assets "misappropriated." *Iqbal*, 556 U.S. at 678 (2009).

In addition to this threshold pleading defect, FTE also cannot establish that the marks were misappropriated—the only claim that is "antecedent" to, and thus necessary to the success of, all of its claims—for the simple reason that more than two decades have elapsed since any misappropriation claim would have accrued.  New York law establishes a three-year statute of limitations for claims based on misappropriation of property.  *See Sporn v. MCA Records, Inc.*, 448 N.E.2d 1324, 1327 (N.Y. 1983).  Any misappropriation claim FTE may now possess accrued in 1992 or 1993, when SPI's predecessor in interest filed a corporate charter claiming to be the legal successor to VVO-SPI, and "expelled" VVO-SPI as a shareholder in the new entity.

---

[11] The Second Circuit held that FTE failed to state a claim for fraud related to this assignment. *FTE II Summary Order*, 400 F. App'x at 614.  FTE therefore may not raise fraud as a ground to attack the validity of the assignment.

(TAC ¶¶ 45, 48, 50.)  Moreover, a 1993 decision of a Court in this District—of which this Court can take judicial notice—expressly addressed (and rejected) claims that VVO-SPI had been illegally privatized and its assets improperly taken.  *Financial Matters*, 1993 WL 378844, at *2 & n.4.  FTE cannot credibly assert that VVO-SPI or the Russian Federation (from which FTE purportedly inherited its claims) lacked notice of the alleged misappropriation by this time.

Thus, FTE has brought this action *twenty-two years* after any misappropriation claim accrued, and the public registration of VAO-SPI as well as the *Financial Matters* case belie any assertion that the Russian Federation and FTE could not have discovered the basis for their claims until 2000.  That claim is nineteen years too late.  Indeed, even if the Russian Federation could be excused from pursuing its rights until 2000, when it allegedly "discovered" that the marks "had been stolen," the present action would still be eleven years too late.  Since FTE cannot make out an antecedent misappropriation claim that would establish its ownership of the marks, it cannot defeat Defendants' chain of title and thus cannot prevail on its current claims.

## IV.   FTE'S CLAIMS ARE TIME-BARRED.

A trademark claim is barred by laches when the "plaintiff had knowledge of defendant's use of its marks, th[e] plaintiff inexcusably delayed in taking action with respect thereto, and th[e] defendant will be prejudiced by permitting plaintiff inequitably to assert its rights at this time."  *Cuban Cigar Brands N.V. v. Upmann Int'l, Inc.*, 457 F. Supp. 1090, 1096 (S.D.N.Y. 1978), *aff'd*, 607 F.2d 995 (2d Cir. 1979).  Although laches arguments are typically fact-dependent, "when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss."  *Lennon v. Seaman*, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999). This is such a case.

Laches presumptively applies when the applicable statute of limitations has run. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996). As explained above, all of FTE's claims turn on its ability to establish misappropriation of VVO-SPI's assets, the limitations period for which expired 19 years ago. In previous iterations of this case, however, FTE has insisted that a six-year statute of limitations applies, and it did not begin to run until 2001. (GBD 164, at 39–41.) Although that contention is incorrect, it is also irrelevant. Even under FTE's theory, the present action comes 13 years after it accrued. If FTE can somehow overcome the res judicata effect of the previous dismissal based on the fiction that it is bringing "new" claims recently acquired from the Russian Federation, it must also accept the corollary of that fiction: that the Russian Federation slept on these claims until 2014. Whatever legal interest in the marks FTE may have received on February 3, 2014 came encumbered by its predecessor's years of inaction. *See, e.g.*, 6 McCarthy on Trademarks and Unfair Competition § 31:26, at 31–82 (4th ed. 2014) ("'[I]t is important to note that, in legal effect, the actions of the [predecessor] are those of [plaintiff] for purposes' of laches." (quoting *Anheuser-Busch, Inc. v. Du Bois Brewing Co.*, 175 F.2d 370, 372 n.4 (3d Cir. 1949))).

