UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

FEDERAL TREASURY ENTERPRISE
SOJUZPLODOIMPORT and OAO
"MOSCOW DISTILLERY CRISTALL,"

Plaintiffs,

v.

SPIRITS INTERNATIONAL B.V., SPI
SPIRITS LIMITED, SPI GROUP SA,
YURI SHEFLER, ALEXEY OLIYNIK,
ALLIED DOMECQ INTERNATIONAL
HOLDING B.V., ALLIED DOMECQ
SPIRITS & WINE USA, INC.,
WILLIAM GRANT & SONS USA,
WILLIAM GRANT & SONS, INC., and
STOLI GROUP (USA) LLC,

Defendants.

------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/25/14

**OPINION AND ORDER**

**14-cv-0712 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

Federal Treasury Enterprise Sojuzplodoimport ("FTE") and OAO

"Moscow Distillery Cristall" ("Cristall") bring this action against Defendants

based on their alleged unlawful misappropriation and commercial exploitation of

the Stolichnaya trademarks (the "Marks") related to the sale of vodka and other

spirits in the United States.[1]  Defendants include Yuri Shefler and Alexey Oliynik, their companies —  Spirits International B.V., SPI Group SA, and SPI Spirits Limited (collectively "SPI"); Allied Domecq International Holding B.V., and Allied Domecq Spirits and Wine USA, Inc. (collectively "Allied Domecq"); William Grant & Sons USA and William Grant & Sons, Inc. (collectively "WGS"); and Stoli Group (USA) LLC ("Stoli Group").[2]  FTE brings claims for federal trademark infringement (Claim 1), federal unfair competition (Claim 2), federal trademark dilution (Claim 3), state law trademark infringement (Claim 4), state law unfair competition (Claim 5), state law trademark dilution (Claim 6), contributory trademark infringement (Claim 7), contributory unfair competition (Claim 8), contributory federal trademark dilution (Claim 9), federal rectification of register (Claim 10), and federal cancellation of registration (Claim 11).[3]

In prior litigation among these parties, the Second Circuit ruled that FTE lacked standing to assert similar claims under Section 32(1) of the Lanham Act.[4]  FTE now argues that it has cured its standing defect and should be allowed

---

[1]    *See* Complaint ("Compl.") ¶ 1.

[2]    *See id.* ¶¶ 13-17.

[3]    *See id.* ¶¶ 67-125.

[4]    *See Federal Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.* ("*FTE IV*"), 726 F.3d 62, 85 (2d Cir. 2013).

to re-assert its claims.[5]  Defendants move to dismiss under Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6).  They argue that (1)  FTE lacks standing under

Section 32(1) of the Lanham Act; (2) all of FTE's claims are barred by res

judicata; and (3) FTE has failed to state a claim because all of its claims are

premised on a time-barred misappropriation claim.[6]  For the following reasons,

Defendants' motion is GRANTED in part and DENIED in part.

## II.    BACKGROUND

### A.    Factual Background

FTE is owned by the Russian Federation and is organized and

operates under the laws of Russia.[7]  The Russian Federation formed FTE in

December 2001 to assume the functions and operations of VVO-SPI, the original

owner of the Marks.[8]  Cristall is a corporation organized under the laws of Russia.[9]

Cristall has the exclusive license to produce vodka and other products in the United

---

[5]        See Compl. ¶¶ 7, 66.

[6]        See Defendants' Memorandum of Law in Support of Joint Motion to
Dismiss ("Def. Mem.") at 11, 19, 21-23.

[7]        See Compl. ¶ 7.

[8]        See id.

[9]        See id. ¶ 8.

States bearing the Marks.[10]  SPI purports to own United States Trademark

Registration Nos. 865, 462, 1,244,735, and 1,291,454 for the Marks.[11]  Allied

Domecq, WGS, and Stoli Group are corporations licensed to do business in New

York by the Alcoholic Beverage Control State Liquor Authority.[12]

### 1.  The Marks

In the late 1940's, the Soviet Union began producing vodka under the

Stolichnaya trademark.[13]  In 1967, the Soviet Union created an enterprise named

V/O SPI to export Stolichnaya vodka.[14]  That same year, V/O SPI applied to

register the Stolichnaya trademark with the United States Patent and Trademark

Office ("USPTO").[15]  In 1969, V/O SPI was granted Trademark Registration No.

865,462 for the Stolichnaya trademark.[16]  In 964 and then again in 1983, V/O SPI

applied for and was granted Trademark Registration No. 1,244,735 for the STOLI

---

[10]     *See id.*

[11]     *See id.* ¶ 12.

[12]     *See id.* ¶ 15.

[13]     *See id.* ¶ 23.

[14]     *See id.* ¶ 24.

[15]     *See id.* ¶ 25.

[16]     *See id.* ¶ 26.

Mark and Registration No. 1,291,454 for the Stolichnaya Mark.[17]  In 1990, V/O

SPI was reorganized and renamed VVO-SPI.[18]

From 1969 until 2000, immense quantities of Stolichnaya vodka were

sold in the United States by authorized licensees and distributors of V/O SPI:

Monsieur Henri Wines, Ltd. and PepsiCo, Inc. ("PepsiCo").[19]  V/O SPI, and

subsequently VVO-SPI, spent millions of dollars annually to promote and

advertise the Stolichnaya brand in the United States.[20]

### 2.    Events Leading to this Suit

In 1990, the Soviet Union began to collapse and "billion dollar

enterprises were hijacked by their managers and/or directors."[21]  FTE alleges that

VVO-SPI's General Director, Evgeniy Filippovich Sorochkin, hijacked VVO-SPI

to make it appear that VVO-SPI had been lawfully transformed into a private joint

stock company, VAO-SPI.[22]  VAO-SPI asserted in its Charter that it was the

---

[17]    *See id.* ¶ 27.

