UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

FEDERAL TREASURY ENTERPRISE
SOJUZPLODOIMPORT and OAO
"MOSCOW DISTILLERY CRISTALL,"

Plaintiffs,

v.

SPIRITS INTERNATIONAL B.V., SPI
SPIRITS LIMITED, SPI GROUP SA,
YURI SHEFLER, ALEXEY OLIYNIK,
ALLIED DOMECQ INTERNATIONAL
HOLDING B.V., ALLIED DOMECQ
SPIRITS & WINE USA, INC.,
WILLIAM GRANT & SONS USA,
WILLIAM GRANT & SONS, INC., and
STOLI GROUP (USA) LLC,

Defendants.

------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/24/14

**OPINION AND ORDER**

**14-cv-0712 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

In order to determine whether this Court has subject matter

jurisdiction over this action, I must resolve thorny questions of first impression

under Russian law.  In earlier litigation among these parties, the Second Circuit

ruled that plaintiffs Federal Treasury Enterprise Sojuzplodoimport ("FTE") and

OAO "Moscow Distillery Cristall" ("Cristall") lacked standing to assert claims

under Section 32(1) of the Lanham Act.[1]   In February 2014, plaintiffs brought a

new action against defendants, which include Spirits International B.V., SPI Group

SA, and SPI Spirits Limited (collectively "SPI"); Allied Domecq International

Holding B.V., and Allied Domecq Spirits and Wine USA, Inc. (collectively "Allied

Domecq"); William Grant & Sons USA and William Grant & Sons, Inc.

(collectively "WGS"); and Stoli Group (USA) LLC ("Stoli Group"), arguing, in

part, that FTE had cured the standing defect and should be allowed to re-assert its

Lanham Act claims.[2]   On August 25, 2014, I issued an opinion (the "August 2014

Opinion") granting in part and denying in part defendants' motion to dismiss the

new complaint.[3]   Important to today's opinion, the August 2014 Opinion denied

defendants' motion to dismiss FTE's claims for lack of standing largely because

---

[1]       *See Federal Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*
("*FTE IV*"), 726 F.3d 62, 85 (2d Cir. 2013).  For ease of reading, this Opinion uses
"FTE" to describe all plaintiffs, collectively – Cristall's "rights as a plaintiff are
purely derivative of those held by FTE."  *Id.* at 66.

[2]       *See* Compl. ¶¶ 7, 66.

[3]       *See Federal Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, No.
14 Civ. 712, 2014 WL 4207133 (S.D.N.Y. Aug. 25, 2014), *reconsideration denied*,
No. 14 Civ. 712, 2014 WL 4392535 (S.D.N.Y. Sept. 5, 2014).  Pursuant to that
ruling, plaintiffs' only remaining claims against defendants are their Lanham Act
claims.

the Court had not been presented with expert testimony on Russian law.[4]

Since issuing the August 2014 Opinion, the Court has heard extensive expert testimony, pursuant to Rule 44.1 of the Federal Rules of Civil Procedure ("Rule"), on the relevant Russian law issues impacting Lanham Act standing. In light of this expert testimony, I again address the question of whether plaintiffs have standing to bring their remaining claims.[5] For the following reasons, I find that plaintiffs lack standing and, pursuant to Rules 12(b)(1) and 12(h)(3), dismiss their remaining claims for lack of subject matter jurisdiction.

## II.   BACKGROUND[6]

### A.   The Second Circuit Holding and FTE's Response

This case concerns defendants' alleged misappropriation of U.S. trademarks – namely the iconic Stolichnaya vodka brand – which FTE claims to

---

[4]    *See id.* at *8. Such evidence was critical to the standing inquiry because the Russian Federation had passed a new law that purported to close the gap identified by the Second Circuit in its decision finding that FTE lacked standing to pursue its claims.

[5]    *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts, including [the Supreme Court], have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").

[6]    A detailed factual background and long history of this case is found in this Court's August 2014 Opinion. *See* 2014 WL 4207133, at *1-*4. This section reviews the relevant facts and procedural history pertaining to the narrow issue of how Russian law impacts FTE's standing under the Lanham Act.

own.  As noted above, in August 2013, the Second Circuit held that FTE lacked

standing to sue for trademark infringement because even though the Russian

Federation "entrusted [FTE] with responsibility for using and enforcing the

[trademarks], it had not assigned the trademarks to FTE."[7]  In response to the

Second Circuit's ruling, in February 2014 the Russian Federation issued a decree

("Decree 69") authorizing the transfer of ownership rights in the trademarks at

issue from the Federation to FTE.[8]  Pursuant to Decree 69, FTE and the Russian

Federation entered into an assignment agreement (the "Assignment"), in which the

Russian Federation purportedly assigned the trademarks to FTE and expressly

relinquished any and all interest in the trademarks.[9]  FTE then filed a new lawsuit,

alleging that Decree 69 and the Assignment cured the previous standing defect.

Defendants moved to dismiss FTE's claims in their entirety pursuant

to Rules 12(b)(1) and 12(b)(6), arguing, inter alia, that the Assignment and Decree

69 still failed as a matter of Russian law to confer full ownership rights of the

trademarks to FTE.  The August 2014 Opinion granted defendants' motion as to

plaintiffs' non-Lanham Act claims on the ground of res judicata; however, the

---

[7]   *FTE IV*, 726 F.3d at 85.

[8]   *See* Compl. ¶ 66.

[9]   *See id.*

4

Court denied defendants' motion as to FTE's Lanham Act claims for trademark infringement, contributory infringement, rectification of register, and cancellation of registration.[10]  I noted at the time that the Court could not, without additional testimony from experts on Russian law, rule that FTE lacked standing.[11]

### B.    Rule 44.1 Expert Testimony

Accordingly, pursuant to Rule 44.1, the parties offered expert reports and two days of expert testimony regarding relevant Russian law.  On October 28, 2014, the Court heard summations.[12]  The key questions, which are explained in greater detail below, relate to FTE's ownership rights in trademarks under relevant Russian law, which is codified in the Russian Civil Code.  In the main, the expert reports address two principal questions.  *First*, through the Assignment and Decree 69, could the Russian Federation effect a legally valid transfer of full ownership rights in the trademarks at issue to FTE?[13]  *Second*, if the Assignment was legally

---

[10]      *See* 2014 WL 4207133.

[11]      *See id.* at *8.

[12]      *See* 10/28/14 Hearing Transcript ("Summations Tr.") (Dkt. 88).

[13]      *See* 10/6/14 Legal Opinion of Alexander I. Muranov ("Muranov Rep."), expert for FTE (Dkt. 64); 10/6/14 Declaration of Vladamir Gladyshev ("Gladyshev Decl."), expert for SPI (Dkt. 65); 10/13/14 Amended Declaration of Michael Newcity ("Newcity Decl."), expert for Allied Domecq and WGS (Dkt. 75).  Mr. Muranov and Mr. Gladyshev are managing partners of Russian law firms and have authored many research papers and books covering issues of Russian law.

valid, did it also give FTE the right to sue the Allied Domecq and WGS defendants, who ceased selling vodka bearing the trademarks at issue years ago, for past damages?

