N.Y.S.D. Case #
14-cv-0712(SAS)

14-4721-cv(L)
Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2015

(Argued: August 24, 2015     Decided: January 5, 2016)

Docket Nos. 14-4721-cv(L), 15-152-cv (XAP)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FEDERAL TREASURY ENTERPRISE
SOJUZPLODOIMPORT, OAO "MOSCOW
DISTILLERY CRISTALL"

> Plaintiffs-Counter
> Defendants-Appellants-
> Cross-Appellees,

- v.-

SPIRITS INTERNATIONAL B.V. F/K/A SPIRITS
INTERNATIONAL N.V., SPI SPIRITS LIMITED,
SPI GROUP SA, YURI SHEFLER, ALEXEY
OLIYNIK, STOLI GROUP (USA) LLP,

> Defendants-Counter
> Claimants-Appellees-
> Cross-Appellants,

WILLIAM GRANT & SONS USA, WILLIAM
GRANT & SONS, INC.

> Defendants-Appellees-
> Cross-Appellants,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:  _____
DATE FILED: 01/05/2016 _____

CERTIFIED COPY ISSUED ON 01/05/2015

ALLIED DOMECQ INTERNATIONAL
HOLDINGS B.V., ALLIED DOMECQ SPIRITS &
WINES USA, INC. D/B/A ALLIED DOMECQ
SPIRITS, USA

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Before:                    NEWMAN, WALKER, and JACOBS, Circuit Judges.

Rival claims to the "Stolichnaya" trademarks have been asserted by successors in interest to a Soviet enterprise and by an agency of the Russian Federation. The principal issue is whether the agency of the Russian Federation has been endowed by that government with rights and powers that support standing under section 32(1) of the Lanham Act. The question has been here before. We conclude that the United States District court for the Southern District of New York (Scheindlin, J.) erred in considering whether the asserted basis for standing to pursue the section 32(1) claims was valid under Russian law, but that the district court correctly dismissed all of the other claims as barred by res judicata and laches.

Affirmed in part and vacated and remanded in part.

DANIEL H. BROMBERG (Kathleen M. Sullivan, Marc L. Greenwald, Robert Raskopf, and Jessica Rose, Quinn Emanuel Urquhart & Sullivan LLP, New York, NY, on the brief) Quinn Emanuel Urquhart & Sullivan LLP, Redwood Shores, CA for Plaintiffs-Counter Defendants-Appellants-Cross-Appellees.

Eugene D. Gulland, Bingham B. Leverich, and David M. Zionts, Covington & Burling LLP, Washington, D.C.; Emily Johnson Hemm, Covington & Burling LLP, Redwood Shores, CA, for Defendants-Counter Claimants-Appellees-Cross-Appellants.

EDWARD T. COLBERT (William M. Merone, on the brief) Kenyon & Kenyon LLP, Washington, D.C. for Defendants-Appellees-Cross-Appellants.

DENNIS JACOBS, Circuit Judge:

Rival claims to the "Stolichnaya" trademarks have been asserted by an agency of the Russian Federation and by successors in interest to a Soviet enterprise. The principal issue is whether Federal Treasury Enterprise Sojuzplodoimport ("FTE"), an agency of the Russian Federation, has been endowed by that government with rights and powers that give it standing to

3

pursue claims under section 32(1) of the Lanham Act (the "section 32(1) claims").

The question has been here before. We conclude that the United States District

Court for the Southern District of New York (Scheindlin, J.) erred in determining

whether FTE's asserted basis for standing was valid under Russian law. We

further conclude that the district court correctly dismissed all of FTE's other

claims (the "non-section 32(1) claims") as barred by both res judicata and laches.

