UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL TREASURY ENTERPRISE
SOJUZPLODOIMPORT and OAO
"MOSCOW DISTILLERY CRISTALL,"

              Plaintiffs,

           -against-

SPIRITS INTERNATIONAL B.V.,
FORMERLY KNOWN AS SPIRITS
INTERNATIONAL N.V.; SPI SPIRITS
LIMITED; SPI GROUP SA; YURI SHEFLER;
ALEXEY OLIYNIK; WILLIAM GRANT &
SONS USA;  WILLIAM GRANT & SONS,
INC.; STOLI GROUP (USA) LLC and ZHS IP
AMERICAS SARL,

              Defendants.

Case No. 14 Civ. 712 (SHS)

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiffs Federal Treasury Enterprise Sojuzplodoimport ("FTE") and OAO "Moscow

Distillery Cristall" (individually "Cristall" and, with FTE, collectively "Plaintiffs"), by their

attorneys, Quinn Emanuel Urquhart & Sullivan, LLP, allege as follows:

## INTRODUCTION

1.     This action arises out of Defendants' unlawful misappropriation and unauthorized

commercial exploitation of the famous STOLICHNAYA and related trademarks (the

"STOLICHNAYA Marks" or the "Marks") in connection with the sale of vodka and other spirits

in the United States.

2.     The STOLICHNAYA trademarks were created by the Soviet Union, which began

producing STOLICHNAYA branded vodka in the late 1940s.  In 1967, a Soviet state enterprise

then named V/O-SPI and later renamed VVO-SPI applied to register the STOLICHNAYA

trademark with the United States Patent and Trademark Office ("USPTO").  In 1969, the USPTO

issued a federal trademark registration to VVO-SPI, and for more than twenty years, vodka made in Russia and produced under the authority and supervision of VVO-SPI was sold by VVO-SPI's licensees in the United States under the STOLICHNAYA trademark.

3.    In 1991 and 1992, amidst the chaos surrounding the dissolution of the Soviet Union, VVO-SPI's directors seized control of VVO-SPI's operations and assets, including the STOLICHNAYA Marks, and fraudulently purported to privatize VVO-SPI.  Defendants claim rights in the STOLICHNAYA trademarks through VAO-SPI, the private corporation that VVO-SPI's directors fraudulently represented to be VVO-SPI's successor.

4.    Upon discovering that the STOLICHNAYA Marks had been stolen, the Russian Federation, the successor government to the Soviet Union, successfully sued in the Russian courts to establish that VVO-SPI had not been privatized.  This determination was upheld by the European Court of Human Rights.

5.    VVO-SPI transferred all of its rights in the STOLICHNAYA trademarks to the Russian Federation, which formed plaintiff Federal Treasury Enterprise Sojuzplodoimport ("FTE") to conduct the operations previously performed by VVO-SPI, including the export of STOLICHNAYA vodka to the United States.  On February 3, 2014, the Russian Federation assigned to FTE all of its right, title and interest in the STOLICHNAYA Marks, as well as all claims concerning prior unlawful misappropriation and unauthorized use of the Marks.

6.    FTE and Cristall, to which FTE has given an exclusive license to produce vodka and other products bearing the STOLICHNAYA Marks for sale in the United States, bring this action against Defendants for, *inter alia*, trademark infringement arising out of their unauthorized use and infringement of the STOLICHNAYA Marks in connection with the sale of vodka the United States.

**THE PARTIES**

7.    Plaintiff FTE is an economic entity owned by the Russian Federation organized and existing under the laws of Russia, with its principal place of business in Russia.  FTE was formed by the Russian Federation in December 2001 to assume operations and functions formerly performed by VVO-SPI.  On February 3, 2014, the Russian Federation assigned its right, title and interest in the STOLICHNAYA Marks in the United States to FTE, as well as all of the Russian Federation's claims against Defendants.

8.    Plaintiff Cristall is a corporation organized and existing under the laws of Russia, with its principal place of business in Russia.  FTE has granted Cristall an exclusive license to produce vodka and other products bearing the STOLICHNAYA Marks for sale in the United States.

9.    Defendant SPI Group SA is a corporation organized and existing under the laws of Switzerland, with its principal place of business in Switzerland.

10.    Defendant Spirits International, B.V. ("Spirits International"), formerly Spirits International N.V., is a subsidiary of SPI Group SA; is organized and existing under the laws of the Netherlands; and has its principal place of business in Luxembourg.  Until December 2015, Spirits International purported to be the owner of various federal trademark registrations, including U.S. Trademark Registration Nos. 865,462, 1,244,735 and 1,291,454 for the STOLICHNAYA Marks.

11.    Defendant SPI Spirits Limited ("SPI Spirits") is a corporation organized and existing under the laws of Cyprus, with its principal place of business in Cyprus.

12.    Defendant Stoli Group (USA) LLC ("Stoli Group") is a corporation organized and existing under the laws of Delaware, and its principal place of business is in New York.

Stoli Group maintains an office at 135 E. 57th Street, New York, NY 10022. Stoli Group is licensed to do business in New York by the Alcoholic Beverage Control State Liquor Authority.

13.     Defendant ZHS IP Americas Sarl ("ZHS") is organized and existing under the laws of Switzerland and has its principal place of business in Nyon, Switzerland. On December 22, 2015, Spirits International purported to assign the entire interest and the goodwill in various federal trademark registrations, including U.S. Trademark Registration Nos. 865,462, 1,244,735 and 1,291,454 for the STOLICHNAYA Marks, to ZHS.

14.     Defendant Yuri Shefler ("Shefler") is an alien who maintains a residence in the United States. Shefler founded SPI Group SA and is the majority shareholder of SPI Group SA as well as Spirits International. Shefler actively manages and controls the operations of SPI Group SA, which in turn owns and controls the operations of Spirits International, SPI Spirits, Stoli Group and ZHS.

15.     Defendant Alexey Oliynik ("Oliynik") is a non-resident alien. Oliynik is a shareholder and director of SPI Group SA, as well as a director of SPI Spirits and the manager of ZHS. Oliynik actively manages and controls the operations of SPI Group SA, which in turn owns and controls the operations of Spirits International, SPI Spirits, Stoli Group and ZHS.

16.     SPI Group SA, Spirits International, SPI Spirits, Stoli Group and ZHS are part of the SPI Spirits Group, a group of companies owned or controlled by Defendants Shefler and Oliynik. At all relevant times mentioned in this Complaint, SPI Group SA, Spirits International, SPI Spirits, Stoli Group and ZHS have been or are mere shells, instrumentalities, and/or conduits through which Shefler and Oliynik conduct, and have conducted, their unlawful activities. To avoid an inequitable result, SPI Group SA, Spirits International, SPI Spirits, Stoli Group and

4

ZHS should be regarded as the alter egos of Shefler and Oliynik.  Shefler, Oliynik, SPI Group SA, Spirits International, SPI Spirits, Stoli Group and ZHS are referred to collectively as "SPI."

17.     Defendant William Grant & Sons USA ("WGS USA") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New York City.

18.     Defendant William Grant & Sons, Inc. ("WGS Inc.") is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in New York City.  WGS Inc. is licensed to do business in New York by the Alcoholic Beverage Control State Liquor Authority.  WGS Inc. and WGS USA are referred to collectively as "WGS."

19.     Defendants, and each of them, were and/or are acting in concert and active participation with each other in committing the wrongful acts alleged herein, and were the agents of each other and were acting within the scope and authority of that agency and with the knowledge, consent and approval of one another.

