

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

FEDERAL TREASURY ENTERPRISE
SOJUZPLODOIMPORT and OAO
"MOSCOW DISTILLERY CRISTALL"

                   Plaintiff,

     v.

SPIRITS INTERNATIONAL B.V., SPI
SPIRITS LIMITED, SPI GROUP S.A., YURI
SHEFLER, ALEXEY OLIYNIK, ALLIED
DOMECQ INTERNATIONAL HOLDINGS
B.V., ALLIED DOMECQ SPIRITS & WINE
USA, INC., WILLIAM GRANT & SONS
USA, WILLIAM GRANT & SONS, INC.,
and STOLI GROUP (USA) LLP

                   Defendants.

14-Cv-712 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

    Defendants William Grant & Sons USA and William Grant & Sons, Inc. (collectively, "WGS") move under Federal Rule of Civil Procedure 12(b)(1) to dismiss Count I against them, for lack of subject-matter jurisdiction. WGS alleges that plaintiffs Federal Treasury Enterprise Sojuzplodoimport and OAO "Moscow Distillery Cristall" (collectively, "FTE") have not sufficiently demonstrated the chain of succession for the Stolichnaya trademarks of which FTE claims ownership and therefore have no statutory standing to bring this suit. (WGS Mot. at 2–4, ECF No. 302.) Because the act-of-state doctrine bars review of the transfer of trademarks between a Soviet state enterprise and the Russian government, WGS's motion to dismiss Count I as asserted against it is denied.

### I. BACKGROUND

    This case stems from the Russian Federation's attempt to recover the trademarks for the well-known vodka brand "Stolichnaya," or "Stoli," which were allegedly stolen from the Russian government during the collapse of the Soviet Union. The suit was brought by FTE, a government-chartered entity of the Russian Federation, and Cristall, a Russian corporation and FTE licensee. (Am. Compl. ¶ 7, ECF No. 154.) The movant, WGS, is an American distributor of Stolichnaya-branded vodka. (Answer ¶ 3, ECF No. 166.)

    FTE's complaint alleges that, in the 1960s and '80s, a Soviet state enterprise named V/O-SPI, later renamed VVO-SPI, registered the Stolichnaya marks with the United States Patent & Trademark Office. (Am. Compl. ¶¶ 2, 24–29). VVO-SPI licensed the use of the marks to

various distributors, including PepsiCo, Ltd., which then sold Stolichnaya-brand vodka in the United States from 1969 to 2000. (*Id.* ¶ 30). In the early '90s, during the collapse of the Soviet Union, VVO-SPI was illegally privatized and renamed "VAO-SPI." (*Id.* ¶¶ 35–36). Through a series of transactions, the newly privatized VAO-SPI then transferred the marks to defendant Spirits International, a subsidiary of the SPI Spirits Group, an international liquor-distribution conglomerate. (*Id.* ¶ 39). In 2002, however, a Russian court found that VVO-SPI had not been lawfully privatized and that the transfer of trademarks to Spirits International was therefore invalid. (*Id.* ¶ 45.) Despite this ruling, Spirits International entered into an agreement with WGS in 2008 to allow WGS to distribute and sell Stolichnaya-branded vodka in the United States. (*Id.* ¶ 58.)

In 2004, FTE filed suit to reclaim ownership of the trademarks. The case was assigned to Judge George B. Daniels, who ultimately dismissed the case, concluding that, because the Russian Federation was the "true" owner of the marks, FTE was not an "assignee" under the Lanham Act and therefore lacked statutory standing to sue. On appeal, the U.S. Court of Appeals for the Second Circuit affirmed. *See Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.* (*FTE I*), 726 F.3d 62, 66 (2d Cir. 2013).