This delay is inexcusable on its face. FTE has previously attributed the first decade of delay to the Russian Federation's failure to "discover" the theft of VVO-SPI's assets. Yet SPI openly exercised authority over those assets during the entire period, and the matter was even publicly litigated in a U.S. court. *See supra* p. 9. FTE has not yet attempted to explain the second decade of delay, but the pendency of the prior action can be no excuse. As Judge Daniels found, the Russian Federation's refusal to participate in this litigation (including after an express

admonition from the Second Circuit) was a calculated strategic decision.  Its decision to pursue that strategy to the end does not excuse the delay it caused.[12]

The prejudice to defendants is also obvious.  This Court can take judicial notice of the extensive (and expensive) proceedings defendants have been subjected to, large portions of which were devoted to litigating the consequences of the Russian Federation's refusal to appear and assert its own rights.  As explained above, it is simply unfair to ask the Defendants (and the judiciary) to bear these burdens yet again.  Moreover, with every passing year the trial that FTE demands becomes increasingly unviable, as witness availability recedes and recollection dims.  FTE is ultimately attempting to litigate what happened more than two decades ago during the "chaos" of the collapse of the Soviet Union.  (Compl. ¶ 3.)  By delaying this case so that it is brought a generation after that "chaos," FTE has irreparably prejudiced Defendants' ability to defend themselves in such a proceeding.

## CONCLUSION

For the foregoing reasons, all claims against Defendants should be dismissed.[13]

---

[12] Even if FTE could claim that its federal trademark infringement claims are timely based on its pursuit of the previous action, any such argument would not apply to the remainder of its claims.  FTE did not assert any unfair competition or federal dilution claim in the TAC in 2008, and it has never asserted any state law infringement or dilution claim.  All of these claims, which lay dormant while FTE pursued its closely related infringement causes of action, are plainly time-barred.  *See Greenlight Capital, Inc. v. GreenLight (Switz.) S.A.*, No. 04 Civ. 3136, 2005 WL 13682, at *7–8 (S.D.N.Y. Jan. 3, 2005) (unfair competition claims under New York law, and thus analogous Lanham Act claims, are subject to three year limitations period if the claim is based on misappropriation, and six year period if the claim is based on fraud); *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 334 n.7 (S.D.N.Y. 2000) (three year statute of limitations applies to federal and state dilution claims).

[13] The Court should also award attorney's fees to Defendants under 15 U.S.C. § 1117(a)(3).  As explained above, FTE's attempt to burden Defendants with duplicative litigation after a decade of pursuing their "artificially constructed" case is fundamentally unfair and unreasonable.  *Supra* pp. 13–17.  Defendants intend to move for fees and costs on that basis following disposition of the present Motion.

Respectfully submitted,

May 12, 2014                                COVINGTON & BURLING LLP

s/ Eugene D. Gulland

Eugene D. Gulland
Bingham B. Leverich
David M. Zionts
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004–2401
(202) 662–6000
egulland@cov.com
bleverich@cov.com
dzionts@cov.com

*Attorneys for SPI Defendants*

DEBEVOISE & PLIMPTON LLP

s/ David H. Bernstein

David H. Bernstein
Michael Schaper
Carl Micarelli
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
dbernstein@debevoise.com
mschaper@debevoise.com
cmicarelli@debevoise.com

*Attorneys for Allied Domecq Defendants*

KENYON & KENYON LLP

s/ Edward T. Colbert

Edward T. Colbert
Kenyon & Kenyon LLP
1500 K Street, N.W.
Washington, D.C. 20005-1257
(202) 220-4280
ecolbert@kenyon.com

*Attorneys for William Grant Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 12, 2014, copies of the foregoing Notice of Joint Motion and Memorandum of Law in Support of Joint Motion To Dismiss, together with the May 12, 2014 Declaration of Eugene D. Gulland, were served on all counsel of record by electronic mail through the Court's CM/ECF system and by courtesy email, including to the following:

Robert L. Raskopf
Marc Greenwald
Jessica A. Rose
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22d Floor
New York, New York 10010
(212) 849–7000
robertraskopf@quinnemanuel.com
marcgreenwald@quinnemanuel.com
jessicarose@quinnemanuel.com

Daniel H. Bromberg
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
(650) 801–5000
danbromberg@quinnemanuel.com

*Attorneys for Plaintiffs*

s/ Eugene D. Gulland
Eugene D. Gulland