[18]    *See id.* ¶ 28.

[19]    *See id.* ¶¶ 29-30.

[20]    *See id.* ¶ 31.

[21]    *Id.* ¶ 34.

[22]    *See id.* ¶ 35.

successor to VVO-SPI.[23]  However, FTE alleges that VAO-SPI was not the successor to VVO-SPI, and that VVO-SPI was never privatized.[24]

Defendants, however, claim to have rights in the Stolichnaya Marks based on a chain of purported transfers, starting with the purported assignment by VAO-SPI to an entity that SPI controls.[25]  This purported assignment has been declared null and void by the Russian courts.[26]

In general, FTE alleges that Defendants have unlawfully imported and sold vodka bearing the Marks in the United States.[27]  The vodka sold by Defendants is allegedly different in quality and character than the vodka sold by VVO-SPI.[28]  However, FTE alleges that U.S. consumers may mistakenly believe that the vodka sold by Defendants is the same quality as that sold by VVO-SPI between 1969 and 2000.[29]

### a.    Allied Domecq's Alleged Infringement

---

[23]    *See id.*

[24]    *See id.* ¶¶ 35-36.

[25]    *See id.* ¶ 37.

[26]    *See id.*

[27]    *See id.* ¶ 60.

[28]    *See id.* ¶ 61.

[29]    *See id.*

In November 2000, VAO-SPI and Allied Domecq entered into an agreement that allowed Allied Domecq to distribute and sell vodka bearing the Marks.[30]  Furthermore, in January 2001, SPI induced PepsiCo to assign whatever rights it purported to have in the Stolichnaya Marks to Allied Domecq.[31]  FTE argues that because VAO-SPI was not a valid successor to VVO-SPI and because PepsiCo was a licensee who did not own the Marks, neither PepsiCo nor VAO-SPI had the right to transfer the Marks to Allied Domecq.[32]  From 2001 to 2008, Allied Domecq advertised, imported, sold, and distributed substantial quantities of vodka bearing the Marks throughout the United States.[33]

### b. WGS's Alleged Infringement

In December 2008, SPI entered into an agreement with WGS to distribute and sell vodka bearing the Marks in the United States.[34]  From December 2008 to the present, WGS imported, distributed, advertised, and sold substantial quantities of vodka bearing the Marks throughout the United States.[35]  This use of

---

[30]     *See id.* ¶ 38.

[31]     *See id.* ¶ 39.

[32]     *See id.* ¶ 40.

[33]     *See id.* ¶ 41.

[34]     *See id.* ¶ 48.

[35]     *See id.* ¶ 49.

7

the Marks was not authorized by VVO-SPI , FTE, or the Russian Federation.[36]

### c.    Stoli Group's Alleged Infringement

In January 2014, Stoli Group entered into an agreement with SPI to distribute and sell vodka bearing the Marks in the United States.[37]  Stoli Group has not been authorized by FTE, VVO-SPI, or the Russian Federation to use the Marks.[38]

### d.    SPI's Alleged Infringement

SPI entered into agreements with Allied Domecq, WGS, and Stoli Group to distribute and sell vodka bearing the Marks.[39]  Furthermore, SPI supplied the vodka sold by Allied Domecq, WGS, and Stoli Group.[40]  SPI has imported, advertised, sold, and distributed vodka bearing the Marks throughout the United States.[41]  FTE alleges that SPI's use of the Marks was not authorized by FTE, VVO-SPI, or the Russian Federation.[42]

---

[36]    *See id.* ¶ 50.

[37]    *See id.* ¶ 52.

[38]    *See id* ¶ 54.

[39]    *See id.* ¶ 56.

[40]    *See id.*

[41]    *See id.* ¶ 57.

[42]    *See id.* ¶ 59.

### B.   Procedural Background

#### 1.   *FTE I*

In 2004, FTE brought suit against SPI and Allied Domecq for declaratory judgment; cancellation of marks; rectification of register; federal claims of unfair competition, trademark infringement, trademark dilution, false designation of origin, and copyright infringement; and common law claims of fraud, unjust enrichment, and misappropriation.[43]  FTE then amended its complaint twice and asserted fifteen claims against SPI and Allied Domecq.[44]  These new claims included trademark infringement, trademark dilution, unfair competition, false designation of origin, misappropriation, fraud, unjust enrichment, and copyright infringement.[45]

The defendants moved to dismiss this Second Amended Complaint ("SAC") on the ground that the Marks were incontestable.[46]  In a March 31, 2006 Order, Judge George Daniels dismissed all but two of the claims, holding that FTE had no valid grounds for challenging Allied Domecq's incontestable rights in the

---

[43]    *See Federal Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.* ("*FTE I*"), 425 F. Supp. 2d 458, 464 (S.D.N.Y. 2006).

[44]    *See id.*

[45]    *See* Def. Mem. at 3.

[46]    *See id.  See also FTE I*, 425 F. Supp. 2d at 461.

Marks.[47]  FTE then dismissed the remaining claims with prejudice against Allied Domecq and declined to challenge the "district court's dismissal of a similar claim against SPI."[48]

### 2.   *FTE II*

FTE appealed the decision, and the Second Circuit affirmed in part and remanded in part.[49]  The court held that "FTE can challenge the validity of the assignment of the incontestable [Marks] to Allied Domecq, and that there is federal jurisdiction over those claims under the Lanham Act."[50]  The court then vacated the district court's dismissal of FTE's trademark, misappropriation, and unfair competition claims.[51]

### 3.   *FTE III*

---

[47]    *See FTE I*, 425 F. Supp. 2d at 471.  The only claims that were not dismissed in *FTE I* were for federal unfair competition and false designation of origin against Allied Domecq.  *See id.*

[48]    Def. Mem. at 3.