Critical to both of these questions is an October 2014 amendment to the Russian Civil Code (the "Amendment"), which took effect just days before the expert reports were filed.[14]  The Amendment states that "[t]he rules of Section [2 of the Civil Code] shall not be applied to the intellectual rights unless otherwise established by the rules of the present Section."[15]  According to FTE's expert, this language confirms that FTE has full ownership rights of the trademarks at issue.[16]  Defendants and their experts vigorously dispute this claim.[17]

---

*See* Appendix 1 to Muranov Rep.; Appendix 1 to Gladyshev Decl.  Mr. Newcity is Deputy Director of the Center for Slavic, Eurasian, and East European Studies at Duke University, a practicing attorney, and editor of the *Survey of East European Law*, a quarterly newsletter dedicated to business law-related developments in the countries of the former Soviet Union and Eastern Europe.  *See* Appendix 1 to Newcity Decl.  The parties have not contested the expert status of any of the three experts.  *See* Day 1 Tr. at 30:2-30:10 (Mr. Muranov); *id.* at 115:9-115:12 (Mr. Gladyshev); Day 2 Tr. at 4:17-4:22 (Mr. Newcity).

[14]     *See* Muranov Rep. ¶ 70.

[15]     Russian Civil Code art. 1227(3).

[16]     *See* Muranov Rep. ¶ 70.

[17]     *See* 10/15/14 Hearing Transcript ("Day 1 Tr.") (Dkt. 81); 10/21 Hearing Transcript ("Day 2 Tr.") (Dkt. 79); Summations Tr.

## III.   LEGAL STANDARD

### A.   Subject Matter Jurisdiction

Rule 12(b)(1) provides for the dismissal of a claim when a federal court lacks subject matter jurisdiction.  A federal court has an independent duty to determine that it has subject matter jurisdiction and, pursuant to Rule 12(h)(3), may raise the issue sua sponte at any time.[18]  "Rule 12(h)(3) is governed by the same standard as applied to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)."[19]  Under that standard, the proponent of jurisdiction (typically the plaintiff) bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.[20]

"In reviewing a *facial* attack to the [C]ourt's jurisdiction, we draw all facts – which we assume to be true unless contradicted by more specific allegations or documentary evidence – from the complaint and from the exhibits attached

---

[18]    *See* Fed. R. Civ. P. 12(h)(3); *Arbaugh*, 546 U.S. at 514.

[19]    *CP Investors Grp., LLC v. Deutch*, No. 13 Civ. 5228, 2014 WL 1327975, at *3 (S.D.N.Y. Apr. 3, 2014).

[20]    *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). *See also Goonewardena v. New York*, No. 05 Civ. 8554, 2007 WL 510097, at *6 (S.D.N.Y. Feb. 14, 2007) ("[T]he burden of demonstrating that the court has subject matter jurisdiction over the case falls on the plaintiff[,] as it is the plaintiff who seeks to invoke the court's jurisdiction.").

thereto."[21]  However, to the extent that *jurisdictional facts* are in dispute,

"'jurisdiction must be shown affirmatively, and that showing is not made by

drawing from the pleadings inferences favorable to the party asserting it.'"[22]  In

fact, "in dismissing a complaint for lack of subject-matter jurisdiction under Rule

12(b)(1), a court may 'refer to evidence outside the pleadings.'"[23]  Where questions

of foreign law bearing on subject matter jurisdiction require testimony from

foreign law experts pursuant to Rule 44.1, plaintiffs' factual allegations deserve

closer scrutiny, and the Court is not limited to the allegations contained in the

complaint.[24]

---

[21]     *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (emphasis added) (internal citations omitted).

[22]     *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).  *Accord London v. Polishbook*, 189 F.3d 196, 199 (2d Cir. 1999) (citations omitted) ("[I]t is the affirmative burden of the party invoking [federal subject matter] jurisdiction . . . to proffer the necessary factual predicate [—] not just an allegation in a complaint [—] to support jurisdiction.").

[23]     *Burfeindt v. Postupack*, 509 Fed. App'x 65, 67 (2d Cir. 2013) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

[24]     *See City of Harper Woods Emps. Ret. Sys. v. Olver*, 577 F. Supp. 2d 124, 128 (D.D.C. 2008), *aff'd*, 589 F.3d 1292 (D.C. Cir. 2009) (finding that a challenge to standing requiring the testimony of foreign law experts under Rule 44.1 to be a factual, not facial, challenge to jurisdiction, permitting the Court to consider any relevant evidence, in accordance with Rule 44.1).

## B.     Foreign Law Expert Testimony Under Rule 44.1

Pursuant to Rule 44.1, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."[25] "Although the Court may consider expert testimony, it need not accept the expert's opinions, and the ultimate determination of foreign law rests with the Court."[26]

## IV.   APPLICABLE LAW

## A.     Lanham Act Standing

Section 32(1) of the Lanham Act "protects only registered trademarks."[27]  Under that section, a party has a cause of action "against any person who 'uses in commerce any . . .  imitation of a registered mark . . .  likely to cause confusion, or to cause mistake, or to deceive.'"[28]  However, "[t]his cause of action is available . . . only to 'registrant[s]' of the trademarks at issue, a term the Act defines as embracing the actual registrant's 'legal representatives,

---

[25]     Fed. R. Civ. P. 44.1.

[26]     *Ancile Inv. Co. v. Archer Daniels Midland Co.*, 992 F. Supp. 2d 316, 321 (S.D.N.Y. 2014) (citing *Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 586 (2d Cir. 2005)).

[27]     *FTE IV*, 726 F.3d at 72 (citing 15 U.S.C. § 1114(1)).

[28]     *Id.* (quoting 15 U.S.C. § 1114(1)).

predecessors, successors and assigns.'"[29]

Courts in the Second Circuit have long held that "a party is not an assign for standing purposes under the Lanham Act unless that party owns the mark at issue."[30]  Moreover, the Second Circuit has "accepted that a transfer of an ownership interest in a mark is a predicate to standing for any putative assign."[31]

## B.    Relevant Russian Law[32]

Because of the Lanham Act's requirement that an "assign" own the trademark at issue, the Court must examine relevant Russian law, which governs the ownership rights of enterprises such as FTE.  Integral to the Court's resolution of FTE's ownership rights in the trademarks at issue are two main areas of Russian law governed by the Russian Civil Code:  (1) the nature of unitary enterprises, such as FTE, and their ownership rights, and (2) the Civil Code's definition of "property rights," especially as those rights relate to trademarks.  First, I will review Decree

---

[29]    *Id*. (quoting 15 U.S.C. § 1127).

[30]    *Id.* at 75.

[31]    *Id.* at 76 (citing *DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621 (2d Cir. 1980)).

[32]    In this section, I review the Russian law applicable to the standing issue.  The Court's understanding of the applicable law is drawn from the experts' reports and testimony.  Unless otherwise noted, the applicable law is undisputed.  However, not surprisingly, the parties dispute how to *interpret* the applicable law.  I describe those disagreements in the discussion section below.

69 and briefly explain the organization and structure of the Russian Civil Code, an understanding of which is essential to interpret the relevant Civil Code provisions. Then, I will review the Civil Code provisions most pertinent to resolving FTE's ownership rights in trademarks.