FTE and co-plaintiff OAO "Moscow Distillery Cristall" ("Cristall") allege

that the defendants unlawfully misappropriated and commercially exploited the

Stolichnaya trademarks related to the sale of vodka and other spirits in the

United States (the "Marks"). Currently, control over the Marks in the United

States is exercised by defendants as successors in interest to a Soviet state

enterprise: Spirits International B.V. f/k/a Spirits International N.V., SPI Spirits

Limited, SPI Group SA, Yuri Shefler, and Alexey Oliynik (collectively, "SPI").

The other defendants are licensed distributors of SPI: William Grant & Sons USA

and William Grant & Sons, Inc. (collectively, "William Grant"); Allied Domecq

International Holdings B.V. and Allied Domecq Spirits & Wines USA, Inc. d/b/a

Allied Domecq Spirits, USA (collectively, "Allied Domecq"); and Stoli Group

(USA) LLP ("Stoli Group").

In a prior suit, FTE brought claims against SPI under section 32(1) of the Lanham Act, as well as analogous federal and state law claims. We dismissed FTE's section 32(1) claims on the ground that the Russian Federation itself retained too great an interest in the Marks for FTE to qualify as an "assign" with standing to sue. Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd., 726 F.3d 62, 66 (2d Cir. 2013). FTE's non-section 32(1) claims were either dismissed on the merits, voluntarily dismissed, or dropped during the course of that litigation.

Subsequently, the Russian Federation issued a decree (the "Decree"), directing the Federal Agency for State Property Management ("State Property Management") to transfer to FTE "the rights of the Russian Federation" to the Marks. Pursuant to the Decree, an assignment was executed (the "Assignment"), purporting to transfer the Russian Federation's "entire right, title, and interest in and to the [Marks]" to FTE. FTE then filed the present lawsuit, once again asserting both section 32(1) and non-section 32(1) claims against SPI. Defendants moved to dismiss.

In a series of orders, the district court ruled that: (i) FTE lacked statutory standing to assert the section 32(1) claims because the Assignment was invalid

under Russian law; (ii) FTE's non-section 32(1) claims were barred by res judicata in light of the prior litigation; and (iii) the non-section 32(1) claims were also barred by laches.

We conclude that the doctrines of comity and act of state preclude a United States court from invalidating an action of a foreign sovereign with respect to a transfer of rights among its branches or entities on the ground that the transfer is invalid under the law of that foreign sovereign. Accordingly, because the district court undertook to determine whether the Assignment from the Russian Federation to FTE was valid under Russian law, we vacate the district court's dismissal of FTE's section 32(1) claims for lack of standing and remand for further proceedings consistent with this opinion. We affirm the dismissal of FTE's non-section 32(1) claims as barred by res judicata and laches.

## BACKGROUND

Beginning in the 1940s, the Soviet Union manufactured and marketed premium vodka under the name "Stolichnaya" ("from the capital" in Russian). In 1969, a Soviet state enterprise called "V/O-SPI" obtained a federal trademark in the United States for "Stolichnaya" vodka. V/O-SPI (later renamed "VVO-SPI") licensed the use of the Marks to various distributors in the United States.

Those distributors, which at the time included PepsiCo, sold "Stolichnaya" branded vodka in the United States throughout the 1970s and 1980s. As the Soviet Union began to collapse in the early 1990s, many Soviet state enterprises were privatized. VVO-SPI was purportedly privatized by its directors and managers under the new name "VAO-SPI," which later became controlled by SPI.

As the asserted successor in interest to VVO-SPI, SPI represented itself as the owner of the Marks. When PepsiCo's license of the Marks ended in 2000, SPI entered into a series of licensing agreements with defendants Allied Domecq, William Grant, and Stoli Group to distribute vodka bearing the Marks in the United States: (i) Allied Domecq from 2001 to 2008; (ii) William Grant from 2008 to 2014; and (iii) Stoli Group from 2014 to present.

In 2000, a Russian court held that VVO-SPI was not validly privatized under Russian law and that ownership of the Marks had remained with the Soviet Union, and therefore with the Russian Federation. In 2002, the Russian Federation formed FTE to be the legitimate successor to VVO-SPI, and FTE entered into an exclusive licensing agreement with Cristall to distribute vodka bearing the Marks in the United States.