## JURISDICTION AND VENUE

20.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338.

21.     This Court has personal jurisdiction over Defendants because they transact business in the State of New York, and/or have contracted to supply goods or services in the State, and/or have committed the acts of, *inter alia*, trademark infringement that have given rise to this action in this district.

22.     Each Defendant is or was, directly or indirectly, transacting business within New York State and this district involving the use of the STOLICHNAYA Marks, and each has, directly or indirectly, committed tortious acts within and/or without the state of New York with respect to the use and purported ownership of the Marks, which have caused injury to Plaintiffs

within the State.  Each Defendant, through business transactions and other activities concerning the Marks derives or has derived substantial revenue from the sale and consumption of goods in this State and from interstate and international commerce, and through such conduct expects, or should reasonably expect, its or his acts to have consequences in this State.

23.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## BACKGROUND

**The Famous STOLICHNAYA Marks**

24.     The Soviet Union began producing vodka under the STOLICHNAYA trademark in the late 1940s.  In Russian, "Stolichnaya" means "from the capital" and connotes unsurpassed quality.

25.     In 1967, the Soviet Union organized an enterprise named V/O-SPI to which it delegated authority, *inter alia*, to export STOLICHNAYA brand vodka manufactured in Russia.

26.     V/O-SPI first applied to register the STOLICHNAYA trademark with the USPTO in 1967.

27.     In February 1969, the USPTO issued U.S. Trademark Registration No. 865,462 for the mark STOLICHNAYA to V/O-SPI.

28.     V/O-SPI subsequently applied for and obtained Trademark Registration Nos. 1,291,454 (for the mark STOLICHNAYA) and 1,244,735 (for the mark STOLI), which were issued August 21, 1984 and July 5, 1983, respectively.

29.     In or about 1990, V/O-SPI was reorganized and renamed VVO-SPI.

30.     From 1969 to 2000, STOLICHNAYA-branded vodka was sold in the United States by V/O-SPI's and/or VVO-SPI's authorized licensees and distribution partners, Monsieur Henri Wines, Ltd. and PepsiCo, Inc. ("PepsiCo").

31. During this time, immense quantities of STOLICHNAYA brand vodka were sold, accounting for a significant percentage of total vodka sales in the United States.

32. Millions of dollars were spent annually to advertise and promote the STOLICHNAYA brand in the United States.

33. Due in part to these efforts, STOLICHNAYA vodka came to be considered a "premium" vodka by U.S. consumers, acquired secondary meaning in the minds of U.S. consumers, and became a famous brand name.

34. VVO-SPI worked closely with its distribution partners to ensure the vodka being sold under the STOLICHNAYA Marks in the United States maintained uniform characteristics and a high level of quality. Vodka sold under the STOLICHNAYA brand in the United States during this time was obtained from particular Russian distilleries selected by VVO-SPI and was inspected and certified to comport with the state standards of the Russian Government.

**The Purported Privatization**

35. In 1990, the Soviet Union began to collapse. In the accompanying chaos, billion-dollar enterprises were "hijacked" by their managers and/or directors.

36. The staff of VVO-SPI, led by its General Director, Evgeniy Filippovich Sorochkin ("Sorochkin"), did the same. They conspired to make it appear that VVO-SPI (a state-controlled entity) had been lawfully transformed into a private joint stock company by creating a private company using a name, VAO-SPI, nearly identical to VVO-SPI, and by asserting in VAO-SPI's corporate charter that it was VVO-SPI's successor.

37. VVO-SPI was not in fact transformed into VAO-SPI or otherwise privatized.

38. Defendants claim rights in the STOLICHNAYA Marks based upon a chain of purported transfers originating with a purported assignment by VAO-SPI, which by April 1996

had been renamed VZAO-SPI, to an entity named ZAO-SPI, which in turn purported to assign the Marks to Spirits International.

**Shefler and Oliynik Gain Control over the STOLICHNAYA Marks**

39.     In the mid-1990s, Shefler and Oliynik seized the STOLICHNAYA Marks and transferred them to Spirits International, part of the SPI Spirits Group, which Shefler and Oliynik founded, own and control.

40.     In the Spring of 1997, Shefler and Oliynik wrested control over VZAO-SPI from Sorochkin and the former staff of VVO-SPI.  Shefler and Oliynik purchased one or more distilleries that were shareholders in VZAO-SPI and, through threats and intimidation, obtained proxies from other shareholders giving them a majority of voting shares.  Using this majority, Shefler and Oliynik ousted Sorochkin and the other original management of VZAO-SPI and put themselves and their allies in key positions in the company.  Shefler became President and Chairman of the Board of VZAO-SPI, and Oliynik became VZAO-SPI's Vice Chairman, Secretary of the Board and a member of the company's Governing Board.

41.     On December 26, 1997, Shefler and Oliynik stripped the STOLICHNAYA Marks from VZAO-SPI and transferred the Marks to a company controlled by them.  On that date, at the direction of Shefler and Oliynik, VZAO-SPI sold the worldwide rights to the trademarks for STOLICHNAYA to a joint venture named ZAO-SPI.  ZAO-SPI was formed in October 1997 by persons acting under the direction and control of Shefler and Oliynik, including Shefler's brother-in-law, Evgeniy Shubin, who served as ZAO-SPI's general director from October 1997 to May 1998.  Shefler later became ZAO-SPI's chairman, and in May 1998 Oliynik became the general director of ZAO Eleri, one of the companies that formed the ZAO-SPI joint venture.  The SPI Group's website has acknowledged that ZAO-SPI is an affiliate of the SPI Group.

8

42. The worldwide rights to the STOLICHNAYA trademarks were sold to ZAO-SPI for a fraction of their value. VZAO-SPI purported to sell the trademarks for 1.7 million rubles, then the equivalent of approximately $300,000. At the time, worldwide rights to the STOLICHNAYA trademarks were worth at least $400 million.

43. In or about April 12, 1999, after a criminal investigation into ZAO-SPI's export activities had begun, Shefler and Oliynik directed ZAO-SPI to transfer the worldwide rights to the STOLICHNAYA trademarks, this time to Spirits International, a company outside of Russia that Shefler and Oliynik founded, owned and controlled. The Marks were purportedly sold for $800,000, again a small fraction of their actual value.

44. In 2000, a Russian prosecutor instituted proceedings against VZAO-SPI, which by that time had become OAO Pladovoya Kompania ("OAO"), to invalidate the provision in its charter, derived from VAO-SPI's original charter, stating that it is VVO-SPI's successor. On December 21, 2000, the Arbitrazh Court of Moscow ruled this provision invalid because VVO-SPI had not been privatized. OAO successfully appealed this decision on standing grounds, but in October 2001 the Russian Supreme Arbitrazh Court ruled that there was standing and reinstated the December 2000 decision invalidating the charter provision. The European Court of Human Rights subsequently rejected OAO's challenge to the Supreme Arbitrazh Court's decision. Considering the issue *de novo* in proceedings that have become final, courts in the Netherlands likewise found that VVO-SPI had not been privatized.

45. In January 2002, in light of the ruling that VVO-SPI had not been privatized and that VAO-SPI never became the owner of the STOLICHNAYA trademarks, the Arbitrazh Court of Moscow declared the purported transfer of the trademarks from VZAO-SPI to ZAO-SPI null and void.