In response to these decisions, Russia issued a formal assignment transferring all of its rights in the marks to FTE. FTE then filed a new lawsuit, which was assigned to Judge Shira A. Scheindlin. Judge Scheindlin again dismissed FTE's suit, concluding that the assignment did not properly confer rights to the marks to FTE under Russian law and that FTE therefore still lacked statutory standing. This time on appeal, the Second Circuit disagreed, holding that the act-of-state doctrine, which "precludes any review whatever of the acts of the government of one sovereign State done within its own territory by the courts of another sovereign State," barred judicial review of the legitimacy of the Russian Federation's assignment. *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.* (*FTE II*), 809 F.3d 737, 743 (2d Cir. 2016) (quoting *First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 763 (1972)). As a result, the Second Circuit concluded, the assignment "transfer[red] whatever rights the Russian Federation may already have [had] in the marks to FTE" and thus provided FTE with the ability to sue for the marks. *Id.* at 744 (emphasis omitted).

On remand, the case was reassigned to this Court in light of Judge Scheindlin's retirement. In May 2016, WGS moved, under Federal Rule of Civil Procedure 12(c), to dismiss Count I as asserted against WGS for lack of statutory standing. In its motion, WGS argued that the Russian Federation (and thus FTE) could not have obtained the Stoli marks from VVO-SPI, because VVO-SPI had already transferred its interest in the marks to a third party, PepsiCo. This Court denied the motion, concluding that further factual development was required to determine whether the earlier agreement had in fact transferred ownership of the marks to PepsiCo. (*See* Sept. 8, 2016 Tr. at 13:11–18, ECF No. 152.)

In March 2020, after extensive discovery, WGS filed the motion at issue here, again seeking to dismiss Count I as asserted against WGS based on FTE's alleged lack of statutory standing to sue. The motion is now fully briefed and ripe for determination.

2

## II. LEGAL STANDARD

As already noted, WGS moves to dismiss Count I of FTE's complaint against WGS—that is, a claim brought under section 32(1) of the Lanham Act—based on FTE's alleged lack of statutory standing. (WGS Mot. at 3–4.) As an initial matter, WGS frames its motion as one under Federal Rule of Civil Procedure 12(b)(1), arguing that FTE's lack of statutory standing deprives this Court of subject-matter jurisdiction. (*Id.* at 4–5.) As a technical matter, a motion to dismiss based on lack of subject-matter jurisdiction made after a responsive pleading—as here—is made under Rule 12(h)(3), not Rule 12(b)(1), though "the distinction . . . is largely academic." *Greystone Bank v. Tavarez*, No. 09-CV-5192, 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010). Even so, WGS's motion is cannot be properly considered under Rule 12(h)(3).

Subject-matter jurisdiction refers to a court's "power to hear a case." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (quoting *Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 81 (2009)). Statutory standing, by contrast, concerns whether a plaintiff "has a cause of action under the statute."[1] *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)). As the Supreme Court has clarified, "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *Lexmark*, 572 U.S. at 128 n.4 (quoting *Verizon Md. Inc. v. Public Serv. Comm'n*, 535 U.S. 635, 642–43 (2002)).

In short, WGS's argument "does not implicate subject-matter jurisdiction," and its motion cannot be made on that basis. *Id.*; *see also Alphas Co. of N.Y. Inc. v. Hunts Point Terminal Produce Coop., Inc.*, No. 1:14-cv-00145 (ALC), 2017 WL 1929506, at *3 (S.D.N.Y. May 9, 2017) ("Defendants' motions to dismiss for lack of [statutory] standing should have been brought under Rule 12(b)(6), not 12(b)(1)."). Thus, the Court will construe the motion as one urging that FTE has failed to state a claim under Rule 12(c). *See* Fed. R. Civ. P. 12(h)(2)(B) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c) . . . .").

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Under that standard, the Court "accept[s] as true the

---

[1] Statutory standing should be distinguished from Article III standing. Article III standing is a constitutionally imposed limitation on federal courts' jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) To have Article III standing, "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark*, 572 U.S. at 125 (quoting *Lujan*, 504 U.S. at 560). Statutory standing, on the other hand, is a nonjurisdictional inquiry that requires courts to "determine the meaning of the congressionally enacted provision creating a cause of action" by "apply[ing] traditional principles of statutory interpretation." *Id.* at 128.

factual allegations of the complaint, and construe[s] all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (en banc). "[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

## III. DISCUSSION

WGS's claim that FTE lacks statutory standing to bring this lawsuit under section 32(1) of the Lanham Act is not a novel one. As detailed above, WGS and its codefendants have repeatedly argued that FTE is not an "assignee" of the Stolichnaya marks and thus lacks statutory standing to sue under the Lanham Act. In the current iteration of this argument, WGS contests the transfer of the Stoli trademarks between VVO-SPI and the Russian Federation because of the lack of a recorded instrument. (WGS Mot. at 7–8.)