[49]    *See Federal Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.* ("*FTE II Summary Order*")*, 400 Fed. App'x 611 (2d Cir. 2010) (affirming dismissal of fraud and unjust enrichment claims).  *See also Federal Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.* ("*FTE II*"), 623 F.3d 61 (2d Cir. 2010) (remanding remaining trademark, unfair competition, and misappropriation claims).

[50]    *FTE II*, 623 F.3d at 71.

[51]    *See id.*

10

On remand, the court allowed FTE to amend its complaint for a third time.[52]  In its Third Amended Complaint ("TAC"), FTE did not plead federal trademark dilution and contributory unfair competition.[53]  The only claims that remained in the TAC were federal trademark infringement under Section 32(1) of the Lanham Act, declaratory and remedial relief based on FTE's alleged ownership of the Marks, and common-law misappropriation.[54]

Defendants then moved to dismiss the TAC on multiple grounds.  The court dismissed the Lanham Act and declaratory judgment claims for lack of standing and declined to exercise supplemental jurisdiction over the remaining common-law misappropriation claims.[55]

### 4.    *FTE IV*

FTE again appealed the decision, and in August 2013, the Second Circuit affirmed the district court's dismissal of all claims.[56]  The Second Circuit held that FTE lacked standing to sue for trademark infringement because even

---

[52]     *See* Def. Mem. at 4.

[53]     *See FTE II*, 623 F.3d at 71 n.11.

[54]     *See* Def. Mem. at 4.

[55]     *See id.  See also Federal Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.* ("*FTE III*")*,* No. 04 Civ. 08510, 2011 WL 4005321, at *3 (S.D.N.Y. Sept. 1, 2011).

[56]     *See FTE IV*, 726 F.3d at 70.

though the Russian Federation "entrusted [FTE] with responsibility for using and enforcing the [] Marks, it had not assigned the trademarks to FTE."[57]  The Second Circuit stated that the Russian Federation had "simply too great an operational interest in the Marks for us to consider the Federation as having assigned the Marks to FTE for purposes of the Act."[58]  The Second Circuit also refused to remand the case so that FTE could join the Russian Federation as a plaintiff because "it [was] simply too late."[59]

FTE alleges that it has rectified its lack of standing because the Russian Federation assigned the Marks to it through an Assignment in February 2014.[60]  The Assignment states that the Russian Federation "assign[s] the Stolichnaya Marks to FTE" and agrees to "sell[], convey[], transfer[], assign[] and set[] over its entire right, title, and interest in and to the Trademarks."[61]  The Assignment also assures that the Russian Federation "relinquishes any and all right, title, and interest" in the Marks.[62]  Therefore, FTE asserts that it now

---

[57]     Compl. ¶ 65.

[58]     *FTE IV*, 726 F.3d at 75.

[59]     *Id.* at 84 n.18.

[60]     *See* Compl. ¶ 66.

[61]     Assignment of United States Trademarks, Ex. A to Compl. at 3.

[62]     *Id.*

qualifies as an "assign" under Section 32(1) of the Lanham Act.[63]

## III.   LEGAL STANDARD

### A.     Rule 12(b)(1) Motion to Dismiss

Rule 12(b)(1) allows a party to assert by motion the defense that the Court lacks subject matter jurisdiction to hear a claim.  "Federal courts are courts of limited jurisdiction, and '[t]he validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties.'"[64]  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."[65]  Courts also have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."[66]

"For the purpose of determining whether a district court has federal question jurisdiction pursuant to Article III and 28 U.S.C. § 1331, the jurisdictional inquiry 'depends entirely upon the allegations in the complaint' and asks whether

---

[63]     *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp. Mem.") at 16.

[64]     *South New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) (quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982)).

[65]     *Al-Khazraji v. United States*, 519 Fed. App'x 711, 713 (2d Cir. 2013) (citing *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012)).

[66]     *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006).

the claim as stated in the complaint 'arises under the Constitution or laws of the United States.'"[67]  "When . . . the defendant challenges the factual basis for the plaintiff's assertion of jurisdiction, '[j]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"[68]  In fact, "in dismissing a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1), a court may 'refer to evidence outside the pleadings.'"[69]

### B.    Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."[70]  The court evaluates the complaint under the "two-pronged approach" set forth in *Ashcroft v. Iqbal*.[71]  *First*, a court may "identify[] pleadings that, because they are no more than conclusions, are not

---

[67]    *South New England*, 624 F.3d at 132 (quoting *Carlson v. Principal Fin. Group*, 320 F.3d 301, 306 (2d Cir. 2003)).

[68]    *Jordan v. Verizon Corp.*, 391 Fed. App'x 10, 12 (2d Cir. 2010) (citing *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quotation marks omitted)).

[69]    *Burfeindt v. Postupack*, 509 Fed. App'x 65, 67 (2d Cir. 2013) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

[70]    *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013).

[71]    556 U.S. 662, 679 (2009).

entitled to the assumption of truth."[72]  "'Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice'" to

withstand a motion to dismiss.[73]  *Second*, "'[w]hen there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.'"[74]

> To survive a Rule 12(b)(6) motion to dismiss, the allegations in a

complaint must meet a standard of "plausibility."[75]  A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."[76]

Plausibility "is not akin to a probability requirement," rather, plausibility requires

"more than a sheer possibility that a defendant has acted unlawfully."[77]

> In considering a motion to dismiss for failure to state a claim pursuant

to Rule 12(b)(6), a district court may consider "only the complaint, . . . any

---

[72]     *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

[73]     *Id.* (quoting *Iqbal*, 556 U.S. at 678).