### 1. The Civil Code and Decree 69

Russia is a civil law country.[33]  Accordingly, the "binding substantive rules are to be found exclusively in the black letter statutory law."[34]  Russia's statutory law is contained within the Russian Civil Code, which is the second-highest body of law, behind only the constitution of the Russian Federation.[35]  The Civil Code has no real Western law analogue because of its sheer breadth of coverage and quasi-constitutional status.[36]  Given the Civil Code's importance to the Russian legal system, where a government decree – such as Decree 69 – or order from the President of the Russian Federation conflicts with the Civil Code, the Civil Code applies over the decree.[37]

---

[33]  *See* Gladyshev Decl. ¶ 29.

[34]  *Id.*

[35]  *See id.* at ¶ 33.

[36]  *See id.*

[37]  *See* Russian Civil Code. art. 5(3); Muranov Rep. ¶ 23.

The Civil Code itself is divided into four parts.[38]  Part 1 of the Civil Code contains the foundational, general concepts of Russian law.  It is considered the most important part of the Civil Code, and when its provisions conflict with other provisions in other parts of the Civil Code, the general rules of Part 1 will typically apply over the specific rules in other parts absent special statutory provisions to the contrary.[39]  Part 4 of the Civil Code, which was not enacted until 2006 – more than eleven years after Part 1 went into effect – outlines rules regarding intellectual property.[40]

The Code is divided further into sections, numbered consecutively. Sections 1 and 2 are contained within Part 1 of the Civil Code; Section 7, which includes the Amendment and specific rules regarding trademarks and intellectual property, is contained within Part 4 of the Civil Code.[41]  Specific rules are called "articles," which are contained within the parts and sections of the Civil Code and are also numbered consecutively (*e.g.* article 5 is contained within Section 1 of Part 1, Article 296 is contained within Section 2 of Part 1, Article 1227 is contained

---

[38]     *See* Gladyshev Decl. ¶ 31

[39]     *See id.* ¶ 37.

[40]     *See id.* ¶ 31.

[41]     *See generally* Summations Tr.

within Section 7 of Part 4).[42]

> In order to determine whether the Civil Code conflicts with Decree 69, it is necessary to review the language of the decree.  Specifically, Decree 69 authorizes FTE to "enter into" the Assignment,  "passing to [FTE] the rights of the Russian federation for the trademarks that contain such verbal symbols as "Stolichnaya" and/or "Stoli" used within the territory of the United States of America."[43]  Thus, the Decree purports to allow FTE to own full rights to the trademarks at issue.

### 2.    Unitary Enterprises and Operative Management

> As explained in Section 1 of the Civil Code, a treasury enterprise, such as FTE, is a "unitary enterprise," which is defined by Article 113 of the Civil Code as "a commercial organization which has not been granted the right of ownership of the property assigned to it by the owner."[44]  Under the Civil Code, "[t]he property of a state or municipal unitary enterprise is respectively state or municipal property, and belongs to such enterprise by the right of economic

---

[42]     *See generally id.*

[43]     Decree 69, Ex. 1 to Gladyshev Decl.

[44]     Russian Civil Code art. 113.

management or operational administration."[45]

The limited rights of property ownership in operative management are described in Section 2 of the Civil Code, specifically in Articles 296 and 297.[46] Article 296 explains that a unitary enterprise "exercises the rights of possession, use and disposition of such property [granted to it] within the limits established by law and in accordance with the purposes of [its] activities, the tasks assigned to [it] by the owner and the designated purpose of the property."[47] This provision also clarifies that the "owner of property granted to a budget-supported enterprise or institution has the right to take back the property if it is deemed to be excessive or is not being used or is being used for purposes other than those for which it was designated, and to dispose of it as he deems fit."[48] To that end, Article 297 states that a unitary enterprise has the "right to alienate or by other means dispose of property granted to it only with the consent of the owner of this property."[49]

---

[45]     *Id.* "Operational administration" is the same as "operative management," which is discussed in greater detail below.

[46]     *See id.* art. 115 ("The rights of a budget-supported state enterprise to the property assigned to it shall be defined in accordance with Articles 296 and 297 of the present Code and the law on state and municipal enterprises.").

[47]     *Id.* art. 296.

[48]     *Id.*

[49]     *Id.* art 297.  Article 299 also states that "[t]he . . . property acquired by a unitary enterprise . . . by contract or other grounds, are subject to . . . operational

Article 157.1 of the Civil Code, which is found not in Section 1, expands on the definition of "consent," noting that "[a] prior consent for . . . a transaction shall contain a definition of the subject of the transaction."[50]

### 3.      Property Rights and Trademarks

The crux of the experts' disagreement regarding the Russian law applicable to this case is how to define "property" under the Russian Civil Code. Throughout two days of testimony, none of the experts could identify a single case in the Russian courts that has squarely addressed and resolved the primary issue before this Court – whether the Civil Code's definition of "property" excludes ownership rights in trademarks.  If it does, and trademark rights are not "property" under the Civil Code, then FTE can hold trademarks on its own, free from the severe ownership restrictions imposed by operative management.  If "property" includes trademark rights, then FTE must hold the trademarks under operative management, subject to those restrictions. Here, I review the relevant Civil Code provisions addressing property rights and trademarks.

---

administration . . . in accordance with the procedure specified by the present Code, other laws and legal acts for acquisition of the right of ownership." *Id.* art. 299.

[50]      *Id.* art 157.1.  In interpreting Article 157.1, Russian courts require effective consent to include specific information about the transaction for which consent is sought, including the basic terms and conditions of the transaction, such as the price and parties.  *See* Day 1 Tr. at 103:19-25, 102:16-21, 154:10-11.

Part 4 of the Civil Code addresses intellectual property. Article 1226, entitled "Intellectual Rights," provides as follows:

> Intellectual rights, *which include an exclusive right that is a property right*, and in instances provided for by the present Code, also personal nonproperty rights and other rights . . . shall be deemed results of intellectual activity and means of individualization equated thereto (results of intellectual activity and means of individualization).[51]

Article 1227, the third paragraph of which constitutes the Amendment, provides that:

> (1)    Intellectual rights do not depend upon the right of ownership and other rights in things to the physical carrier (or thing) in which the respective result of intellectual activity (or means of individualization) is expressed.
>
> (2)    The transfer of the right of ownership to a thing does not entail the transfer or granting of the intellectual rights to the result of intellectual activity or to the means of individualization expressed in this thing, with the exception of the case provided by the second subparagraph of Paragraph 1 of Article 1291 of the present Code.
>
> (3)    The rules of Section II of the present Code *shall not be applied to the intellectual rights* unless otherwise established by the rules of the present Section.[52]

---

[51]    Russian Civil Code art. 1226 (emphasis added).

[52]    *Id.* art. 1227 (emphasis added). The Amendment went took effect on October 1, 2014. It does not apply retroactively. *See* Muranov Rep. ¶ 72.