In 2004, FTE and Cristall filed suit in the United States District Court for the Southern District of New York against SPI and its then-licensee Allied Domecq, alleging violations of section 32(1) of the Lanham Act, which provides a cause of action for owners of registered trademarks, and alleging violations of other provisions of the Lanham Act and state law that do not require trademark registration.  The district court dismissed the Lanham Act claims (on the ground that the Marks had been "incontestable") as well as the state law claims of fraud and unjust enrichment.  Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 425 F. Supp. 2d 458, 465-67 (S.D.N.Y. 2006) ("FTE I").  FTE's remaining state law claims (unfair competition and false designation of origin) were voluntarily dismissed.

On appeal, we vacated as to the incontestability issue, Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 623 F.3d 61, 71 (2d Cir. 2010) ("FTE II"), but affirmed the dismissal of the claims for fraud and unjust enrichment, Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 400 F. App'x 611, 614 (2d Cir. 2010) ("FTE II Summary Order").  On remand, the defendants consented to the filing of an amended complaint, which added as a defendant William Grant (which had since received a license from SPI to distribute Stolichnaya-branded

8

vodka) and dropped all but the section 32(1) claims, a declaratory judgment claim, and a state law claim for misappropriation.

The defendants successfully moved to dismiss the section 32(1) claims on the ground that FTE lacked statutory standing to sue as a "registrant" under the Lanham Act. Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., No. 04-cv-8510 (GBD), 2011 WL 4005321, at *1 (S.D.N.Y. Sept. 1, 2011) ("FTE III"). The state law misappropriation claim was dismissed without prejudice. FTE appealed, arguing that it was an "assign" of the Russian Federation, to which the Marks were properly registered, and thus had standing to assert section 32(1) claims. We rejected that argument on the ground that the Russian Federation retained too great an interest in the Marks for FTE to qualify as an "assign." Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd., 726 F.3d 62, 66 (2d Cir. 2013) ("FTE IV").

Following FTE IV, and evidently in response to it, the Russian Federation issued the Decree, which ordered that:

> [State Property Management] is to conclude with [FTE] an agreement on transferring to the said enterprise the rights of the Russian Federation to trademarks containing verbal designations "Stolichnaya" and/or "Stoli" used on the territory of the United States (on all territories subject to the jurisdiction of the United States

of America).

Pursuant to the Decree, the Assignment was executed that transferred to FTE the Russian Federation's "entire right, title, and interest in and to the [Marks]."

FTE and Cristall (as FTE's licensee) then brought the present lawsuit, again asserting both section 32(1) and non-section 32(1) claims. The defendants moved to dismiss, arguing that FTE did not acquire statutory standing to bring the section 32(1) claims because the Russian Federation's Assignment was invalid under Russian law, and that in any event all of FTE's claims were barred by res judicata and laches. In a series of decisions, the district court held that FTE still lacked statutory standing to bring its section 32(1) claims because the Assignment was invalid under Russian law, and that the non-section 32(1) claims were barred by res judicata as well as laches. The parties cross-appealed.

## DISCUSSION

We review de novo the grant of a motion to dismiss, Carpenters Pension Trust Fund of St. Louis v. Barclays PLC, 750 F.3d 227, 232 (2d Cir. 2014), and a district court's rulings on questions of foreign law, Curley v. AMR Corp., 153 F.3d 5, 11 (2d Cir. 1998).

In FTE IV, we observed that, "[h]ad the Russian Federation effected a valid

assignment here, FTE could sue under Section 32(1) as an 'assign.'" FTE IV, 726

F.3d at 79.  The Assignment undertook to do just that: the Russian Federation

"sells, conveys, transfers, assigns and sets over its entire right, title and interest in

and to the [Marks] to [FTE]" and "expressly relinquishes any and all right, title

and interest in and to the [Marks]."  The district court conceded that it was

"somewhat uncomfortable telling a foreign government that a validly enacted

decree cannot achieve the result that was clearly intended by its passage." Fed.

Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V., 61 F. Supp. 3d 372, 386

(S.D.N.Y. 2014).  We conclude that the district court had good reason for

discomfort.

## I

"Under the principles of international comity, United States courts

ordinarily refuse to review acts of foreign governments and defer to proceedings

taking place in foreign countries, allowing those acts and proceedings to have

extraterritorial effect in the United States." Pravin Banker Assoc., Ltd. v. Banco

Popular Del Peru, 109 F.3d 850, 854 (2d Cir. 1997); see also Hilton v. Guyot, 159

U.S. 113, 164 (1895).  Nevertheless, "courts will not extend comity to foreign

proceedings when doing so would be contrary to the policies or prejudicial to the

interests of the United States." <u>Pravin</u>, 109 F.3d at 854; <u>see also</u> <u>Allied Bank Int'l v. Banco Creditor Agricola de Cartago</u>, 757 F.2d 516, 522 (2d Cir. 1985); <u>Banco Nacional de Cuba v. Chem. Bank New York Trust Co.</u>, 658 F.2d 903, 908 (2d Cir. 1981); <u>Republic of Iraq v. First Nat. City Bank</u>, 353 F.2d 47, 51 (2d Cir. 1965).

The Decree and Assignment were indisputably acts of a foreign government. The declaration of a United States court that the executive branch of the Russian government violated its own law by transferring its own rights to its own quasi-governmental entity (FTE) would be an affront to the government of a foreign sovereign. Even an inquiry into whether Russian law permitted the Assignment is a breach of comity. "So long as the act is the act of the foreign sovereign, it matters not how grossly the sovereign has transgressed its own laws." <u>Banco de Espana v. Fed. Reserve Bank of N.Y.</u>, 114 F.2d 438, 444 (2d Cir. 1940).

Extending comity to the Russian Federation's issuance of the Decree and execution of the Assignment would undermine no policy or interest of the United States, which has no stake in which instrumentality of the Russian Federation asserts trademark claims over the Marks.

We concluded in <u>FTE IV</u> that the United States has an interest in enforcing

12

"its own trademark laws within its borders" and "the Lanham Act's express [standing] requirements." FTE IV, 726 F.3d at 82. But in this case, the question of standing depends on whether an agency of a foreign sovereign has been endowed by that government with all the rights and powers it claims over the Marks. Whether those rights, if validly assigned, prevail against alleged infringers is very much an issue confided to the United States courts; the distinct question whether the government of a foreign sovereign has effectively and legally allocated its rights and powers among its agencies and instrumentalities under that foreign sovereign's law, is not. Considerations of international comity precluded the district court from adjudicating the validity of the Assignment.

## II

The district court's determination of the validity of the Assignment was likewise barred by the act of state doctrine. The doctrine "precludes any review whatever of the acts of the government of one sovereign State done within its own territory by the courts of another sovereign State." First Nat. City Bank v. Banco Nacional de Cuba, 406 U.S. 759, 763 (1972). The doctrine "arises out of the basic relationships between branches of government in a system of separation of powers" and "expresses the strong sense of the Judicial Branch that its

engagement in the task of passing on the validity of foreign acts of state may hinder rather than further this country's pursuit of goals." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423 (1964). In this sense, the act of state doctrine "is not some vague doctrine of abstention but a principle of decision binding on federal and state courts alike"; "the act within its own boundaries of one sovereign State . . . becomes . . . a rule of decision for the courts of this country." W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l, 493 U.S. 400, 406 (1990) (citations and internal quotation marks omitted). Thus, "the acts of the foreign sovereign within its dominions are deemed valid when entered into." Banco de Espana, 114 F.2d at 444.