46.     Shefler and Oliynik had personal knowledge that VZAO-SPI lacked good title to the STOLICHNAYA Marks.  Before being forced to resign, VZAO-SPI's then-president Sorochkin personally informed Shefler and Oliynik that there were legal defects in VAO-SPI's chain of title to VVO-SPI's assets, including the STOLICHNAYA Marks.

47.     Shefler and Oliynik also knew that VVO-SPI had not been legally privatized. When they became involved in VZAO-SPI, Shefler and Oliynik conducted an extensive review of the company and, in particular, of its trademarks.  Among other things, they reviewed VZAO-SPI's financial records, including VVO-SPI's January 1992 balance sheet, and VAO-SPI's balance sheets from January 1993 and July 1993, which demonstrated that VAO-SPI was not VVO-SPI's successor.  Shefler and Oliynik also examined the records concerning the purported privatization of VVO-SPI and the creation of VAO-SPI.  These records showed that VVO-SPI was one of the original shareholders of VAO-SPI and, thus, could not have been transformed into VAO-SPI.  The records also showed that numerous steps essential to privatization, such as approval by the Ministry of State Property and payment to the Russian Federation, were not taken.

48.     Notwithstanding these defects in VZAO-SPI's chain of title, Shefler and Oliynik moved forward with their plan to exploit the STOLICHNAYA trademarks in the United States and around the world without authorization.

**Infringement Through Allied Domecq**

49.     In or about November 2000, SPI entered into an agreement with Allied Domecq International Holdings, B.V. and/or Allied Domecq Spirits and Wines USA, Inc. (collectively "Allied Domecq") in which Allied Domecq agreed to distribute and sell vodka bearing the STOLICHNAYA Marks.

50.    The trademarks for STOLICHNAYA vodka were (and still are) SPI's most valuable asset and the management of those trademarks is one of SPI's primary businesses.  In addition, the United States was (and still is) the largest market in the world for STOLICHNAYA vodka outside of Russia, accounting for more than half of such sales.  As a consequence, the selection of a distributor for STOLICHNAYA vodka in the United States was a decision of the utmost importance to SPI, and as owners and controlling managers, Shefler and Oliynik directed, controlled and were personally and actively involved in the selection of Allied Domecq as distributor.

51.    In or about January 1, 2001, by falsely representing themselves to be VVO-SPI's legitimate successor, SPI induced PepsiCo to purport to assign its rights to the STOLICHNAYA Marks to Allied Domecq.  As the owners and senior executives of SPI, Shefler and Oliynik directed, controlled and were personally and actively involved in the decision to instruct PepsiCo to transfer its interest in the Marks to PepsiCo.

52.    This purported assignment was invalid.  SPI is not VVO-SPI's successor in interest and does not own the STOLICHNAYA Marks, and as a mere licensee, PepsiCo did not own the STOLICHNAYA Marks and therefore did not have the right to transfer the Marks to Allied Domecq.

53.    From January 2001 to August 2008, Allied Domecq imported, advertised, distributed and sold substantial quantities of vodka bearing the STOLICHNAYA Marks in New York and elsewhere in the United States.

54.    Allied Domecq bought all the vodka it sold bearing the STOLICHNAYA Marks in the United States from SPI.

55.     Allied Domecq's use of the STOLICHNAYA Marks was not authorized by VVO-SPI, FTE or the Russian Federation and was therefore infringing.

56.     SPI, including Shefler and Oliynik in particular, and Allied Domecq knew or should have known that the purported assignment of the STOLICHNAYA Marks to Allied Domecq was invalid because, among other things, on December 11, 2000 (before the November 2000 agreement with Allied Domecq went into effect) the Arbitrazh Court of Moscow issued its ruling that VAO-SPI was not VVO-SPI's successor.

57.     Allied Domecq's November 2000 agreement with SPI, as well as its annual reports, specifically noted the possibility that the Russian Federation would claim title to the Marks.

**WGS's Infringement**

58.     On or about December 15, 2008, SPI entered into an agreement with WGS to distribute and sell vodka bearing the STOLICHNAYA Marks in the United States.  To the extent this agreement purported to authorize WGS to use the STOLICHNAYA Marks, the agreement was invalid because SPI had no right to the Marks.

59.     Because the United States was the largest market for STOLICHNAYA vodka distributed by SPI, and the selection of a distributor for STOLICHNAYA vodka in the United States was a decision of utmost importance to SPI, as owners and controlling managers, Shefler and Oliynik directed, controlled and were personally and actively involved in the selection of WGS as the new distributor.

60.     From December 2008 to 2013, WGS imported, advertised, distributed and sold substantial quantities of vodka bearing the STOLICHNAYA Marks in New York and elsewhere in the United States.

61.     WGS's use of the Marks was not authorized by VVO-SPI, FTE or the Russian Federation and was therefore infringing.

62.     SPI, including Shefler and Oliynik in particular, and WGS either knew or should have known that its use of the Marks was unauthorized.  Before contracting with SPI, WGS was aware of Russian decisions invalidating the Group's chain of title to the Marks, and since at least 2008 it has known FTE had sued SPI, Shefler, Oliynik and Allied Domecq alleging that their purported chain of title to the Marks was invalid.

**Stoli Group's Infringement**

63.     On or about January 1, 2014, SPI entered into an agreement with Stoli Group to distribute and sell vodka bearing the STOLICHNAYA Marks in the United States.  To the extent this agreement purported to authorize Stoli Group to use the STOLICHNAYA Marks, the agreement was invalid because SPI had no right to use the Marks.

64.     SPI has had to invest substantial amounts of money to create and operate Stoli Group.  Shefler and Oliynik directed, controlled and were personally and actively involved in creating the Stoli Group.

65.     From January 1, 2014 to the present, Stoli Group has imported, advertised, distributed and/or sold vodka bearing the STOLICHNAYA Marks in New York and elsewhere in the United States.

66.     Stoli Group's use of the Marks is not authorized by VVO-SPI, FTE or the Russian Federation and is therefore infringing.

67.     SPI, including Shelfer and Oliynik in particular, and Stoli Group either knew or should have known that its use of the Marks was unauthorized.  Before contracting with SPI, Stoli Group was aware of Russian decisions invaliding the SPI's chain of title to the Marks, and

it knew FTE had sued SPI, Allied Domecq and WGS alleging that their purported chain of title to the Marks was invalid.

**SPI's Infringement**

68.    By entering into agreements with Allied Domecq, WGS and Stoli Group to distribute and sell vodka bearing the STOLICHNAYA Marks, and by supplying the vodka sold by Allied Domecq, WGS, and Stoli Group, SPI, including Shefler and Oliynik, has directly infringed the STOLICHNAYA Marks and contributed to the infringement by Allied Domecq and WGS.

69.    SPI's use of the STOLICHNAYA Marks is not authorized by VVO-SPI, FTE or the Russian Federation.

70.    As detailed above, Shefler and Oliynik had personal knowledge that VVO-SPI was not privatized.

71.    SPI knew or should have known that its chain of title to the STOLICHNAYA Marks was defective and that its use of the Marks was unauthorized and infringing.  SPI's actions took place after the Arbitrazh Court of Moscow ruled that VVO-SPI had not been privatized, and many of its actions also took place after the Russian Supreme Arbitrazh Court reinstated this ruling, the European Court of Human Rights had rejected SPI's challenge to the ruling, and courts in the Netherlands had found *de novo* that VVO-SPI had not been privatized.