In response, FTE claims that this argument is foreclosed by the law of the case because its statutory standing has already been adjudicated by both the Second Circuit and this Court. (FTE Opp'n at 8, ECF No. 310.) FTE is incorrect. The law-of-the-case doctrine "commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 146–47 (2d Cir. 2020) (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)). But "[a]ctual decision of an issue is required to establish the law of the case." 18B Charles Alan Wright et al., *Federal Practice and Procedure* § 4478 (2d ed. 2002). For that reason, "[l]aw of the case does not reach a matter that was not decided." *Id.*

As WGS correctly recognizes, no earlier decision in this case addressed the precise issue raised in its motion here—namely, that the transfer of the Stolichnaya marks from VVO-SPI to the Russian Federation was invalid. (WGS Reply at 8, ECF No. 315.) In *FTE II*, the Second Circuit addressed only whether the assignment of the Russian Federation's ownership in the Stoli marks to FTE could support FTE's statutory standing. *See* 809 F.3d at 740–41. It did not, however, consider the predicate issue of whether the Russian Federation in fact had possession of the marks. Similarly, this Court's prior decision addressed only whether VVO-SPI had fully transferred ownership of the marks to PepsiCo, thereby preventing VVO-SPI from later conveying those marks to the Russian Federation. (*See* Sept. 8, 2016 Tr. at 13:11–18.) The Court did not take up whether there was a valid transfer of marks from VVO-SPI to the Russian Federation. In short, the law-of-the-case doctrine does not foreclose consideration of the arguments raised here.

As an alternative, however, FTE argues that the act-of-state doctrine bars this Court from reviewing the validity of the trademark transfer between VVO-SPI and the Russian Federation, because it is a "wholly intragovernmental transfer of rights." (FTE Opp'n at 9.) On this point, the Court agrees.

4

The act-of-state doctrine, as already noted, "precludes any review whatever of the acts of the government of one sovereign State done within its own territory by the courts of another sovereign State." *FTE II*, 809 F.3d at 743 (quoting *First Nat'l*, 406 U.S. at 763). "Under this doctrine, the validity of the foreign state's act may not be examined 'even if the complaint alleges that the taking violates customary international law,' or the foreign state's own laws." *Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 145–46 (2d Cir. 2012) (citation omitted) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 428 (1964)). "[T]he details of such action or the merit of the result cannot be questioned but must be accepted by our courts as a rule for their decision." *Id.* at 146 (quoting *Ricaud v. Am. Metal Co.*, 246 U.S. 304, 309 (1918)).

In *FTE II*, the Second Circuit held that the act-of-state doctrine precluded this Court from inquiring into the Russian Federation's transfer of marks to FTE, because the actions underlying the transfer "were indisputably acts of a foreign government." 809 F.3d at 743. That reasoning applies with equal force here. The Russian Federation is a foreign government. VVO-SPI was a Soviet state enterprise. Throughout this litigation, FTE has maintained that VVO-SPI transferred all of its rights in the Stolichnaya marks to the Russian Federation and that Russia is VVO-SPI's successor as a matter of Russian law. (*See* Am. Compl. ¶¶ 3-5; *see also* FTE Opp'n at 11.) As in *FTE II*, then, this transfer between VVO-SPI and the Russian Federation "was the act of a foreign sovereign" and "was also 'done' within the boundaries of Russia." 809 F.3d at 744. As such, it is not within the Court's purview. For that reason, WGS's argument fails.

### IV. CONCLUSION

For the reasons set forth above, WGS's motion to dismiss Count I as asserted against it is denied.

Dated: New York, New York
July 29, 2020

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.