[74]     *Taveras v. UBS AG*, 513 Fed. App'x 19, 22 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

[75]     *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

[76]     *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[77]     *Id.* (quotation marks and citation omitted).

documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily."[78]  Allegations in the complaint that are "contradicted by more specific allegations or documentary evidence" are not entitled to a presumption of truthfulness.[79]

## IV.   APPLICABLE LAW

### A.   Res Judicata

"Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"[80]  Res judicata bars "'later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.'"[81]  The burden to prove res judicata is on the party seeking to "to prove that the doctrine bars the

---

[78]    *Building Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012) (citing *In re Citigroup ERISA Litig.*, 662 F.3d 128, 135 (2d Cir. 2011) (quotation marks omitted)).

[79]    *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 175 n.1 (2d Cir. 2013) (citing *L-7 Designs, Inc. v. Old Navy*, *LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

[80]    *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).

[81]    *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985)).

second action."[82]  "Even where a second action arises from some of the same factual circumstances that gave rise to a prior action, res judicata is inapplicable if formal jurisdictional or statutory barriers precluded the plaintiff from asserting its claims in the first action."[83]

In the Second Circuit, "a dismissal for lack of subject matter jurisdiction is not an adjudication of the merits."[84]  Because "a dismissal for lack of Article III standing is a dismissal for lack of subject-matter jurisdiction, … the … judgment has almost no res judicata effect[.]"[85]  While the prior dismissal "preclude[s] relitigation of the very issue of [standing] actually determined, [it] does not preclude a second action on the same claim if the [standing] problem can be overcome."[86]

## B.    Lanham Act Standing

Section 32(1) of the Lanham Act "protects only registered

---

[82]    *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997).

[83]    *Id.* at 370.

[84]    *St. Pierre*, 208 F.3d at 400.

[85]    18A Fed. Prac. & Proc. Juris. § 4436 (2d ed.) (citing *St. Pierre*, 208 F.3d at 400).

[86]    *Id.*

trademarks."[87]  Under that section, a party has a cause of action "against any

person who 'uses in commerce any . . .  imitation of a registered mark . . .  likely to

cause confusion, or to cause mistake, or to deceive.'"[88]  However, "[t]his cause of

action is available . . . only to 'registrant[s]' of the trademarks at issue, a term the

Act defines as embracing the actual registrant's 'legal representatives,

predecessors, successors and assigns.'"[89]

   Courts in the Second Circuit have long held that "a party is not an

assign for standing purposes under the Lanham Act unless that party owns the

mark at issue."[90]  Moreover, the Second Circuit has "accepted that a transfer of an

ownership interest in a mark is a predicate to standing for any putative assign."[91]

## C. Laches

   "It is well established that the equitable defense of laches may be

applied to cases brought under the Lanham Act."[92]  In order to succeed on a laches

---

[87] *FTE IV*, 726 F.3d at 72 (citing 15 U.S.C.§ 1114(1)).

[88] *Id.* (quoting 15 U.S.C.§ 1114(1)).

[89] *Id*. (quoting 15 U.S.C. § 1127).

[90] *Id.* at 75.

[91] *Id.* at 76 (citing *DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621 (2d
Cir. 1980)).

[92] *United States v. Milstein*, 401 F.3d 53, 63 (2d Cir. 2005) (citing
*Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 193 (2d Cir. 1996)).

defense, a defendant "must show [1] that plaintiff had knowledge of defendant's use of its marks, [2] that plaintiff inexcusably delayed in taking action with respect thereto, and [3] that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights at this time."[93]

"Although laches is an equitable defense, employed instead of a statutory time-bar, analogous statutes of limitation remain an important determinant in the application of a laches defense."[94]   Because the Lanham Act establishes no limitations period, courts "look to the most appropriate or the most analogous state statute of limitations for laches purposes."[95]   Prior to the running of that statute, "there is no presumption of laches and the burden remains on the defendant to prove the defense."[96]   Courts in the Second Circuit use "New York's six-year fraud statute of limitations to determine if a Lanham Act claim is barred

---

[93]     *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir. 1980).  *Accord Eppendorf-Netheler-Hinz GMBH v. National Scientific Supply Co., Inc.*, 14 Fed. App'x 102, 105 (2d Cir. 2001).

[94]     *Conopco*, 95 F.3d at 191.  *Accord Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1974 n.15 (2014) ("In contrast to the Copyright Act, the Lanham Act, which governs trademarks, contains no statute of limitations, and expressly provides for defensive use of 'equitable principles, including laches.'") (quoting 15 U.S.C. § 1115(b)(9)).

[95]     *Conopco*, 95 F.3d at 191 (internal quotation marks omitted).

[96]     *Id*.

19

by the doctrine of laches."[97]

## V.     DISCUSSION

### A.     Res Judicata Bars FTE's Non-Section 32(1) Claims

Defendants assert that "[f]undamental res judicata principles" bar all

of FTE's claims in this suit.[98]  *First*, Defendants argue that FTE's Section 32(1)

claims are barred by the Second Circuit's holding in *FTE IV*.[99]  Specifically, the

Second Circuit held that because FTE was neither an "assign" nor a "legal

representative" under the Lanham Act, it lacked standing to sue under Section

32(1).[100]  Defendants argue that even though these claims were dismissed on

"jurisdictional grounds. . . , th[e] judgment still has preclusive effect against

---

[97]     *Parks v. ABC, Inc.*, 341 Fed. App'x 737, 739 (2d Cir. 2009) (citing *Conopco*, 95 F.3d at 191).

[98]     Def. Mem. at 17.