16

Article 128, in Part 1, Section 1 of the Civil Code, is entitled "Objects of Civil Law Rights."[53]  "Among the objects of civil law rights are:  things, including money, commercial paper and securities; *other property, including property rights*; work and services; *protected results of intellectual activities and similar forms of individualized creativity (intellectual property)*; nonmaterial values."[54]  As noted above, Article 113 refers to "property" in the context of unitary enterprises' rights of ownership, explaining that a unitary enterprise "has not been granted the right of ownership of the property assigned to it by the owner."[55]

A separate statutory type of law inferior to the Civil Code, Law 161, states that a unitary enterprise "is entitled to hold stamps and blanks with its firm name, its own emblem as well as the trademark registered under the established procedure, and other means of individualization."[56]  Without specifically referencing unitary enterprises, Article 1478 of the Civil Code, found in Part 4, states that the "holder of the exclusive right to a trademark may be a legal person

---

[53]      Russian Civil Code art. 128.

[54]      *Id.* (emphasis added).

[55]      *Id.* art. 113.

[56]      Law 161 art. 2.  However, Law 161 also defines "unitary enterprise" as "a commercial organization not having the right of ownership of the property given to it."  *See also* Day 1 Tr. at 167:2-169:6 (explaining that Law 161 is inferior to the provisions of the Civil Code).

or an individual entrepreneur."[57]  Article 48 of the Civil Code states that a "legal

person is an organization which has in its ownership, economic management or

operational administration a specific property and fulfills its obligation with this

property, may acquire and exercise property and personal non property rights in its

own name . . . and be a plaintiff and defendant in court."[58]  Finally, Article 49 of

the Civil Code clarifies the rights of a legal person more generally:

> A legal person may possess civil law rights corresponding
> to the purposes of the activities specified in its foundation
> documents, and bear the responsibilities associated with
> these activities.   Commercial organizations, *with the
> exception of unitary enterprises* and other types of
> organizations specified by law, may possess civil law rights
> and bear civil responsibilities necessary for conducting any
> types of activities not prohibited by law.[59]

## C.  The Act of State Doctrine

"[T]he act of state doctrine [] concerns foreign governments' conduct

within their own territory:  it holds that generally 'the courts of this country [will

not] inquir[e] into the *validity of the public acts* [of] a recognized foreign sovereign

power committed within its own territory.'"[60]  However, it is black-letter law that

---

[57]    Russian Civil Code art. 1478.

[58]    *Id.* art. 48.

[59]    *Id.* art. 49 (emphasis added).

[60]    *Republic of Iraq v. ABB AG*, 768 F.3d 145, 174 (2d Cir. 2014)
(quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964)

the doctrine "does not prevent examination of the validity of an act of a foreign state with respect to a thing located, or an interest localized, outside of its territory."[61]  While "'the situs of intangible property is about as intangible a concept as is known to the law,'"[62] "[g]enerally courts have viewed the situs of the right to use a trademark or to market products 'to be in that nation granting the marketing rights or the right to use the trademark itself rather than in that nation in which the person or company who was given the right to use the trademark or who manufactures the product is located.'"[63]  Therefore, the doctrine does not apply to international trademark disputes in which a foreign government declares, through a formal decree, an act, directive, or otherwise, *U.S. trademark rights* to be its own

---

(emphasis added)).

[61]    Restatement (Second) of Foreign Relations § 43(1) (1965).  *Accord Zwack v. Kraus Bros & Co.*, 237 F.2d 255 (2d Cir. 1956) (refusing to apply doctrine in a trademark dispute where the government of Hungary declared that it owned U.S. trademark rights in a liquor manufacturer and purportedly transferred by an agreement those rights to another U.S. entity); *Boland v. Bank Sepah-Iran*, 614 F. Supp. 1166, 1173 (S.D.N.Y. 1985) (holding that the doctrine does not apply "when the act in question concerns a thing or interest located beyond the confines of the foreign state's territory").

[62]    *Films by Jove, Inc. v. Berov*, 341 F. Supp. 2d 199, 207 (E.D.N.Y. 2004) (quoting *Tabacalera Severiano Jorge v. Standard Cigar Co.*, 392 F.2d 706, 714 (5th Cir. 1968), *cert. denied*, 393 U.S. 924 (1968)).

[63]    *Id.* 207 (quoting 12 A.L.R. Fed. 707 § 14(b)).

19

property, or that of another foreign or U.S. entity.[64]

## V.   DISCUSSION

To determine whether FTE has standing, I must decide one overarching question:  does FTE have a sufficient ownership interest in the trademarks at issue pursuant to the Assignment and Decree 69 to qualify as an "assign" under the Lanham Act?  As will become quickly apparent, the task of answering this question is extremely difficult because it requires a U.S. court, which lacks any familiarity with Russian law, to address *issues of first impression under Russian law*.  After hearing two days of expert testimony and several hours of thorough and thoughtful summations, I have decided that the answers to these novel issues resolve the Lanham Act standing question in favor of defendants, although this is undoubtedly a close call.

Because of the murkiness of Russian law regarding these questions of first impression, it is helpful to frame the Court's approach to resolving them.  The

---

[64]   *See Zwack*, 237 F.2d 255; *Films by Jove, Inc.*, 341 F. Supp. 2d at 207 (refusing to apply the Act of State Doctrine to a copyright infringement suit where the Russian Federation issued a directive in response to U.S. litigation declaring rights to U.S. copyrights to belong to a state *unitary enterprise*); *F. Palicio y Compania, S. A. v. Brush*, 256 F. Supp. 481, 488 (S.D.N.Y. 1966), *aff'd sub nom. F Palicio Y Compania, S. A. v. Brush*, 375 F.2d 1011 (2d Cir. 1967) (noting that, where U.S. trademark rights are at issue, courts will not apply the doctrine to a foreign state's decree declaring that a certain entity, and not another, owns those rights, "even where directed against its own nationals").

first question is whether, under the Russian Civil Code, trademarks are "property rights" such that they can only be held in operative management.  If the answer is no, then the inquiry ends.  FTE is the exclusive holder of the trademarks pursuant to Decree 69 and the Assignment, qualifying as an "assign" under the Lanham Act, and has standing.  If the answer to the first question is yes, the next question is whether, through the Assignment and Decree 69, the Federation effectively consented to dispose of its ownership interest in the trademarks under the operative management consent provisions of Articles 296 and 297.  If the answer to this second question is no, then FTE lacks standing; if yes, it has standing.  And, if FTE has standing, the final issue, which pertains only to the Allied Domecq and WGS defendants – is whether the Assignment and Decree 69 conferred on FTE the *right to sue for past damages*.  With this framework, I now turn to the experts' arguments.