As we established in FTE IV, the Russian Federation's Decree was the act of a foreign sovereign; it was also "done" within the boundaries of Russia. The Decree and subsequent Assignment do not purport to decide the merits issue of whether SPI and its licensees have violated the Lanham Act by misappropriating the Marks. Rather, the validity of the Assignment determines only FTE's statutory standing to assert such claims as the Russian Federation may have. That is a question of Russian law decided within Russia's borders, rather than a matter of U.S. law with a situs in the United States, see, e.g., Films by Jove, Inc. v.

14

Berov, 341 F. Supp. 2d 199, 207 (E.D.N.Y. 2004).

The district court, concluding otherwise, reasoned that the act of state doctrine does not apply when the act of the foreign sovereign concerns a United States trademark because the trademark is a property interest located within the United States. The district court relied on cases in which we declined to apply the act of state doctrine to attempts by foreign sovereigns to confiscate property located in the United States. F. Palicio y Compania, S.A. v. Brush, 256 F. Supp. 481, 488 (S.D.N.Y. 1966), aff'd, 375 F.2d 1011 (2d Cir. 1967); Zwack v. Kraus Bros. & Co., 237 F.2d 255, 259 (2d Cir. 1956); see also Films by Jove, Inc., 341 F. Supp. 2d at 207 (noting that "it is well-settled law that the act of state doctrine does not extend to *takings of property* located outside the territory of the acting state" (emphasis added)). To give extraterritorial effect to such acts would "emasculate the public policy of the forum against confiscation." Zwack, 237 F.2d at 259. But such public policy concerns are not present here because neither the Decree nor the resulting Assignment impairs anyone's property rights or affects the jurisdiction of the United States courts to decide the competing claims to ownership of the Marks. In any event, the line of "confiscation" cases does not undermine application of the act of state doctrine here: the Decree works no

15

confiscation, in form or effect; rather, it *transfers* whatever rights the Russian Federation may already have in the Marks to FTE.

SPI argues that the act of state doctrine is inapplicable because the Assignment is a commercial act. As an initial matter, neither the Supreme Court nor this Circuit has ever concluded that there is a commercial exception to the doctrine of act of state. W.S. Kirkpatrick & Co., 493 U.S. at 404 (noting that a majority of the Supreme Court has never adopted a commercial exception to the doctrine of act of state); Braka v. Bancomer, S.N.C., 762 F.2d 222, 225 (2d Cir. 1985) (declining to opine on the existence of a commercial exception).

Even if the act of state doctrine is subject to a commercial exception, the exception would not apply. To be sure, a plurality of the Supreme Court advocated for such a commercial exception in Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 695 (1976), which concerned Cuba's repudiation of purely commercial debts. Invoking Supreme Court precedent that treated a sovereign differently when it acts as a merchant in the private marketplace, the plurality concluded that the act of state doctrine does not require that United States courts respect a foreign government's repudiation of debts arising from its operation of a purely commercial business. Id. at 698.

16

Here, the sovereign act was a wholly intragovernmental transfer of rights, executed by the sovereign acting as a government. The Assignment effectuates a transfer of rights to pursue claims from the foreign sovereign, the Russian Federation, to one of its instrumentalities, FTE, pursuant to a governmental act, the Decree. The allocation by governmental decree of such rights as the Russian Federation may have, and the designation of the government entity that has power to assert or defend them, is an internal act that augments no commercial interest of the Russian Federation and impairs no commercial interest of anyone else. The subject matter of the transferred rights is the ability to exploit trademarks for commercial gain — but that does not render the transfer itself a commercial transaction. The Russian Federation did not act as a trader or merchant; it acted as a government by allocating its rights to assert legal claims to FTE (which is itself a branch of the sovereign). Therefore, we have little trouble concluding that any commercial activity exception to the act of state doctrine would not encompass the Decree and Assignment and, in the circumstances presented here, does not permit us to determine the efficacy of the Decree and Assignment in vesting FTE with the authority to bring suit previously held by the Russian Federation.

17

**III**

To establish that a claim is barred by res judicata, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (internal quotation marks omitted).