**Defendants' Infringing Sale of Inauthentic STOLICHNAYA Vodka**

72.    Defendants have unlawfully imported and sold vodka in the United States bearing the STOLICHNAYA Marks, infringing the STOLICHNAYA brand.

73.     The vodka sold by Defendants under the STOLICHNAYA brand was and is materially different in quality and character from the authentic STOLICHNAYA brand vodka sold on behalf of VVO-SPI in the United States.

14

74.     Upon information and belief, in or about 2002, at the direction of Shefler and Oliynik, SPI began exporting vodka into the U.S. under the STOLICHNAYA Marks that was produced and/or bottled in Latvia—not Russia, where authentic STOLICHNAYA brand vodka is produced.  Defendants have imported, advertised, distributed and sold vodka from Latvia bearing the STOLICHNAYA Marks in New York and elsewhere in the United States.

75.     The vodka sold by Defendants is not subject to the same quality control measures as authentic, Russian-made STOLICHNAYA vodka produced and sold by Plaintiffs.

76.     Nevertheless, consumers are likely to believe that the STOLICHNAYA branded vodka being sold by Defendants today is the same high-quality vodka originating from the same source, and subject to the same quality control measures, as vodka sold under the STOLICHNAYA brand in the United States between 1969 and 2000.

**Involvement of Shefler and Oliynik**

77.     Shefler and Oliynik are and have been the moving force behind SPI's unauthorized use of the STOLICHNAYA Marks and the infringement by Allied Domecq, WGS and Stoli Group.

78.     Shefler and Oliynik gained control over the Marks in the mid-1990s by taking over VZAO-SPI, stripping VZAO-SPI of the STOLICHNAYA Marks, and transferring the Marks for a fraction of their value to a company controlled by them and later to Spirits International, part of SPI, which they founded, own and control.

79.     Shefler initially owned eighty percent of SPI Group SA and continues to be the SPI corporate defendants' majority shareholder.  Oliynik is one of the few other shareholders of SPI.  As owners of SPI and the most senior executives in the various companies within SPI, Shefler and Oliynik wield broad discretionary authority over the operation of SPI and formulate

15

SPI's basic business strategy.  In the proceedings in the Netherlands, Shefler was found to occupy a "central position" within SPI and have "a dominant influence on the corporate policies" of the SPI corporate defendants, "including the purchase of the trademarks."

80.     Shefler and Oliynik targeted VZAO-SPI in the mid-1990s because purportedly they believed that the company was not well-managed and, in particular, was not exploiting the trademarks for STOLICHNAYA in Russia and abroad as well as it could.  In keeping with this plan, Shefler and Oliynik have directed SPI to sell vodka in the United States using the STOLICHNAYA Marks, and Shefler claims to have invested millions of dollars of his own money developing the Marks.

81.     Shefler and Oliynik directed, controlled and personally participated in the decisions to use Allied Domecq, WGS and Stoli Group as distributors.  At a minimum, Shefler and Oliynik have been aware of all use of the STOLICHNAYA Marks by Allied Domecq, WGS and Stoli Group and ratified that use.

82.     Shefler also has been closely involved in formulating SPI's marketing strategy for the STOLICHNAYA Marks.  In addition to investing his own money in developing the Marks, Shefler has personally appeared in advertising for STOLICHNAYA brand vodka.

83.     In light of Shefler's close, personal involvement in the development of the infringing STOLICHNAYA Marks, SPI has alleged in this action that the value of the Marks increased as "a result of Mr. Shefler's entrepreneurship and investments."

84.     Oliynik also has been personally involved in SPI's use of the STOLICHNAYA Marks.  On April 12, 1999, Oliynik signed the agreement purporting to transfer the Marks from ZAO-SPI to Spirits International (as well as the March 12, 1998 agreement transferring the Marks from VZAO-SPI to ZAO-SPI).

16

85.     On December 22, 2015, in his capacity as Spirits International's manager, Oliynik signed an agreement purporting to transfer the Marks to ZHS.  Oliynik also signed this agreement on behalf of ZHS in his capacity as ZHS's manager.  Upon information and belief, this transfer is part of a corporate shell game designed to protect Shefler, Oliynik and the companies in SPI from having to pay monetary damages from an adverse judgment in these proceedings, and similar proceedings in the Netherlands, Australia and elsewhere.

86.     Oliynik also personally oversees the filing and maintenance of  STOLICHNAYA trademark applications and registrations in the United States.  For example, Oliynik submitted sworn declarations to the USPTO in connection with numerous federal trademark registrations and applications for the STOLICHNAYA Marks, including U.S. Trademark Registration Nos. 865,462, 1,291,454, 1,852,552, 1,988,911 and 1,244,735.

**Prior Legal Proceedings in the United States**

87.     In 2004, FTE sued SPI and Allied Domecq for, *inter alia*, trademark infringement. In August 2013, however, the United States Court of Appeals for the Second Circuit held that FTE lacked standing to sue for trademark infringement because, while the Russian Federation had entrusted it with responsibility for using and enforcing the STOLICHNAYA Marks, it had not assigned the trademarks to FTE.

88.     To rectify its lack of standing according to the Second Circuit, on February 3, 2014, the Russian Federation assigned the STOLICHNAYA Marks to FTE.  Attached hereto as **Exhibit A** is a true and correct copy of this assignment.

17

## FIRST CLAIM[1]

### (Federal Trademark Infringement—15 U.S.C. § 1114(1))

89.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 88, above, as though fully set forth herein.

90.     FTE is the rightful owner of the STOLICHNAYA Marks and has given Cristall the exclusive right to produce vodka bearing the Marks for sale in the United States.

91.     Defendants have used the STOLICHNAYA Marks without permission or authorization.

92.     Defendants' unauthorized use of the STOLICHNAYA Marks constituted and continues to constitute trademark infringement and was and is likely to cause: (a) confusion, deception and mistake among the consuming public and trade; and (b) irreparable injury to FTE, including injury to its reputation and to the distinctive high quality of its trademarks.

93.     Shefler and Oliynik are liable for trademark infringement because they, individually and together, directed, controlled, ratified, participated in or were the moving, active, conscious force behind SPI's infringement and contributory infringement.

94.     Shefler and Oliynik are liable for trademark infringement because they, individually and together, dominate and control the privately held corporations that make up SPI and are using these companies as part of a corporate shell game designed to shield their profits from the infringing activity.

---

[1]   Plaintiffs expressly preserve their appellate remedies with respect to all claims pleaded in the original Complaint. *See P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004) ("We will not require a party, in an amended complaint, to replead a dismissed claim in order to preserve the right to appeal the dismissal when the court has not granted leave to amend."); *Leber v. Citigroup, Inc.*, No. 07 Civ. 9329, 2011 WL 5428784, at *2 n.1 (S.D.N.Y. Nov. 8, 2011) (Stein, J.) (same).

95.    Defendants' wrongful conduct has caused, and unless enjoined will continue to cause, irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law. Plaintiffs are therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendants, their agents, servants and employees and all persons acting thereunder, in concert with, or on their behalf, from using, licensing or selling the Marks.

96.    Because Defendants' wrongful activities constituted and continue to constitute trademark infringement, and because Defendants' conduct was wanton, deliberate, malicious and willful, Plaintiffs also are entitled to the remedies set forth in 15 U.S.C. §§ 1117(a) and 1118. Specifically, Plaintiffs are entitled to recover all profits earned by the Defendants, trebled; all damages Plaintiffs have sustained, trebled; as well as attorney's fees, costs and all other available remedies.

## SECOND CLAIM

### (Contributory Federal Trademark Infringement)

97.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 96, above, as though fully set forth herein.

98.    SPI is liable for contributory trademark infringement as the supplier of infringing goods to Allied Domecq, WGS and/or Stoli Group.  SPI has supplied, and continues to supply, infringing products to Allied Domecq, WGS and/or Stoli Group even after SPI, Allied Domecq, WGS and Stoli Group knew, or had reason to know, that Allied Domecq, WGS and/or Stoli Group were infringing the STOLICHNAYA Marks.

99.    SPI is also liable for contributory trademark infringement because it intentionally induced Allied Domecq, WGS and/or Stoli Group to infringe the STOLICHNAYA Marks.

19

100.     Shefler and Oliynik are liable for contributory trademark infringement because they, individually and together, directed, controlled, ratified, participated in or were the moving, active, conscious force behind SPI's infringement and contributory infringement.

101.     Shefler and Oliynik are liable for trademark infringement because they, individually and together, dominate and control the privately held corporations that make up SPI and are using these companies as part of a corporate shell game designed to shield their profits from the infringing activity.

102.     SPI's wrongful conduct has caused and, unless enjoined, will continue to cause, irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.  Plaintiffs are therefore entitled to a preliminary and permanent injunction restraining and enjoining SPI, its agents, servants, and employees and all persons acting thereunder, in concert with, or on its behalf, from using, licensing, assigning other than to FTE, or selling the Marks.

103.     Plaintiffs are also entitled to the remedies set forth in 15 U.S.C. §§ 1117(a) and 1118.  Specifically, Plaintiffs are entitled to recover all profits earned by Defendants, trebled; all damages FTE has sustained, trebled; as well as attorney's fees, costs and all other available remedies.

## THIRD CLAIM

### (Rectification of Register—15 U.S.C. § 1119)

104.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 103, above, as though fully set forth herein.

105.     Spirits International is not now, and never has been, the rightful owner or registrant of the STOLICHNAYA Marks because it did not acquire valid title to them and because it did not control the nature and quality of the vodka bearing the STOLICHNAYA Marks.

106.    Allied Domecq is not now, and never has been, the rightful owner or registrant of the STOLICHNAYA Marks because it did not acquire valid title to them and because it did not control the nature and quality of the vodka bearing STOLICHNAYA Marks.

107.    ZHS is not now, and never has been, the rightful owner or registrant of the STOLICHNAYA Marks because it did not acquire valid title to them and because it did not control the nature and quality of the vodka bearing the STOLICHNAYA Marks.

108.    Accordingly, FTE seeks an order from the Court to the Director of the USPTO certifying that FTE is the rightful owner of the STOLICHNAYA Marks and directing it to rectify the Federal Register to reflect FTE as the owner and registrant of the STOLICHNAYA Marks.

## FOURTH CLAIM

### (Cancellation of Registrations—15 U.S.C. §§ 1119, 1052, 1064)

109.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 108, above, as though fully set forth herein.

110.    FTE is the rightful owner of the STOLICHNAYA Marks, which have acquired considerable value and have become well-known and famous to the consuming public and trade in the United States and throughout the world.

111.    Spirits International, Allied Domecq and ZHS have registered trademarks incorporating the STOLICHNAYA Marks or derivatives thereof in the United States without the authorization or consent of FTE or the Russian Federation.

112.    The trademarks derived from the STOLICHNAYA Marks that Spirits International, Allied Domecq and ZHS have registered are confusingly similar to the STOLICHNAYA Marks, and were and are intended to confuse and deceive consumers.

113.    The trademarks derived from the STOLICHNAYA Marks that Spirits International, Allied Domecq and ZHS have registered are used to misrepresent the source of the

21

good sold in connection therewith, suggest a false connection to the Russian Federation, employ a geographical indication which identifies a place other than the origin of the goods and were obtained fraudulently.

114.    Spirits International, Allied Domecq and ZHS knowingly misrepresented to the USPTO that they were entitled to register and/or use the STOLI Marks, with an intent to deceive the USPTO, in connection with the original applications and also in connection with the subsequent affidavits submitted thereafter.  The USPTO reasonably relied on these misrepresentations in issuing and/or continuing the registrations.

115.    On these grounds, FTE seeks cancellation of any STOLICHNAYA-related trademarks that Defendants have registered or that may become registered, including the following:

| Mark | Serial No. | Filing Date | Reg. No. | Reg. Date | Status as of Feb. 4, 2014 |
|---|---|---|---|---|---|
| STOLICHNAYA CRANBERI | 78/150258 | 08/02/02 | 2984881 | 08/16/05 | Registered |
| STOLI CRANBERI | 78/150200 | 08/02/02 | 2915969 | 01/04/05 | Registered |
| STOLICHNAYA CITROS | 78/150196 | 08/02/02 | 2936005 | 03/29/05 | Registered |
| STOLICHNAYA ELIT | 78/153281 | 08/12/02 | 3325498 | 10/30/07 | Registered |
| STOLICHNAYA ELIT and design | 78/177458 | 10/23/02 | 3044248 | 01/17/06 | Registered |
| STOLI OHRANJ and design | 78/597869 | 03/30/05 | 3076407 | 04/04/06 | Registered |
| STOLI OHRANJ and design | 78/602661 | 04/06/05 | 3076475 | 04/04/06 | Registered |
| STOLI BLUEBERI | 78/707756 | 09/07/05 | 3110643 | 06/27/06 | Registered |
| STOLI BLUEBERI (stylized) | 78/710734 | 09/12/05 | 3110644 | 06/27/06 | Registered |
| STOLICHNAYA STOLI BLUEBERI BLUEBERRY FAVORED RUSSIAN VODKA | 78/712452 | 09/14/05 | 3341339 | 11/20/07 | Registered |

| Mark | Serial No. | Filing Date | Reg. No. | Reg. Date | Status as of Feb. 4, 2014 |
|---|---|---|---|---|---|
| STOLICHNAYA STOLI BLUEBERI BLUEBERRY FLAVORED RUSSIAN VODKA and design | 78/758074 | 11/21/05 | 3331722 | 11/06/07 | Registered |
| STOLICHNAYA STOLI CRANBERI CRANBERRY FLAVORED RUSSIAN VODKA and design | 78/758082 | 11/21/05 | 3236313 | 05/01/07 | Registered |
| STOLICHNAYA STOLI CRANBERI CRANBERRY FLAVORED RUSSIAN VODKA and design | 78/758089 | 11/21/05 | 3236314 | 05/01/07 | Registered |
| STOLI BLAKBERI | 77/296216 | 10/04/07 | 3620153 | 05/12/09 | Registered |
| STOLI PEACHIK | 77/298233 | 10/08/07 | 3526585 | 11/04/08 | Registered |
| STOLICHNAYA STOLI POMEGRANIK POMEGRANATE FLAVORED RUSSIAN VODKA SPI and design | 77/719236 | 04/22/09 | 3883661 | 11/30/10 | Registered |
| STOLI GALA APPLIK | 77/778148 | 07/10/09 | 3861810 | 10/12/10 | Registered |
| FROM THE HOUSE OF STOLICHNAYA | 85/031409 | 05/06/10 | 4080771 | 06/03/12 | Registered |
| STOLICHNAYA STOLI WILD CHERRI and design | 85/068226 | 06/22/10 | 3987082 | 06/28/11 | Registered |
| STOLICHNAYA STOLICHNAYA and design | 79/085598 | 06/28/10 | 4116695 | 03/27/12 | Registered |
| STOLICHNAYA STOLICHNAYA | 85/219536 | 01/18/11 | 4126541 | 04/10/12 | Registered |
| STOLICHNAYA GOLD | 79/104840 | 10/12/11 | 4255752 | 12/11/12 | Registered |
| STOLI STICKI | 85/491325 | 12/09/11 | 4269571 | 01/01/13 | Registered |
| STOLI CHOCOLAT RAZBERRI STOLICHNAYA | 79//110196 | 01/12/12 | 4293958 | 02/26/13 | Registered |
| STOLICHNAYA STOLI | 79/120515 | 09/19/12 | N/A | N/A | Pending |

23

| Mark | Serial No. | Filing Date | Reg. No. | Reg. Date | Status as of Feb. 4, 2014 |
|---|---|---|---|---|---|
| STOLI CHOCOLAT KOKONUT STOLICHNAYA | 79/120514 | 09/19/12 | N/A | N/A | Pending |
| STOLI SALTED KARAMEL STOLICHNAYA | 79/120461 | 09/19/12 | N/A | N/A | Pending |

## PRAYER FOR RELIEF

Wherefore, FTE and Cristall pray for judgment against Shefler, Oliynik, SPI Group SA, Spirits International, SPI Spirits, WGS USA, WGS Inc., Stoli Group and ZHS and each of them, as follows:

A.    For a preliminary and permanent injunctions prohibiting the Defendants from using, licensing, assigning other than to FTE, or selling the STOLICHNAYA Marks.

B.    For an accounting of Defendants' unjust profits, trebled; damages, trebled; as well as costs, attorneys' and investigators' fees.

C.    For a declaration that FTE is the rightful owner of the STOLICHNAYA Marks in the United States, and for an order directing the USPTO to rectify the Principal Register to accurately reflect that ownership.

D.    For cancellation of any trademarks that Defendants have registered or are in the process of registering that are derived from the STOLICHNAYA Marks or an order directing Defendants to assign the registrations to FTE.

E.    For Plaintiffs' damages, costs, attorneys' and investigators' fees, punitive and exemplary damages in an amount sufficient to punish Defendants and deter others, and an accounting of the Defendants' unjust profits.

F.    For such other and further relief as this Court deems just and proper.

24

## DEMAND FOR JURY TRIAL

Plaintiffs Russian Federal Treasury Enterprise Sojuzplodoimport and OAO "Moscow

Distillery Cristall" respectfully demand trial by jury pursuant to Rule 38(b) of the Federal Rules

of Civil Procedure.

Dated:  New York, New York
        September 30, 2016

                                    QUINN EMANUEL
                                    URQUHART & SULLIVAN, LLP


                            By: _____

                                    Robert L. Raskopf
                                    Marc Greenwald
                                    Jessica A. Rose
                                    Guyon H. Knight

                                    51 Madison Avenue, 22nd Floor
                                    New York, New York 10010
                                    Telephone: (212) 849-7000
                                    Fax: (212) 849-7400
                                    robertraskopf@quinnemanuel.com
                                    marcgreenwald@quinnemanuel.com
                                    jessicarose@quinnemanuel.com
                                    guyonknight@quinnemanuel.com

                                    Attorneys for Plaintiffs
                                    Federal Treasury Enterprise
                                    Sojuzplodoimport "FTE" and OAO
                                    "Moscow Distillery Cristall"

                                    and

                                    Daniel H. Bromberg

                                    QUINN EMANUEL
                                    URQUHART & SULLIVAN, LLP
                                    555 Twin Dolphin Drive, 5th Floor
                                    Redwood Shores, California 94065
                                    Telephone: (650) 801-5000
                                    Fax: (650) 801-5100
                                    danbromberg@quinnemanuel.com

# EXHIBIT A

СОГЛАШЕНИЕ ОБ УСТУПКЕ ПРАВ НА ТОВАРНЫЕ ЗНАКИ В СОЕДИНЕННЫХ ШТАТАХ АМЕРИКИ

*об 01 - 09/ 18 от 03. 02 2014*

ПРИНИМАЯ ВО ВНИМАНИЕ, ЧТО целью настоящего Соглашения об уступке (именуемого в дальнейшем «Соглашение») является установление юридических и финансовых условий, которые будут применяться к полной уступке Федеральным агентством по управлению государственным имуществом (именуемым в дальнейшем «Цедент»), федеральный орган исполнительной власти Российской Федерации, расположенный по адресу: 109012, г. Москва, Никольский пер.,9, действующий на основании постановления Правительства Российской Федерации от 01.02.2014 № 69, федеральному казенному предприятию «Союзплодоимпорт» (именуемому в дальнейшем «Цессионарий»), государственному предприятию, расположенному по адресу: 107139, г. Москва, Орликов пер., д. 1/11, всех прав на все товарные знаки, состоящие или включающие слова STOLICHNAYA и/или STOLI, в Соединенных Штатах Америки и на всех территориях под юрисдикцией США (далее «США»), включая товарные знаки США, зарегистрированные советским государственным предприятием В/О «Союзплодоимпорт», а именно,

WHEREAS, the purpose of this Assignment (hereinafter referred to as "the Assignment") is to set forth the legal and financial conditions that shall apply to the full assignment by the Federal Agency on State Property Management (hereinafter referred to as "Assignor"), a federal state executive body of the Russian Federation, address: 109012, Moscow, Nikolskiy pereulok, 9, acting in accordance with decree of the Russian government dated February 01, 2014 no. 69, to Federal Treasury Enterprise Sojuzplodoimport (hereinafter referred to as "Assignee"), , a state enterprise, address: 107139, Moscow, Orlikov pereulok, 1/11, of all right title and interest to any and all marks consisting of or incorporating the words STOLICHNAYA and/or STOLI in the United States of America and all territories under its jurisdiction (the "U.S."), including marks registered by V/O «Sojuzplodoimport», a Soviet state enterprise:

Знак

Mark

STOLICHNAYA (№ 865,462)
STOLICHNAYA (№ 1,291,454)
STOLI (№ 1,244,735)
а также последующие регистрации товарных знаков в США, перечень которых не является исчерпывающим, а именно:

STOLICHNAYA (№ 865,462)
STOLICHNAYA (№ 1,291,454)
STOLI (№ 1,244,735)
as well as further United States Trademark Registrations, including but not limited to:

STOLICHNAYA (№2,317,475)
STOLICHNAYA RUSSIAN
VODKA (№1,852,552)
STOLICHNAYA KAFYA (№2,155,523)
STOLICHNAYA LIMONNAYA
VODKA (№2,334,080)
STOLICHNAYA LIMONNAYA (№2,339,463)
STOLICHNAYA LIMONNAYA
VODKA (№2,334,079)
STOLICHNAYA OHRANJ (№ 2,291,831)
STOLICHNAYA OHRANJ (№ 2,233,190)
STOLICHNAYA OHRANJ (№ 1,988,911)
STOLI PERSIK (№ 2,189,745)
STOLICHNAYA STOLI PERSIK (№ 2,339,689)

STOLICHNAYA (№2,317,475)
STOLICHNAYA RUSSIAN
VODKA (№1,852,552)
STOLICHNAYA KAFYA (№2,155,523)
STOLICHNAYA LIMONNAYA
VODKA (№2,334,080)
STOLICHNAYA LIMONNAYA (№2,339,463)
STOLICHNAYA LIMONNAYA
VODKA (№2,334,079)
STOLICHNAYA OHRANJ (№ 2,291,831)
STOLICHNAYA OHRANJ (№ 2,233,190)
STOLICHNAYA OHRANJ (№ 1,988,911)
STOLI PERSIK (№ 2,189,745)
STOLICHNAYA STOLI PERSIK (№ 2,339,689)

Assignment of United States Trademarks

2

STOLICHNAYA STOLI RAZBERI (№ 2,204,355)
STOLI RAZBERI (№ 2,175,465)
STOLICHNAYA STRASBERI (№ 2,202,991)
STOLI STRASBERI (№ 2,205,863)
STOLI VANIL (№ 2,192,600)
STOLI ZINAMON (№ 2,192,681)
STOLICHNAYA GOLD (заявка) (№ 2,455,605)
STOLICHNAYA STOLI KAFIYA (№2,509,871)
STOLICHNAYA ZINAMON (№ 2,509,874)
STOLICHNAYA STOLI ZINAMON
(№ 2,509,873)
STOLICHNAYA VANIL (№ 2,857,139)
STOLICHNAYA STOLI VANIL (№ 2,898,451)
STOLICHNAYA STOLI
STRASBERI (№ 2,552,858)
STOLI KAFYA (№ 2,509,872)
STOLI STICKI (№ 4,269,571)
STOLICHNAYA STOLI WILD
 CHERRI (№ 3,987,082)
STOLI CHOCOLAT
RAZBERI STOLICHNAYA (№ 4,293,958)
STOLICHNAYA STOLI CRANBERI
CRANBERRY FLAVORED RUSSIAN
VODKA (№ 3,236,314)
STOLICHNAYA STOLI CRANBERI
CRANBERRY FLAVORED RUSSIAN
VODKA (№ 3,236,313)
STOLICHNAYA STOLI BLUEBERI
BLUEBERRY FLAVORED RUSSIAN VODKA
(№ 3,331,722)
STOLICHNAYA STOLI BLUEBERI
BLUEBERRY FLAVORED RUSSIAN VODKA
(№ 3,341,339)
STOLI BLUEBERI (№ 3,110,644)
STOLI BLUEBERI (№ 3,110,643)
STOLI OHRANJ (№ 3,076,475)
STOLI OHRANJ (№ 3,076,407)
STOLI CRANBERI (№ 2,915,969)
STOLI GALA APPLIK (№ 3,861,810)
STOLICHNAYA STOLI POMEGRANIK
POMEGRANATE FLAVORED RUSSIAN
VODKA SPI (№ 3,883,661)
STOLI PEACHIK (№ 3,526,585)
STOLI BLAKBERI (№ 3,620,153)
STOLICHNAYA STOLI (№ 79,120,515)
STOLI CHOCOLAT KOKONUT
STOLICHNAYA (№ 79,120,514)
STOLI SALTED KARAMEL
STOLICHNAYA (№ 79,120,461)
BEST CHILLED STOLI GENUINE RUSSIAN
VODKA (№ 78,506,588)
STOLI PEACHI (№ 78,176,857)

STOLICHNAYA STOLI RAZBERI (№ 2,204,355)
STOLI RAZBERI (№ 2,175,465)
STOLICHNAYA STRASBERI (№ 2,202,991)
STOLI STRASBERI (№ 2,205,863)
STOLI VANIL (№ 2,192,600)
STOLI ZINAMON (№ 2,192,681)
STOLICHNAYA GOLD (заявка) (№ 2,455,605)
STOLICHNAYA STOLI KAFIYA (№2,509,871)
STOLICHNAYA ZINAMON (№ 2,509,874)
STOLICHNAYA STOLI ZINAMON
(№ 2,509,873)
STOLICHNAYA VANIL (№ 2,857,139)
STOLICHNAYA STOLI VANIL (№ 2,898,451)
STOLICHNAYA STOLI
STRASBERI (№ 2,552,858)
STOLI KAFYA (№ 2,509,872)
STOLI STICKI (№ 4,269,571)
STOLICHNAYA STOLI WILD
 CHERRI (№ 3,987,082)
STOLI CHOCOLAT
RAZBERI STOLICHNAYA (№ 4,293,958)
STOLICHNAYA STOLI CRANBERI
CRANBERRY FLAVORED RUSSIAN
VODKA (№ 3,236,314)
STOLICHNAYA STOLI CRANBERI
CRANBERRY FLAVORED RUSSIAN
VODKA (№ 3,236,313)
STOLICHNAYA STOLI BLUEBERI
BLUEBERRY FLAVORED RUSSIAN VODKA
(№ 3,331,722)
STOLICHNAYA STOLI BLUEBERI
BLUEBERRY FLAVORED RUSSIAN VODKA
(№ 3,341,339)
STOLI BLUEBERI (№ 3,110,644)
STOLI BLUEBERI (№ 3,110,643)
STOLI OHRANJ (№ 3,076,475)
STOLI OHRANJ (№ 3,076,407)
STOLI CRANBERI (№ 2,915,969)
STOLI GALA APPLIK (№ 3,861,810)
STOLICHNAYA STOLI POMEGRANIK
POMEGRANATE FLAVORED RUSSIAN
VODKA SPI (№ 3,883,661)
STOLI PEACHIK (№ 3,526,585)
STOLI BLAKBERI (№ 3,620,153)
STOLICHNAYA STOLI (№ 79,120,515)
STOLI CHOCOLAT KOKONUT
STOLICHNAYA (№ 79,120,514)
STOLI SALTED KARAMEL
STOLICHNAYA (№ 79,120,461)
BEST CHILLED STOLI GENUINE RUSSIAN
VODKA (№ 78,506,588)
STOLI PEACHI (№ 78,176,857)

3

STOLICHNAYA STOLI WHITE
POMEGRANIK (№ 77,899,772)
STOLI KARAMEL (№ 77,296,278)
STOLI CITRONA (№ 76,361,601)
STOLI KRIMSON (№ 76,306,107)
STOLI CRANBERRY (№ 76,279,999)
STOLI LEMON (№ 76,279,997)
STOLICHNAYA STOLI
STRASBERI (№ 76,183,174)
STOLI CHOKALAT (№ 75,404,631)
STOLICHNAYA STOLI VANIL (№ 75,189,988)
STOLICHNAYA STOLI
ZINAMON (№ 75,189,987)
STOLICHNAYA STOLI KAFYA (№ 75,189,986)
STOLI KAFYA (№ 75,129,532)
STOLI JINSANG (№ 75,129,530)
STOLI (№ 4,295,005)

(далее «Товарные знаки»);

ПРИНИМАЯ ВО ВНИМАНИЕ, ЧТО Цедент подтверждает и признает, что Цессионарий уже обладает исключительными правами (i) владеть и использовать Товарные знаки в США; (ii) обеспечивать соблюдение своих прав на Товарные знаки в США; и (iii) подавать иски по возмещению убытков и использовать другие средства правовой защиты в отношении нарушения прав на Товарные знаки в США или их размыванием; и Цедент заключает настоящее Соглашение во избежание каких-либо сомнений;

ПРИНИМАЯ ВО ВНИМАНИЕ, ЧТО Цедент и Цессионарий желают уточнить и гарантировать, что Цессионарий обладает и в случае, если такое право не было бы передано ему ранее, посредством настоящего соглашения получает право на Товарные знаки в США;

С УЧЕТОМ ВЫШЕСКАЗАННОГО, в обмен на встречное удовлетворение, получение и обоснованность которого настоящим подтверждается, Цедент настоящим

1. передает в полном объеме права на Товарные знаки в США, включая регистрации и заявки на регистрацию, вместе с гудвилом, который символизируют Товарные знаки, в пользу Цессионария, начиная с 01 февраля 2014 года. Цедент безоговорочно отказывается от всех прав на Товарные знаки в США;

2. передает в полном объеме все другие

---

STOLICHNAYA STOLI WHITE
POMEGRANIK (№ 77,899,772)
STOLI KARAMEL (№ 77,296,278)
STOLI CITRONA (№ 76,361,601)
STOLI KRIMSON (№ 76,306,107)
STOLI CRANBERRY (№ 76,279,999)
STOLI LEMON (№ 76,279,997)
STOLICHNAYA STOLI
STRASBERI (№ 76,183,174)
STOLI CHOKALAT (№ 75,404,631)
STOLICHNAYA STOLI VANIL (№ 75,189,988)
STOLICHNAYA STOLI
ZINAMON (№ 75,189,987)
STOLICHNAYA STOLI KAFYA (№ 75,189,986)
STOLI KAFYA (№ 75,129,532)
STOLI JINSANG (№ 75,129,530)
STOLI (№ 4,295,005)

(the "Trademarks");

WHEREAS, Assignor acknowledges and agrees that Assignee already has exclusive rights to (i) hold, use and exploit the Trademarks in the U.S.; (ii) enforce its rights in the Trademarks in the U.S.; and (iii) bring suit to recover damages and other relief for past or present infringements or dilutions of the Trademarks in the U.S.; and Assignor is entering into this Agreement for avoidance of doubt;

WHEREAS, Assignor and Assignee desire to clarify and ensure beyond any doubt that Assignee has and will by this instrument have good title to the Trademarks in the U.S., to the extent that such title conceivably might not have been previously conveyed to it;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby

1. sells, conveys, transfers, assigns and sets over its entire right, title and interest in and to the Trademarks in the U.S., including the registrations and applications therefore, together with the goodwill of the business symbolized by the Trademarks, to the Assignee effective February 01, 2014. Assignor expressly relinquishes any and all right, title, and interest in and to the Trademarks in the U.S.;

2. sells, conveys, transfers, assigns and sets over its

4

знаки и интеллектуальную собственность, производную и/или основанную на Товарных знаках в США, в дальнейшем именуемую как «Передаваемое имущество», вместе с гудвилом, которые символизирует Передаваемое имущество, в пользу Цессионария, начиная с 01 февраля 2014 года. Правообладатель безоговорочно отказывается от всех прав на Передаваемое имущество в США;

3. передает в полном объеме права на интеллектуальную собственность любого вида, которая имеет какое-либо отношение к Товарным знакам в США, и которой владеет Цедент, в том числе, но не ограничиваясь, регистрации товарных знаков, заявки на регистрацию товарных знаков, товарные знаки, охраняемые нормами обычного права, бренды, фирменные наименования, доменные имена и авторские права (в том числе, помимо прочего этикетки и реклама) вместе с гудвилом, который они символизируют, в пользу Цессионария, начиная с 01 февраля 2014 года;

4. передает в полном объеме право на подачу исков и взыскание убытков за прошлые, настоящие и будущие нарушения прав, все соответствующие прошлые и настоящие требования (в том числе по праву справедливости) к третьим лицам, включая требования, которые Цессионарий пытался подать в суд США Южного округа штата Нью-Йорк против компаний Spirits International B.V., SPI Spirits Limited, SPI Group S.A., Allied Domecq International Holdings B.V., Allied Domecq Spirits and Wines USA, Inc., William Grant & Sons USA, и William Grant & Sons, Inc. а также против Юрия Шефлера и Алексея Олийника (далее — «Нью-Йоркский процесс»), в случае, если такие права не были переданы ранее и таким образом, что они были переданы до того, как были предъявлены требования в Нью-Йоркском процессе, а Цессионарий настоящим принимает все обязательства в отношении данных требований, начиная с 01 февраля 2014 года;

5. предоставляет Цессионарию право зарегистрировать настоящее Соглашение и любые другие документы, которые могут быть необходимы для исполнения настоящего Соглашения, и уведомить о настоящем Соглашении соответствующие патентные ведомства;

6. подтверждает, что не выполнял уступку, передачу прав или продажу, не заключал никаких

entire right, title and interest in all other marks and intellectual property derivative of and/or based on the Trademarks in the U.S., hereinafter referred to as the "Assigned Property", together with the goodwill of the business symbolized by the Assigned Property, to the Assignee effective February 01, 2014. Assignor expressly relinquishes any and all right, title, and interest in and to the Assigned Property in the U.S.;

3. sells, conveys, transfers, assigns and sets over its entire right title and interest in all intellectual property rights of any kind whatsoever relating to the Trademarks in the U.S. and owned by Assignor, including but not limited to trademark registrations, trademark applications, common law trademarks, brands, trade names, domain names, and copyrights (including but not limited to labels and advertisements) together with the goodwill of the business symbolized by it, to Assignee effective February 01, 2014;

4. sells, conveys, transfers, assigns and sets over the right to sue and collect damages for past, present and future infringements, all related pre-existing or current legal and equitable claims against third parties, including the claims that Assignee has attempted to bring in the United States District Court for the Southern District of New York against Spirits International B.V., SPI Spirits Limited, SPI Group S.A., Allied Domecq International Holdings B.V., Allied Domecq Spirits and Wines USA, Inc., William Grant & Sons USA, and William Grant & Sons, Inc. and Yuri Shefler and Alexey Oliynik (the "New York Action"), to the extent such rights were not previously transferred, and as if they had been transferred prior to the time the claims asserted or that would be asserted in the New York Action arose, and Assignee does hereby assume all obligations with respect thereto effective February 01, 2014;

5. authorize the Assignee to record this Assignment and any other documents that may be necessary to effectuate this Assignment and provide notice of this Assignment to respective trademark offices;

6. agrees that no assignment, sale, agreement or encumbrance has been made or entered into which



5

соглашений и не принимал никаких обязательств, которые могли бы противоречить настоящему Соглашению.

Любые противоречия, которые могут возникнуть из настоящего Соглашения, регулируются правом штата Нью-Йорк, кроме противоречий между правовыми принципами, которые потребуют применения любого другого права.

would conflict with this Assignment.

The laws of the State of New York shall govern any controversy arising out of or relating to this Assignment, without regard to conflicts of laws principles that would require the application of any other law.

Дата 03.02.2014
Федеральное агентство по управлению государственным имуществом (Цедент)

Подпись
О.К. Дергунова
Заместитель Министра экономического развития Российской Федерации – руководитель Федерального агентства по управлению государственным имуществом

Dated: February 03, 2014
Federal Agency on State Property Management (Assignor)

By
Name: O.K. Dergunova
Title: Deputy Minister of economic development of the Russian Federation - Head of Federal Agency on State Property Management

Дата 03.02.2014
Федеральное казенное предприятие «Союзплодоимпорт» (Цессионарий)

Dated: February 03, 2014
Federal Treasury Enterprise "Sojuzplodoimport" (Assignee)

Подпись
И.О. Алёшин
Генеральный директор

By
Name: I.O. Aleshin
Title: Director General