[99]     *See id.* at 11-17.  For the purposes of this Order, I will refer to Claims 1, 7, 10, and 11 as "Section 32(1) claims."  Technically, only FTE's federal trademark infringement claim ("Claim 1") arises under Section 32(1).  *See* 15 U.S.C. § 1114(1).  However, FTE's rectification of register (Claim 10) and cancellation of registration (Claim 11) claims depend on FTE's "standing to sue for infringement" under Section 32(1).  *FTE IV*, 726 F.3d at 84 ("[A]bsent Lanham Act standing to sue for infringement, plaintiffs also lack standing to seek these remedies[.]").  Moreover, without standing to sue for direct infringement, FTE lacks standing to sue for contributory infringement (Claim 7).  *See id.*

[100]     *See FTE IV*, 726 F.3d at 85.

attempts to relitigate the same jurisdictional question."[101]   Thus, Defendants urge

the Court to dismiss FTE's Section 32(1) claims for trademark infringement

(Claim 1), contributory infringement (Claim 7), rectification of register (Claim 10),

and cancellation of registration (Claim 11).[102]

FTE insists that jurisdictional questions can never be relitigated.  But

"a dismissal for lack of subject matter jurisdiction is not an adjudication on the

merits."[103]   While a prior dismissal "preclude[s] relitigation of the very issue of

[standing] actually determined, [it] does not preclude a second action on the same

claim if the [standing] problem can be overcome."[104]   Because lack of standing is

"curable," FTE may re-assert its Section 32(1) claims because it has alleged new

facts to cure its standing defect.[105]

---

[101]     Def. Mem. at 12 (citing *Insurance Corp. of Ireland, Ltd.*, 456 U.S.
694 at n.9 ("A party that has had an opportunity to litigate the question of
subject-matter jurisdiction may not, however, reopen that question in a collateral
attack upon an adverse judgment. It has long been the rule that principles of res
judicata apply to jurisdictional determinations—both subject matter and
personal.")).

[102]     *See id.* at 17.

[103]     *St. Pierre*, 208 F.3d at 400.

[104]     18A Fed. Prac. & Proc. Juris. § 4436 (2d ed.) (citing *St. Pierre*, 208
F.3d at 400).

[105]     *Criales v. American Airlines, Inc.*, 105 F.3d 93, 98 (2d Cir. 1997)
(holding that res judicata did not bar employee from bringing a second Title VII
action after his first action was dismissed for failing to obtain right-to-sue notice

By contrast, FTE's remaining claims — arising under either Section 43 or state law — must be dismissed.  Res judicata "bars the relitigation . . . of claims that were, *or could have been*, brought in an earlier litigation between the same parties or their privies."[106]  *First*, res judicata precludes FTE from bringing its federal unfair competition claim (Claim 2), state law unfair competition claim (Claim 5), and contributory unfair competition claim (Claim 8), as well as direct and contributory federal trademark dilution claims (Claims 3 and 9).  FTE pled these claims in the SAC, but abandoned them in the TAC.  In addition, FTE introduced its state law trademark infringement and dilution claims (Claims 4 and 6) for the first time in the present Complaint.  Because all of these claims "could have been brought" in the TAC, FTE cannot assert them now.[107]

Moreover, FTE's unfair competition claims (Claims 2, 5, and 8) are precluded by FTE's strategic decisions.  In order to appeal the district court's decision in *FTE I*, FTE voluntarily dismissed with prejudice virtually identical

---

from administrative agency); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 n.4 (2d Cir. 1994) ("[A] dismissal for want of subject matter [] jurisdiction is not a decision on the merits[,] [and] the plaintiff is free to institute the suit anew . . . under circumstances supporting jurisdiction.").

[106]    *Burberry Ltd. v. Horowitz*, 534 Fed. App'x 41, 43 (2d Cir. 2013) (citing  *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 919 (2d Cir. 2010) (emphasis in original)).

[107]    *Id.*

versions of its unfair competition claims against Allied Domecq.[108]  FTE may not

now reassert those claims against Allied Domecq.[109]  Nor may FTE bring its

contributory unfair competition against SPI (Claim 8) because SPI's liability for

this claim hinges on Allied Domecq's conduct.[110]  Finally, FTE is precluded from

bringing its current federal unfair competition claim (Claim 8) against Allied

Domecq's successors-in-interest,WGS and Stoli Group, because these parties

received their rights to distribute the Marks *after* the identical claims were

voluntarily dismissed with prejudice against Allied Domecq.[111]

---

[108]     *See* Notice of Dismissal, Ex. 3 to Declaration of Eugene Gulland ("Gulland Decl.") at 1 (demonstrating that plaintiffs "hereby dismiss with prejudice their Fifth [unfair competition] and Thirteenth [false designation of origin] claims for relief as to Allied Domecq").

[109]     *See Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995) (holding that "[a] voluntary dismissal with prejudice is an adjudication on the merits for purposes of res judicata").  *See also Samuels v. Northern Telecom, Inc.*, 942 F.2d 834, 836 (2d Cir. 1991) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986) (holding that "'[a] dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action'")).

[110]     *See Falbaum v. Pomerantz,* 19 Fed. App'x 10, 14 (2d Cir. 2001) (quoting Restatement (Second) of Judgments § 51 (1982)) (stating that "if two persons have a relationship such that one is vicariously responsible for the conduct of the other, a judgment against an injured person in favor of one person bars the injured person from reasserting his claim against the other").

[111]     *See Esquire Trade & Fin., Inc. v. CBQ, Inc.,* 562 F.3d 516, 520 (2d Cir. 2009) (stating that if a party is a successor-in-interest, res judicata "would have merit").

**B.    FTE Has Alleged an Assignment Sufficient to Confer Standing Under Section 32(1) of the Lanham Act**

Next, Defendants argue that even if FTE's Section 32(1) claims are not barred by res judicata, they should be dismissed because the Assignment fails to confer standing.[112]  Under Section 32(1), standing is available only to "registrants" of a mark, including a registrant's "assigns."[113]  In *FTE IV*, the Second Circuit held that FTE was not an "assign" under Section 32(1) of the Lanham Act because (1) the purported assignment was not in a "duly executed writing" and (2) the Russian Federation maintained "simply too great an operational interest in the Marks."[114]  But the court assumed that the defect was curable, stating:

> Had the Russian Federation effected a valid assignment here, FTE could sue under Section 32(1) as an "assign." As the relationship between the Russian Federation and FTE is now structured, . . . it cannot [sue under Section 32(1)], consistent with the Act.[115]

The court explained that the Russian Federation retained not only "formal title to

---

[112]    *See* Def. Mem. at 19-20.

[113]    *See* 15 U.S.C. § 1114(1); 15 U.S.C. §1127 ("The terms 'applicant' and 'registrant' embrace the legal representatives, predecessors, successors and assigns of such applicant or registrant.").  FTE does not claim to be a "legal representative," "predecessor," or "successor" of the Russian Federation.

[114]    *FTE IV*, 726 F.3d at 74-75.

[115]    *Id.* at 79.

24

the Marks," but also "the right to rescind the [Marks], to grant a license for [their] use to others, [and] exclude others from using the [Marks]."[116]  The Assignment, however, expressly conveys to FTE the Russian Federation's "entire right, title and interest" in the Marks.[117]  It also states that the Russian Federation "relinquishes any and all right, title, and interest" in the Marks.[118]  Thus, FTE has plausibly alleged an assignment sufficient to confer standing.

Although Defendants concede that the Assignment "might cure" the "duly executed writing" defect, they insist that the Russian Federation still retains "simply too great an operational interest in the Marks."[119]  *First*, Defendants contend that the Second Circuit "based its holding principally on FTE's Charter."[120]  In *FTE IV*, the Second Circuit recognized that the Charter limits FTE's ownership in the marks by prohibiting it from "alienating or otherwise disposing of any property transferred to it, and "allows the Russian Federation's authority to use the Marks itself," to "withdraw FTE's rights to use the Marks," or

---

[116]     *Id.* at 77.

[117]     Assignment at 3.

[118]     *Id.*

[119]     Def. Mem. at 19-20.  *Accord* Defendants' Reply Memorandum in Further Support of Defendants' Joint Motion to Dismiss ("Reply Mem.") at 6.

[120]     Def. Mem. at 20.

to "grant others similar rights."[121]  Defendants argue that the Assignment cannot

"expand[] FTE's authority beyond that granted in [the Charter]."[122]  But

Defendants fail to explain how the Charter supercedes the Assignment, issued

twelve years later under a Russian Federation decree.[123]  Defendants' insistence

that the Russian Federation retains the right "to use the Marks for itself" is belied

by the Assignment, which expressly states that the Russian Federation

"relinquishes *any and all* right, title, and interest" in the Marks.[124]  And as a

practical matter, Defendants cannot explain why the Russian Federation would

create a Charter that can never be superceded by an Assignment, as FTE

suggests.[125]  Based on Defendants' theory, the Charter ties the Russian Federation's

---

[121]     *FTE IV*, 726 F.3d at 77.

[122]     Reply Mem. at 6.

[123]     *See* Assignment at 1 (stating that the Assignment is issued "in accordance with decree of the Russian government dated February 1, 2014, no. 69").  Because the Assignment is attached to the Complaint, statements in the Assignment are deemed true for the purposes of this motion.  *See Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013) (citing *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir. 2000) ("[F]or purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . ").

[124]     Assignment at 3 (emphasis added).

[125]     *See* 7/31/14 Teleconference Tr. at 6:14-23 (Marc Greenwald, counsel for FTE: "[T]he charter was issued pursuant to a . . . decree, and the Assignment was also issued . . . pursuant to a subsequent decree.  Our position is that the subsequent decree supercedes the first decree.").

hands with respect to the Marks.

      *Second*, Defendants argue that "the limits on FTE's authority [also] derive from . . . the Russian Civil Code, under which 'state unitary enterprises' like FTE are 'not endowed with the right of ownership.'"[126]  Under Russian law, state unitary enterprises hold property only "by right of economic jurisdiction or operative management."[127]  According to Defendants, *FTE IV* held that state unitary enterprises — like FTE — do not and *cannot* "possess an ownership interest sufficient to give rise to Lanham Act standing."[128]

      In fact, the Second Circuit's ruling was not so conclusive.  The court refused to "tender a definitive reading of Russian law," and noted only that Russian law is "equivocal" regarding the rights of state unitary enterprises.[129]  Like the Second Circuit, I decline to interpret Russian law without further input from the parties.[130]  Because I have only been provided with counsel's reading of Russian

---

[126]    Reply Mem. at 6 (quoting Russian Civil Code art. 113).

[127]    Russian Civil Code art. 113(2), Ex. 1 to Gulland Decl.

[128]    8/1/14 Letter from Eugene Gulland, counsel for SPI, to the Court at 1.

[129]    *FTE IV*, 726 F.3d at 76-77.

[130]    Addressing the validity of the Russian Federation's Assignment could potentially raise issues under the Act of State doctrine.  *See Konowaloff v. Metropolitan Museum of Art*, 702 F.3d 140, 143 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2837 (2013) ("[T]he act of state doctrine 'precludes the courts of this country from inquiring into the validity of the public acts of a recognized foreign

law — as opposed to full discovery, including expert testimony — I cannot rule
that the the Assignment is invalid under either Russian law or superceded by the
Charter.[131]  At this stage, FTE has alleged facts that plausibly show that the Russian
Federation has assigned the Marks to FTE, giving FTE standing to sue under
Section 32(1).[132]

### C.    FTE's Section 32(1) Claims Are Not Time-Barred

Finally, Defendants argue that FTE's Complaint fails to state a claim,
and in any event, its claims are time-barred.  *First*, Defendants contend that FTE's
claims should be dismissed because "public [USPTO] records reflect that SPI

---

sovereign power committed within its own territory.'") (quoting *Banco Nacional
de Cuba v. Sabbatino*, 376 U.S. 398, 401, 84 (1964)).

[131]    While not required, courts may consider expert testimony when
deciding issues of foreign law.  *See* Fed. R. Civ. P. 44.1 ("In determining foreign
law, the court may consider any relevant material or source, including
testimony[.]"); *Bigio v. Coca–Cola Co.*, No. 97 Civ. 2858, 2010 WL 3377503, at
*4 (S.D.N.Y. Aug. 23, 2010), *aff'd*, 675 F.3d 163 (2d Cir. 2012) ("Written or oral
expert testimony accompanied by extracts from various kinds of foreign legal
materials remains the basic mode of proving foreign law.").

[132]    Nor does FTE lack standing due to its status as a government agency
under the Russian Federation's control.  A subsidiary assigned a trademark by its
parent may sue under Section 32(1) even though the parent maintains the power to
dissolve that subsidiary.  *See Novartis Animal Health US, Inc. v. LM Connelly &
Sons, Pty Ltd.*, No. 04 Civ. 10213, 2005 WL 1902085, at *3 (S.D.N.Y. June 14,
2005) (citing *G.H. Mumm Champagne v. Eastern Wine Corp.*, 142 F.2d 499 (2d
Cir. 1944)).

28

[rather than FTE] owns the marks."[133]  The records establish that in 1991, VVO-SPI assigned the marks to PepsiCo under a contract, stating that the marks would revert to VVO–SPI in 2001.[134]  In 1992, VVO-SPI was lawfully privatized and transformed into VAO-SPI.[135]  In 2001, VAO-SPI's successor — SPI — caused PepsiCo to assign the Marks to Allied Domecq, who assigned the marks to SPI.[136] Defendants argue that because there is no break in the chain of title, SPI owns the Marks.[137]  As such, FTE must first prove that the marks were misappropriated before it can bring any claim against Defendants for infringement, dilution, or unfair competition.[138]

*Second*, Defendants argue that "any misappropriation claim FTE may now possess" is "nineteen years too late."[139]  Defendants contend that any misappropriation claim would have accrued in 1992 or 1993, when VAO-SPI allegedly "filed a corporate charter claiming to be the legal successor to VVO-SPI,

---

[133]    Def. Mem. at 21.

[134]    *See id.* at 8-9 (citing USPTO Reel/Frame No. 0793/0750).

[135]    *See id.* at 9.

[136]    *See id.* at 9-10 (citing USPTO Reel/Frame No. 0793/0750; USPTO Reel/Frame No. 2170/0498; USPTO Reel/Frame No. 3828/0485).

[137]    *See id.* at 21.

[138]    *See id.* at 21-22.

[139]    *Id.* at 22-23.

and 'expelled' VVO-SPI as the shareholder in the new entity."[140]  Because New

York has a three year statute of limitations for misappropriation claims, FTE's

claim expired in 1996 at the latest — eighteen years before FTE filed the present

Complaint.[141]  *Third*, Defendants argue that FTE's claims are barred by laches

because "the Russian Federation slept on these claims until 2014."[142]

As an initial matter, FTE need not litigate its state law

misappropriation claim before bringing its federal infringement, trademark

dilution, and unfair competition claims.  In *FTE II*, the Second Circuit explained

that  "ownership of the relevant trademark is one of the 'necessary elements . . . of

trademark infringement under the Lanham Act.'"[143]  "Accordingly, federal courts

may, applying the relevant law, adjudicate the ownership of a trademark as part of

an infringement claim."[144]

---

[140]     *Id.* (citing TAC ¶¶ 45, 48, 50).

[141]     *See Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 288 (1983).

[142]     Def. Mem. at 24.

[143]     *FTE II*, 623 F.3d at 69 (quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 259–60 (2d Cir. 2005)).

[144]     *Id.*  Defendants argue that in *FTE II* the Second Circuit considered only whether "federal courts have *jurisdiction* to consider the validity of this chain of assignments," and that this Court must "ask whether FTE can undermine Defendants' chain of title by stating a misappropriation claim."  Reply Mem. at 7. But there is no requirement that the plaintiff must succeed on their misappropriation claim before they can assert their claim of ownership. *FTE II*,

On a motion to dismiss, it is enough for FTE to allege plausible facts to show that its marks were misappropriated.[145]  Here, the Complaint alleges that after the collapse of the Soviet Union in 1990, the managers and directors of state enterprises "hijacked" those enterprises.[146]  Specifically, VVO-SPI's directors "hijacked" it "to make it appear that VVO-SPI [] had been lawfully transformed into a private joint stock company by creating a private company . . . , VAO-SPI, nearly identical to VVO-SPI, and [] asserting in VAO-SPI's corporate charter that it was VVO-SPI's successor."[147]  But in fact, "VVO-SPI was not transformed into VAO-SPI or otherwise privatized."[148]  The Complaint also states that in 2000 a Russian court, affirmed by Russia's highest court, and the European Court of Human Rights, "h[eld] that VAO-SPI was not VVO-SPI's successor."[149]  As such, FTE has alleged a plausible defect in Defendants' chain of title because neither

---

623 F.3d at 69 ("[I]n order to determine the federal claim for infringement, the district court, as a preliminary matter, permits the plaintiff to establish the facts which underlie [its] claim of ownership.").

[145]     *See Twombly*, 550 U.S. at 570 (holding that a complaint must plead "enough facts to state a claim to relief that is plausible on its face").

[146]     Compl. ¶ 34.

[147]     *Id.* ¶ 35.

[148]     *Id.* ¶ 36.

[149]     *Id.* ¶ 44.

VAO-SPI — nor its successor, SPI — ever legitimately owned the marks.  Thus, it is at least plausible that FTE holds "right, title, and interest" to the Marks, by reason of the Assignment from the Russian Federation.[150]

Next, FTE's Section 32(1) claims are not time-barred.  FTE's infringement, dilution, and unfair competition claims did not accrue until 2001 when Defendants began *using* the marks.  FTE alleges that in January 2001 "SPI induced PepsiCo to purport to assign its rights to the [] marks to Allied Domecq" by "falsely represent[ing] themselves to be VVO-SPI's legitimate successor."[151]  In the Second Circuit, courts apply "New York's six-year fraud statute of limitations to . . . Lanham Act claim[s]."[152]  Under New York's tolling statute, FTE's Section 32(1) claims were tolled in October 2004 when FTE filed its original complaint.[153]  Because the *FTE IV* court did not terminate FTE's Section 32(1) claims "on the merits," and FTE filed the new complaint less than six months later, FTE's Section 32(1) claims are timely.[154]

---

[150]    Assignment at 3.

[151]    Compl. ¶ 39.

[152]    *Parks*, 341 Fed. App'x at 739 (citing *Conopco, Inc.*, 95 F.3d at 191).

[153]    *See* N.Y. C.P.L.R. § 205(a).

[154]    *See id.* ("If an action is timely commenced and is terminated in any other manner than . . . a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction or occurrence . . . within six

Finally, FTE's Section 32(1) claims are not barred by laches because
Defendants cannot show delay.  Because FTE's filed suit within the applicable six-
year limitations period, "there is no presumption of laches and the burden remains
on the defendant to prove the defense."[155]  Defendants adduce no evidence that
Plaintiffs unreasonably delayed in bringing suit or that Defendants were
prejudiced.  The Complaint alleges that in December 2000, when the Russian
Federation learned that VVO-SPI had not been privatized, it sued in a Russian
court.[156]  In December 2001, the Russian Federation formed FTE to sue in the
United States to recover the marks.[157]  FTE filed its original complaint in 2004, less
than six years after Defendants began using the marks, and filed the present
Complaint in February 2014, less than six months after the prior action was
terminated.  Because FTE filed within the statutory period, I cannot find that it

---

months after the termination provided that the new action would have been timely
commenced at the time of commencement of the prior action . . . .").

[155]    *Conopco*, 95 F.3d at 191.

[156]    *See* Compl. ¶¶ 44.  Defendants argue that the Russian Federation was
put on notice that VVO-SPI was not legitimately privatized based on a 1993
decision in the Southern District of New York.  *See* Pl. Mem. at 23-24 (citing
*Financial Matters, Inc. v. PepsiCo., Inc.*, No. 92 Civ. 7497, 1993 WL 378844
(S.D.N.Y. Sept. 24, 1993)).  But in that case, importer plaintiffs challenged
PepsiCo's ownership of the marks, but never alleged that "VAO SPI is [not] the
lawful successor to VVO SPI." *Id.* at *3.  In addition, the court declined to
consider whether VVO-SPI had been privatized.  *See id.* at n.4.

[157]    *See* Compl. ¶¶ 7, 65.

delayed. Even if it had, Defendants are not prejudiced simply because the proceeding is "extensive (and expensive)."[158]

## VI.    CONCLUSION

For the reasons set forth above, Defendants' motion is GRANTED as to Claims 2, 3, 4, 5, 6, 8, and 9, which are dismissed with prejudice. Defendants' motion is DENIED as FTE's Section 32(1) claims — Claims 1, 7, 10, and 11. The Clerk of the Court is ordered to close this motion [Docket No. 22]. A conference is scheduled for September 3, 2014 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             August 25, 2014

---

[158]    Def. Mem. at 25. *See Fourth Toro Family Ltd. P'ship v. PV Bakery, Inc.*, 88 F. Supp. 2d 188, 198 (S.D.N.Y. 2000) ("Prejudice cannot normally be claimed for expenses incurred after the parties were contesting their respective trademark rights.").

**-Appearances-**

**For Plaintiffs:**

Daniel H. Bromberg, Esq.
Jones Day
51 Louisiana Ave. N.W.
Washington, DC 20001
(202) 879-3939

Jessica Anne Rose, Esq.,
Marc Laurence Greenwald, Esq.,
Robert Lloyd Raskopf, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7254

**For Defendants:**

David M. Zionts, Esq.
Covington & Burling, LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 662-5987

Emily Johnson Henn, Esq.
Covington & Burling, LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
(650) 632-4700

Bingham B. Leverich, Esq.,
Eugene Gulland, Esq.
Covington & Burling, LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004

(202) 662-5188

Hope Ivy Hamilton, Esq.
Holland & Hart LLP
1800 Broadway, Suite 300
Boulder, CO 80302
(303) 473-4822

David H. Bernstein, Esq.,
Carl Micarelli, Esq.,
Michael Shaper, Esq.
Debevoise & Plimpton, LLP
919 Third Avenue, 31st Floor
New York, NY 10022
(212) 909-6000

Edward T. Colbert, Esq.
Kenyon & Kenyon LLP
1500 K Street, N.W. Suite 700
Washington, DC 20005
(202) 220-4280