## A.    Overview of Experts' Arguments

### 1.    FTE's Expert

Mr. Muranov's thesis is that the legal regime of rights in rem, which governs physical, tangible property, is not applicable to intellectual property rights.[65]  Because of this, the foundational Part 1, Section 1 Civil Code provisions

---

[65]    *See generally* Muranov Rep.

defining "property" and "property rights," and the corresponding provisions

addressing FTE's limited, operative management rights in such "property," do not

apply to *trademarks* held by FTE.[66]  Accordingly, FTE can legally hold trademarks

outside of the operative management scheme.  The Assignment and Decree 69

were legally effective in transferring full rights to the trademarks at issue from the

Russian Federation to FTE.[67]

Mr. Muranov finds support for his position in scholarship, case law,

and, perhaps most importantly, the Amendment, which he claims confirms the

accuracy of his view.  This view requires a bit of historical perspective.  In essence,

Mr. Muranov argues that since the collapse of the former Soviet Union, Russian

legal scholars have debated whether a unitary enterprise could hold a trademark

outside of operative management, with most scholars taking the position that a

---

[66]     *See generally id.*

[67]     Mr. Muranov insists that in Russian law, the English term "own" is
used not in reference to owning *trademarks*, but to tangible property, or *rights in
rem*.  By contrast, the term "hold" is used to connote ownership of trademarks,
which Mr. Muranov defines as the "exclusive right."  Muranov Rep. ¶ 15.  *See also*
10/31/14 Letter from Marc Greenwald, counsel for FTE, to the Court ("FTE Post-
Summations Ltr.").  Defendants thoroughly contest the relevance of this distinction
and in fact point out that a Russian Supreme Court case cited by FTE in its letter
refers to the Russian Federation "*owning*" exclusive rights to trademarks.  *See*
11/3/14 Letter from Emily Henn, counsel for SPI, to the Court ("SPI Post-
Summations Ltr.").

unitary enterprise could hold the exclusive right to a trademark on its own.[68]  The

debate stems from increased privatization in Russia after the Soviet Union's

collapse, which sparked fears in the Russian Federation that a unitary "enterprise

could alienate [trademarks] without due legal ground."[69]  In the midst of this

debate, Russian legislators began drafting the Russian Federation's Civil Code,

which ultimately remained silent on unitary enterprises' ownership rights in

trademarks as they related to operative management.[70]  In the years that followed,

Mr. Muranov claims the "case law was divided" on this issue.[71]  During this

period, Mr. Muranov concluded that it was legally permissible for a unitary

enterprise to hold a trademark either in operative management or outside of it.[72]

---

[68]     *See* Day 1 Tr. at 43:1-45:14.

[69]     *Id.* at 43:7.

[70]     *See id.* at 43:1-45:14.  Mr. Muranov stated that in Soviet times, a
unitary enterprise could unquestionably be "the exclusive holder of a trademark."
*Id.* at 44:20-44:22.

[71]     *Id.* at 45:7.  However, Mr. Muranov later acknowledged on cross-
examination that the real divide concerned distinguishing rules about rights in rem
from intellectual property rights.  Mr. Muranov could not cite any case that
squarely held that a unitary enterprise could hold a trademark outside of operative
management.  *See id.* at 78:9-79:16.  Nor, in fairness, could Mr. Gladyshev find a
case squarely holding the opposite.  *See id.* at 176:23-177:5.

[72]     *See id.* at 44:15-16.  Mr. Muranov also points to a trademark
registration in Chatka, a brand name for a Russian canned crab company, to show,
allegedly, that FTE can and has held other trademarks outside of operative
management.  *See id.* at 54:16-55:10.

According to Mr. Muranov, this duality changed with the Amendment, which states that the rules of Section 2 of the Civil Code, a section which, in part, governs the ownership rights of unitary enterprises, do not apply to intellectual property rights.[73]  Although the Amendment, which went into effect after the passage of Decree 69 and the execution of the Assignment, is not retroactive, Mr. Muranov claims that it supports FTE by clarifying that there is now only one way, not two, for a unitary enterprise to hold the exclusive right to a trademark:  outside of the regime of operative management.[74]  Because Mr. Muranov interprets the Amendment as a clarification in the law – not a change in the law – he insists that retroactivity is not a problem; FTE was always permitted to hold trademarks outside of operative management.[75]

However, assuming *arguendo* that FTE could not hold the trademarks outside of operative management, and that the Amendment does not apply, Mr.

---

[73]    In support of the Amendment's relevance to the issues in this case, Mr. Muranov states that in 2008, former Russian president Dmitry Medvedev created a commission to recommend major changes to the Civil Code.  In 2009, the commission recommended "excluding any confusion of the[] two legal regimes [of intellectual property and rights in rem]."  Muranov Rep. ¶ 69.  However, Mr. Muranov does not provide any evidence linking this general 2009 recommendation to the passage of the Amendment.

[74]    *See id.* at 46:25-47:7.

[75]    *See id.*

Muranov believes that the Assignment and Decree 69 give FTE the Russian Federation's prior, irrevocable consent to dispose of trademarks at FTE's discretion, leaving FTE with sufficient ownership rights in the trademarks at issue to have Lanham Act standing.  The basis for his argument is Article 297 of the Civil Code, which states that a unitary enterprise may dispose of its property "with the consent of the owner of the property."[76]  Mr. Muranov translates the Russian text of the Assignment as the Russian Federation transferring "full rights" in the trademarks at issue to FTE – this language constitutes the "consent" required by Article 297.[77]  And, while a valid prior consent usually requires some degree of specificity regarding the nature of the consent pursuant to Article 157.1, the omission of certain terms may be permissible depending upon the relationship of the parties.[78]

### 2.    SPI's Expert

Mr. Gladyshev dismisses Mr. Muranov's historical perspective and

---

[76]     Russian Civil Code art. 297.

[77]     *See* Summations Tr. 73:11-73:16.  Mr. Gladyshev disputes Mr. Muranov's translation of the Assignment, reading the phrase triggering consent not as "full rights," but as rights "to the full extent."  Day 1 Tr. 114:18-115:8.  Mr. Gladyshev therefore contends that, because of the legal restrictions of operative management, the "full extent" of FTE's rights falls short of full, exclusive rights to the trademarks.  *See id.*

[78]     *See* Day 1 Tr. at 106:6-106:8.

the relevance of the Amendment to the trademarks at issue, instead offering a straightforward, seemingly simplistic structural analysis of certain Civil Code provisions to support his position that FTE still holds the trademarks under operative management.  None of these provisions are contained within Section 2 of the Civil Code – the section affected by the Amendment.

Mr. Gladyshev's argument proceeds as follows.  Article 1226 of the Civil Code (in Part 4, which addresses intellectual property rights) defines "intellectual rights" as "includ[ing] an *exclusive right* that is a *property* right."[79] Article 113 of the Civil Code, which defines the rights of unitary enterprises, states that a unitary enterprise is a "commercial organization which has not been granted the right of ownership of the *property* assigned to it by the owner."[80]  Mr. Gladyshev closes the gap between "property," as defined by Article 113, and "property right," in the intellectual property context of Article 1226, by relying on Article 128, which defines "objects in civil law rights" to include "other property, including property rights."  Accordingly, trademark rights must be "property" that can only be held by a unitary enterprise in operative management.

To the extent that Decree 69, the Assignment, and the Amendment

---

[79]     Russian Civil Code art. 1226 (emphasis added).

[80]     *Id.* art. 113 (emphasis added).

conflict with the above provisions, Mr. Gladyshev believes that the proper method of interpreting Russian law favors defendants.  According to Mr. Gladyshev, where Civil Code provisions conflict, the earlier, foundational ones – in Section 1 – apply over, or at least inform the interpretation of, later ones, and where the Civil Code conflicts with decrees, the Civil Code prevails.[81]

As for the Amendment, Mr. Gladyshev testified that the only published legal analysis regarding FTE's ownership rights in intellectual property *since the enactment of the Amendment* clarifies that FTE does not, and cannot, own state property, tangible or intangible.[82]  Specifically, the Rosalcohol Note states: "Russian state unitary enterprises . . . [are] not [] the owners of the state property *and state intellectual property*."[83]  Instead, defendants insist that the Amendment and Article 128 of the Civil Code are consistent – both make clear that "things" associated with trademarks are distinct from those trademarks, and the Amendment

---

[81]    *See* Gladyshev Decl. ¶¶ 37-39.

[82]    *See* October 2014 Rosalcohol Explanatory Note, SPI Hearing Ex. 4 ("Rosalcohol Note") ("Because foreign courts find it difficult to understand the essence of the Russian state unitary enterprises which, *not being the owners* of the state property *and state intellectual property*, act to protect it and use it on their own behalf . . . .") (emphasis added).  Rosalcohol, the organization that published the note, is itself an arm of the Russian Federation, its rough U.S. equivalent being the Food and Drug Administration.  *See* Day 1 Tr. at 146:24-147:1.

[83]    *Id.*

27

merely signals that the remedies available under Part 1, Section 2 do not apply to certain trademarks and intellectual property associated with underlying rights in rem with which they are associated.[84]

Mr. Gladyshev also rejects FTE's alternative argument regarding consent. At bottom, Mr. Gladyshev contends that there is no such concept in Russian law as "a blanket consent."[85] Mr. Gladyshev posits that allowing blanket consent pursuant to Article 297 would defeat the entire operative management scheme. For this reason, Article 157.1 of the Civil Code confirms that consent must include basic terms and conditions of a specific transaction for which consent is being sought.[86] FTE's own expert admits that the Assignment did not include these basic terms.[87] Finally, apart from the specific consent provisions of the Civil Code, Mr. Gladyshev quarrels with Mr. Muranov's translation of the Assignment as transferring "full rights;" instead, he reads the Assignment to transfer rights to the "full extent" of the law.[88] Thus, he concludes that whatever rights the Russian Federation transferred to FTE pursuant to the Assignment are limited by the Civil

---

[84]     *See* Day 1 Tr. 117:9-117:21.

[85]     *Id.* at 155:4-5.

[86]     *See id.* at 156:10-156:15.  *See also* Russian Civil Code art. 157.1.

[87]     *See* Day 1 Tr. at 105:12-17.

[88]     *Id.* 114:18-115:8.

Code and the relevant restrictions of operative management, consent notwithstanding.

### 3.    Allied Domecq's and WGS' Expert

On behalf of Allied Domecq and WGS, Mr. Newcity offers an additional argument:  even if the Assignment effectively transferred exclusive rights to the trademarks at issue to FTE, the Assignment did not transfer to FTE the right to sue for past damages on those trademarks.  Mr. Newcity offers several arguments in support of this contention, but they all boil down to this:  regardless of the law regarding rights to trademarks, the right to sue for damages for past infringement is undeniably a property right subject to operative management.[89]

### B.    FTE Cannot Hold Trademarks Outside of Operative Management

Based on the evidence before the Court, I find that FTE cannot hold exclusive rights to trademarks outside of operative management.  This has not been an easy decision.  I am somewhat uncomfortable telling a foreign government that a validly enacted decree cannot achieve the result that was clearly intended by its passage.  I am also uncomfortable interpreting various sections of the laws of a foreign country – which I can only review in imperfect translation – when those sections have not yet been addressed and defined by the courts of that country.  But

---

[89]    *See* Newcity Decl. ¶ 27.

Rule 44.1 requires me to determine the relevant foreign law in a dispute pending in a U.S. court.  While I can rely on all available sources, and credit whatever expert testimony I choose, there is one thing I cannot do which would be the most helpful. I cannot certify these unsettled questions of Russian law to the Russian courts.[90] Given the increasing frequency with which high-stakes international disputes are litigated in U.S. courts, especially in this one, I agree with the sentiments expressed by Judge Raymond Lohier of the Second Circuit in a recent concurring opinion:  it may be prudent for Congress to consider developing an international certification process similar to our domestic one "pursuant to which federal courts may certify an unsettled and important question of foreign law to the courts of a foreign country."[91]  While creating and implementing such a system would present many obstacles, both legal and practical, the policy concerns implicated by the current

---

[90]     During opening statements, I inquired about the applicability of forum non conveniens, a doctrine potentially helpful to courts facing similar predicaments.  *See* Day 1 Tr. at 13:22-14:15.  In response, FTE represented that because it seeks an order directing the U.S. Patent and Trademark Office to change trademark registrations – relief an alternative Russian forum could not grant – forum non conveniens does not apply.  *See id.*  Based on this representation, I decline to pursue the applicability of forum non conveniens further.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (noting that where the remedy available in the alternative forum is so "inadequate or unsatisfactory that it is no remedy at all," a case should not be dismissed for forum non conveniens).

[91]     *Terra Firma Investments (GP) 2 Ltd. v. Citigroup Inc.*, 716 F.3d 296, 301 (2d Cir. 2013) (Lohier, J., concurring).

case warrant further consideration.

### 1.    Mr. Muranov's Argument Lacks Sufficient Support

Mr. Muranov's argument, which hinges on a distinction between rights in rem and the legal regime of intellectual property, while persuasive at first blush, lacks sufficient support in Russian case law and the Civil Code.  Because the instant case is factually distinguishable from all of the Russian cases Mr. Muranov and Mr. Gladyshev cite in support of their respective arguments regarding FTE's ownership rights in trademarks, I must rely predominantly on the Civil Code.[92]

There is indeed some support in the Civil Code for Mr. Muranov's core argument.  Article 128, the all-important "bridge" defendants must cross from Article 1226's definition of intellectual rights as a "property right" to Article 113's restriction on unitary enterprises' property ownership, seems to make some distinction between rights in rem and intellectual rights.  Reading Article 128 in its entirety, there is a separate clause appearing after the key one, "other property, including property rights," which describes "protected results of intellectual activities and similar forms of individualized creativity (intellectual property)."[93]

---

[92]    Both Mr. Muranov and Mr. Gladyshev agree on the Civil Code's supremacy relative to governmental decrees and other sources, including scholarship.  *See, e.g.*, Muranov Rep. ¶ 24; Gladyshev Decl. ¶ 39.

[93]    Russian Civil Code art. 128.

This clause appears after "work and services," which is clearly not property.  The clause before "other property, including property rights" describes clear rights in rem, such as "things."[94]  Therefore, Mr. Gladyshev's selective focus on "other property, including property rights" elides a possible distinction in this key provision between tangible property and intellectual property.

The problem for Mr. Muranov and FTE, though, is that there is little or no support in case law and other provisions of the Civil Code for this distinction.  While Article 1478 and Law 161 suggest that a unitary enterprise can hold trademarks, the context of Law 161 undermines Mr. Muranov's argument.  At most, I can conclude that FTE may be entitled to hold a trademark representing its own identity.[95]  There is simply no law or Russian case that explicitly states, or even mildly implies, that a trademark assigned to a unitary enterprise is a form of property that can be held outside of operative management.[96]  And, given the

---

[94]     *Id.*

[95]     *See* Law 161 art. 2 (noting that a unitary enterprise, which is defined as "a commercial organization not having the right of ownership of the property given to it," can have a "round seal with its full corporate name . . . is entitled to hold stamps and blanks with its firm name, its own emblem as well as the trademark . . .").

[96]     The Chatka trademark that Mr. Muranov focuses on merely shows that a trademark can be registered in FTE's name – not that FTE can hold an exclusive right to it outside of operative management.  *See* Summations Tr. 60:3-60:9.

numerous Civil Code provisions and cases reciting the heavy restrictions on

unitary enterprises' ownership rights, it would stand to reason that if an exception

for trademarks or intellectual property existed, it would be explicitly codified.

> ### 2.   The Amendment Does Not Clarify or Confirm FTE's Legal Capacity to Hold Trademarks Outside of Operative Management

To that end, Mr. Muranov argues that the distinction is codified – at

least as of October 1, 2014 – in the Amendment.  The Amendment does state that

the rules of Section 2 do not apply to intellectual rights.[97]  To be sure, some of the

provisions of Section 2, though not all, govern the property ownership rights of

unitary enterprises.[98]  And, in 2009, a Russian Federation commission tasked with

proposing changes to the Civil Code recommended making a general distinction

"between the exclusive right, which belongs to the state institution, and the right of

operational management as a kind of rights in rem."[99]  Finally, and perhaps most

convincingly, the Amendment seems a fitting resolution to the scholarly debate

within the historical framework Mr. Muranov described in his testimony.

_____

[97]    *See* Russian Civil Code art. 1227.

[98]    However, there are numerous other provisions in other sections of the Civil Code governing these rights as well, including Section 1, which the Amendment does not affect.

[99]    Muranov Rep. ¶ 69.

Unfortunately for FTE, there is no concrete evidence, case law, or statutory language supporting Mr. Muranov's stance on the purpose of the Amendment.  Section 2 of the Civil Code contains many provisions that have nothing to do with unitary enterprises.  And, while Mr. Muranov's report notes that in 2009 a Russian Federation commission recommended that legislators more clearly distinguish between intellectual property and rights in rem regimes, there is no evidence that the Amendment was drafted in response to this recommendation.  Nor is there any evidence that the *legislative body* – the drafters and revisers of the Civil Code – ever considered the recommendation, which emanated from the American equivalent, roughly, of the *executive branch*.[100]  Mr. Muranov makes an unsupported leap from a vague 2009 recommendation to the conclusion that a 2014 Amendment specifically adopted a five-year-old recommendation.[101]  Because Mr. Muranov cannot point to much more than a mere recommendation or scholarly debate regarding the rights in rem and intellectual property distinction as it pertains to unitary enterprises' ownership rights, I cannot conclude that the Amendment truly "clarified" or "confirmed" anything, which, given its lack of retroactivity, it

---

[100]    *See* Day 1 Tr. at 35:4-35:18.

[101]    Perhaps owing to the flimsiness of the connection in his report, Mr. Muranov never elaborated on it during his testimony at the hearing.  Mr. Gladyshev briefly addressed this connection and summarily dismissed it.  150:24-151-8.

must do in order to support FTE's standing.

Also harmful to Mr. Muranov's position is the Rosalcohol Note.  To the extent a major scholarly debate exists – and that I should read the Amendment as contributing to the resolution of it – the only official Russian legal position regarding unitary enterprises' ownership rights in trademarks published after the Amendment took effect still states that a unitary enterprise cannot own physical property *or intellectual property*, including trademarks.  Mr. Muranov's only response is that the drafters of it were mistaken.[102]  But it is unlikely that Rosalcohol, a respectable arm of the Russian Federation, would issue a legal opinion contradicting the Amendment after it took effect, and after the scholarly debate had presumably ended.

A possible explanation is that Rosalcohol never considered the Amendment as having any impact on the debate, in the same way that Mr. Gladyshev did not consider the Amendment in his expert report.  Maybe the Rosalcohol Note's post-Amendment release was simply fortuitous timing for defendants.  However, the Rosalcohol Note could just as easily, if not more easily, be viewed as additional evidence in support of the Amendment's irrelevance.  Rosalcohol and Mr. Gladyshev never considered the Amendment because the

---

[102]    *See* Day 1 Tr. at 98:3-98:14.

Amendment did not influence the debate.  If this debate was prevalent prior to the Amendment – and for Mr. Muranov's argument to carry the day, then it must have been prevalent – why would the Russian legislature not address the issue directly? I am not convinced that the legislative body would draft the Amendment to resolve a major debate with significant historical underpinnings regarding the rights of *unitary enterprises* without so much as using the term "unitary enterprises" in the language of the Amendment, or even referencing a specific article or set of articles in the Civil Code governing unitary enterprises.  All that the Amendment offers in this regard is a broad reference to Section 2 of the Civil Code, only a few articles of which refer to unitary enterprises.  Mr. Muranov's explanation for the Amendment is not sufficiently persuasive.[103]

Finally, the structure of the Civil Code lends additional support to Mr. Gladyshev's position.  Even if the provisions of Section 2 have been affected by the Amendment, the provisions of Section 1, which the Amendment does not affect, are essentially the building blocks of the Civil Code and control all other parts of it.[104]  Therefore, it is fair to read the Part 4 definition of "intellectual

---

[103]    This is not to say that I fully accept defendants' argument regarding the Amendment's impact on remedies available under Section 2.  But ultimately, defendants do not need to prove the Amendment's purpose – FTE has the burden of proving it has standing.

[104]    *See* Gladyshev Decl. ¶ 37.

36

rights" – an "exclusive right that is a property right" – as controlled by Article 128, in Part 1, which defines "property rights" as a subset of "other property."  Again, while this structural argument is not flawless, it is more credible than Mr. Muranov's argument.  Either way, I conclude that the Amendment does not clarify the pre-existing scheme controlling property rights.  For these reasons, I cannot find as a matter of Russian law that FTE now holds the trademarks at issue outside of operative management.

### C.    The Assignment Is Not a Blanket Consent

The question of whether the Assignment could operate as blanket consent for FTE to dispose of the trademarks at will is somewhat easier to resolve. While Articles 296 and 297 of the Civil Code undoubtedly contemplate giving a unitary enterprise enough ownership rights in property to dispose of such property with proper consent, the legal sufficiency of such consent is governed by Article 157.1.[105]  As confirmed by a Russian court, for prior consent to be valid under Article 157.1, the consent must contain a requisite degree of specificity regarding a transaction – specificity that, by Mr. Muranov's own admission, is lacking here.[106] FTE's attempt to paint the specificity required by Article 157.1 as an unfair gloss

---

[105]    *See* Muranov Rep. ¶ 123.

[106]    *See* Day 1 Tr. at 103:19-104:2.

on the more general consent provision of Article 297 is undermined by Mr. Muranov's own report, in which he recognizes that prior consent is "deemed given validly" "in accordance with . . . Article 157.1."[107]

FTE cannot dodge the weight of authority and the Civil Code to find legally effective blanket consent.  Mr. Muranov attempts to cherry-pick language for the relevant Russian case interpreting Article 157.1, noting that the omission of certain terms of the transaction for which consent is sought may be permissible depending upon the relationship of the parties.[108]  But he cannot point to any case or provision of the Civil Code to show that the relationship between the Russian Federation and FTE is one in which the omission of such terms would be permissible.  If no such case or Civil Code provision exists, it is for good reason – permitting blanket consent would effectively defeat the scheme of operative management, the purpose of which, as the Second Circuit has already held, is to enable the Russian Federation to retain ownership rights in property it entrusts in unitary enterprises.[109]

I am troubled by the language of the Assignment, which, whether

---

[107]    Muranov Rep. ¶ 123.

[108]    *See* Day 1 Tr. at 106:6-106:8.

[109]    *See FTE IV*, 726 F.3d at 77.

translated as "full rights" or rights "to the full extent," evinces the Russian Federation's intent to effectuate proper consent.  But that intent does not carry with it the force of Russian law.  Mr. Muranov has not identified a single instance in which prior blanket consent in the style of the Assignment is permissible; Mr. Gladyshev has pointed both to the Civil Code and a recent case confirming the limitations on such consent.  Ultimately, FTE has the burden to show not only that the Russian Federation intended through the Assignment to consent to the disposition of the trademarks at any time, but that such blanket consent could be legally effectuated in accordance with the Civil Code.  FTE has satisfied its burden with respect to the first prong, but not with respect to the second.[110]

### D.   The Assignment Did Not Transfer to FTE the Right to Sue for Past Damages

FTE has not provided the Court with any convincing evidence that the

---

[110]    During the cross-examination of Mr. Newcity, counsel for FTE argued that the 2002 Decree, by which the Russian Federation assigned the trademarks to FTE via operative management, contained the language "without right to assignment" – language that even Mr. Newcity acknowledged would be surplusage if it was not possible to give FTE prior consent to dispose of the trademarks.  *See* Day 2 Tr. at 41:16-43:2.  However, the significance of that clause, and whether it is surplusage, is not fully clear, nor is it enough to persuade me that blanket consent could be given.  It may be, as Mr. Newcity points out, that the Russian Federation desired to reinforce that it was not granting consent as to a specific transaction at that time.  *See id.*  In addition, the Russian case interpreting Article 157.1 is from 2014, twelve years after the issuance of the 2002 decree.  Therefore, current Russian law appears to prohibit prior blanket consent in this context.

right to sue for past damages can be held outside of operative management.  Mr. Newcity's testimony elucidates that this right can only be held in operative management.  Likely anticipating such a conclusion, FTE submitted a post-summations letter asking the Court for leave to brief the issue of whether holding the right to sue for past damages in operative administration is sufficient for Lanham Act standing.[111]

Further briefing is unnecessary.  When the Second Circuit issued its decision, the only claims against Allied Domecq and WGS, held in the context of operative management, were for past damages, yet the court upheld the dismissal of those claims.[112]  The Assignment and Decree 69 do not change the Russian law on the implications of holding claims for past damages in operative management. The result here is therefore the same:  FTE lacks standing under the Lanham Act to sue Allied Domecq and WGS on claims for past damages.

### E.    The Act of State Doctrine Does Not Apply

The Act of State Doctrine does not apply to this case.  The law is straightforward:  the doctrine "does not prevent examination of the validity of an

---

[111]    *See* FTE Post-Summations Ltr.

[112]    *See FTE IV*, 726 F.3d 62.

act of a foreign state with respect to a thing located . . . outside of its territory."[113]

Decree 69 is an act of the Russian Federation addressing U.S. trademark rights,

which, as a matter of law, are located within the U.S., not Russia.[114]  Decree 69

itself confirms this.  Specifically, the decree "pass[es] to [FTE] the rights of the

Russian federation for the trademarks that contain such verbal symbols as

"Stolichnaya" and/or "Stoli" *used within the territory of the United States of*

*America.*"[115]

During summations, counsel for FTE avoided well-settled case law

regarding the doctrine's inapplicability to acts of state concerning U.S. trademark

rights, relying instead on the very general pronouncement in *Underhill v.*

*Hernandez,* the 1897 Supreme Court decision from which the doctrine sprung.[116]

---

[113]    Restatement (Second) of Foreign Relations § 43(1).  *Accord Boland*, 614 F. Supp. at 1173 (noting the inapplicability of the act of state doctrine to another trademark case in this district, affirmed by the Second Circuit and denied review by the Supreme Court, because "the trademarks in question, registered in this country, had a local identity and situs apart from the foreign manufacturer").

[114]    *See Films by Jove*, 341 F. Supp. 2d at 212 (noting that courts "view the situs of the right to use a trademark . . . to be in that nation granting the . . . right to use the trademark itself rather than in that nation in which the . . . company . . . given the right to use the trademark . . . is located").

[115]    Decree 69, Ex. 1 to Gladyshev Decl. (emphasis added).

[116]    *See* 168 U.S. 250, 252 (1897) (holding that "the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory").

FTE urges the Court to view Decree 69 purely as an intra-territorial transfer of rights, not as an extraterritorial taking. Either position is fatal for FTE, though, because even if I view Decree 69 as an intra-territorial transfer of rights, the rights being transferred are, by the very language of the decree and as a matter of law, U.S. rights. U.S. courts have uniformly declined to apply the doctrine to cases where, through acts of state, foreign governments make declarations regarding ownership rights of *U.S. trademarks*, even when those rights are being transferred from the foreign actor to another foreign entity in that actor's territory.[117] Therefore, the Act of State Doctrine is inapplicable to Decree 69.

### F.     A Final Thought

I conclude this discussion section as I started it. This case presents the difficult challenge of interpreting a new foreign law that has not yet been addressed by the courts in that country. In the short run, the parties to this action could benefit from a de novo appellate review of this decision – I have little doubt that FTE will seek such review. But in the long run, a better system should exist to address the problem of U.S. courts interpreting issues of first impression under foreign law.

---

[117]     *See* 12 A.L.R. Fed. 707 § 14(b). *See also* supra note 64.

## VI.   CONCLUSION

For the foregoing reasons, this case is dismissed for lack of subject

matter jurisdiction.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            November 24, 2014

**-Appearances-**

**For Plaintiffs:**

Marc L. Greenwald, Esq.
Jessica A. Rose, Esq.
Leron Thumim, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Daniel H. Bromberg, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

**For SPI:**

Emily J. Henn, Esq.
Philip A. Scarborough, Esq.
Covington & Burling, LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
(650) 632-4700

Bingham B. Leverich, Esq.
David M. Zionts, Esq.
Covington & Burling, LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 662-6000

**For Allied Doemcq:**

David H. Bernstein, Esq.
Carl Micarelli, Esq.

Michael Schaper, Esq.
Rayna S. Lopyan, Esq.
David Sandler, Esq.
Debevoise & Plimpton, LLP
919 Third Avenue, 31st Floor
New York, NY 10022
(212) 909-6000

**For WGS:**

William M. Merone, Esq.
Kenyon & Kenyon LLP
1500 K Street, N.W. Suite 700
Washington, DC 20005
(202) 220-4270