In the prior litigation, FTE's section 32(1) claims were dismissed for lack of statutory standing. FTE IV, 726 F.3d at 66. Dismissal for lack of statutory standing is not "on the merits" and therefore lacks res judicata effect. The lack of statutory standing is a "curable" defect, as demonstrated by our observation in FTE IV that FTE might acquire Lanham Act standing by a valid assignment from the Russian Federation. Criales v. American Airlines, Inc., 105 F.3d 93, 98 (2d Cir. 1997). FTE's prior litigation was thus premature for failure to satisfy a precondition to suit: obtaining sufficient rights in the Marks to assert the section 32(1) claims on its own behalf. Id. at 97. Since such dismissals are not "on the merits," FTE's present section 32(1) claims are not barred by res judicata.

18

Res judicata does, however, bar FTE's non-section 32(1) claims. All of FTE's non-section 32(1) claims were, or could have been, asserted in the prior litigation. FTE's unfair competition claims and federal trademark claims were previously brought but abandoned, while FTE's state law trademark infringement and dilution claims could have been brought but were not. Because our opinion in FTE II Summary Order, affirming the district court's dismissal of FTE's prior litigation, constituted an adjudication "on the merits," Pike, 266 F.3d at 91, all of FTE's non-section 32(1) claims are barred. Accordingly, res judicata requires the dismissal of FTE's non-section 32(1) claims, only.

**IV**

The district court ruled that FTE's non-section 32(1) claims were also barred by laches, but that the section 32(1) claims were not. Laches is an equitable defense. Because the Lanham Act does not prescribe a statute of limitations, federal courts often "look to 'the most appropriate' or 'most analogous' state statute of limitation" to determine when the presumption of laches applies to Lanham Act claims. Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996). If the most closely analogous state statute of limitations has not run, the presumption of laches does not attach and the

defendant bears the burden of proving the defense. Id. But once the analogous state statute of limitations has run, the burden shifts to the plaintiff to show why laches should not apply. Id. The ultimate determination of whether laches bars a plaintiff's claim is within the trial court's discretion. Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V., 17 F.3d 38, 44 (2d Cir. 1994).

The district court concluded that the presumption of laches never arose as to the section 32(1) claims because they were tolled during the pendency of the prior litigation. Under N.Y. C.P.L.R. 205(a), a dismissed claim can be brought again (provided it is not substantively barred) within six months of the termination of the prior litigation. That is what happened here. The section 32(1) claims arose in 2001 when SPI instructed PepsiCo to transfer the Marks to Allied Domecq. The prior litigation was brought in 2004 and lasted until 2013, when the section 32(1) claims were dismissed in FTE IV; FTE then commenced the present suit within six months. Because the most analogous New York statute of limitations for FTE's section 32(1) claims is the six-year statute of limitations for fraud, Conopco, 95 F.3d at 191, and only three years had lapsed before the prior suit was brought, FTE's section 32(1) claims were timely under New York's statute of limitations. Therefore, the presumption of laches never arose. Nor has

SPI proven the laches defense independently of the presumption. Accordingly, the district court correctly concluded that FTE's section 32(1) claims were not barred by laches.

The district court did, however, conclude that the presumption of laches applied to the non-section 32(1) claims. These claims were not tolled during the pendency of the prior litigation because, under N.Y. C.P.L.R. 205(a), claims that are voluntarily dismissed do not get the benefit of tolling. Therefore, FTE in effect brought the claims thirteen years after their accrual (2001 to 2014) and after New York's six-year statute of limitations for fraud had run. The district court further held that FTE unreasonably delayed in bringing the non-section 32(1) claims and that defendants would be prejudiced by FTE's litigation of such claims after this delay. The district court did not abuse its discretion in concluding that the presumption of laches arose or that the defendants would be prejudiced were FTE able to litigate its non-section 32(1) claims.

## CONCLUSION

For the foregoing reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit