UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL TREASURY ENTERPRISE
SOJUZPLODOIMPORT and OAO
"MOSCOW DISTILLERY CRISTALL,"

      Plaintiffs,

   v.

SPIRITS INTERNATIONAL B.V., SPI
SPIRITS LIMITED, SPI GROUP S.A.,
YURI SHEFLER, ALEXEY OLIYNIK,
ALLIED DOMECQ INTERNATIONAL
HOLDINGS B.V., ALLIED DOMECQ
SPIRITS & WINE USA, INC., WILLIAM
GRANT & SONS USA, WILLIAM
GRANT & SONS, INC., STOLI GROUP
(USA) LLC, and ZHS IP AMERICAS
SARL,

      Defendants.

---

14-cv-712 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Defendants Spirits International B.V., SPI Spirits Limited, SPI Group SA, Stoli Group (USA) LLC, ZHS IP Americas Sàrl, Yuri Shefler, and Alexey Oliynik (together, "SPI") have moved for summary judgment on the basis of laches. (Dkt. No. 377.) SPI's motion is denied because both this Court and the U.S. Court of Appeals for the Second Circuit have previously determined that plaintiffs' claims are not barred by laches and SPI has failed to identify an intervening change in controlling law that could justify departure from that prior conclusion.

## I. BACKGROUND

This motion turns largely on procedural history, so the dispute motivating this litigation can be succinctly put: who owns the U.S. trademarks for the Stolichnaya vodka brand? Plaintiffs Federal Treasury Enterprise Sojuzplodoimport ("FTE"), a state-chartered entity of the Russian Federation, and OAO "Moscow Distillery Cristall" contend the trademarks belong to FTE as the Russian Federation's assignee. SPI asserts that it owns the marks.

1

FTE first sued SPI in this District in 2004 (the "2004 suit") based on SPI's allegedly unauthorized commercial use of the Stolichnaya marks in the United States. *See Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 69 (2d Cir. 2013) ("*FTE 2d Cir. 2013*"). After nine years of litigation, the U.S. Court of Appeals for the Second Circuit ultimately dismissed the 2004 suit on August 5, 2013. *Id.* at 66. The Second Circuit held that FTE did not have standing to assert Lanham Act trademark infringement claims on the Russian Federation's behalf because the Russian Federation itself retained too great an interest in the marks and FTE was neither the Russian Federation's "assign" nor its "legal representative." *Id.*

After the Second Circuit dismissed the 2004 suit, the Russian Federation assigned its "entire right, title, and interest in and to the" Stolichnaya marks to FTE. *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l, B.V.*, 809 F.3d 737, 740 (2d Cir. 2016) ("*FTE 2d Cir. 2016*"). Following that assignment, FTE filed this lawsuit against SPI on February 4, 2014. (Dkt. No. 2.)

SPI moved to dismiss the action, contending, *inter alia*, that FTE's Lanham Act claims were brought outside the analogous six-year limitations period of New York law, so a presumption of laches applied which FTE could not overcome. (Dkt. No. 23.) The Court denied that part of SPI's motion, finding that FTE's claims were timely under New York law pursuant to New York's tolling statute. *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 41 F. Supp. 3d 395, 410 (S.D.N.Y. 2014). New York's tolling statute, N.Y. C.P.L.R. § 205(a), provides that, following a dismissal of a timely complaint (with exceptions not relevant here), "the plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination" of the earlier action. Because FTE filed this action one day less than six months after the dismissal of the 2004 suit, the Court found that FTE's claims fell within the ambit of section 205(a) and were timely pursuant to New York law, so no presumption of laches arose as to those claims. 41 F. Supp. 3d at 410. The Court also found that SPI had not proven laches independent of the presumption. *Id.*

The Second Circuit affirmed those aspects of the Court's decision in 2016. *FTE 2d Cir. 2016*, 809 F.3d at 746. The court reasoned:

> Under N.Y. C.P.L.R. 205(a), a dismissed claim can be brought again (provided it is not substantively barred) within six months of the termination of the prior litigation. That is what happened here. [FTE's Lanham Act] claims arose in 2001 . . . . The prior litigation was brought in 2004 and lasted until 2013, when the [Lanham Act] claims were dismissed in [*FTE 2d Cir. 2013*]; FTE then commenced the present suit within six

2

months.  Because the most analogous New York statute of limitations for FTE's [Lanham Act] claims is the six-year statute of limitations for fraud, and only three years had lapsed before the prior suit was brought, FTE's [Lanham Act] claims were timely under New York's statute of limitations. Therefore, the presumption of laches never arose.  Nor has SPI proven the laches defense independently of the presumption. Accordingly, the district court correctly concluded that FTE's [Lanham Act] claims were not barred by laches.

*Id.* (citation omitted).

## II.  SPI'S MOTION FOR SUMMARY JUDGMENT

SPI has now moved for summary judgment on the basis of laches.  SPI urges that the Court should jettison its own and the Second Circuit's determinations that FTE's Lanham Act claims were timely pursuant to N.Y. C.P.L.R. § 205(a) based on a later-decided case, *Craft EM CLO 2006-1, Ltd. v. Deutsche Bank AG*, 178 A.D.3d 552 (N.Y. 1st Dep't 2019) ("*Craft II*").  (*See* Dkt. No. 396.)  SPI contends that *Craft II* constitutes an intervening change in controlling law requiring this Court to depart from the law of the case and the ruling of the Second Circuit to determine that, in fact, N.Y. C.P.L.R. § 205(a) does *not* apply to FTE's claims.

A summary of the *Craft II* decision is necessary.  The plaintiff Craft sold investors notes linked to a portfolio of loans and derivative transactions.  *See Craft EM CLO 2006-1, Ltd. v. Deutsche Bank AG*, Index No. 656152/16, 2017 WL 3527488, at *1 (N.Y. Sup. Ct., N.Y. Cnty. Aug. 14, 2017) ("*Craft I*").  Craft had an interest in the portfolio pursuant to credit default swap agreements between Craft and Deutsche Bank.  *Id.*  A trustee, HSBC, held the proceeds of Craft's sale of the notes to investors.  *Id.*  In an agreement between Craft and HSBC as trustee, Craft granted HSBC "all of its right, title, interest and estate in, to and under the" swap agreements between Craft and Deutsche Bank. *Id.*  Thereafter, Craft sued Deutsche Bank for breach of the credit default swap agreements between Craft and Deutsche Bank.  *Id.*  The New York trial court dismissed Craft's first suit against Deutsche Bank on the grounds that Craft lacked standing to sue because Craft had transferred its right to sue Deutsche Bank for breach of the credit default swap agreements to HSBC.  *Id.* at *2.

After the trial court dismissed Craft's original suit, HSBC assigned its rights in the swap agreements back to Craft.  *Id.*  Craft refiled the suit on the theory that it had cured its lack of standing and was within the six-month grace period of N.Y. C.P.L.R. § 205(a) for refiling a dismissed suit.  *Id.*  The trial court nevertheless dismissed Craft's refiled suit and found that Craft's claims "are time-barred under the applicable statute of

3

limitations, as HSBC had no viable claims to assign as of the execution of the" assignment agreement transferring HSBC's rights in the credit default swap agreements back to Craft. *Id.* at \*3. The trial court reasoned that "Craft, acting as the Trustee, failed to establish that it is the same 'plaintiff' representing the same interests as the plaintiffs in the [earlier] action." *Id.* at \*4. "Accordingly, Craft, standing in the Trustee's shoes, does not benefit from the [earlier action's] filing date, which involved the claims of the Issuer and not the Trustee." *Id.* The trial court continued, "To afford Craft protection in this matter under CPLR 205(a) would go beyond the statute's longstanding purpose to provide a plaintiff, or her representative, who prosecuted an initial action, a second chance should her action terminate for reasons not involving the merits." *Id.* (citing *Reliance Ins. Co. v. PolyVision Corp.,* 9 N.Y.3d 52, 56 (2007)). "Here, because its claims were already time-barred and thus stale at the time of the assignment, the New York Savings Statute is not applicable to Craft's claims [against Deutsche Bank]." *Id.* "To allow Craft to proceed with these claims under CPLR 205(a) would 'breathe life into otherwise stale claims.'" *Id.* (quoting *Reliance,* 9 N.Y.3d at 58).

The First Department affirmed, holding that "plaintiff, who originally timely sued as the 'issuer' under the swap agreements, could not rely on CPLR 205(a) when it refiled the suit as assignee of the trustee's claims, which were time-barred when assigned." *Craft II*, 178 A.D. 3d at 553 (citing *Reliance*, 9 N.Y.3d at 57).

## III. ANALYSIS

"[T]he mandate rule, a branch of the law-of-the-case doctrine, . . . rigidly binds the district court, barring it from considering issues explicitly or implicitly decided on appeal." *United States v. Aquart*, 92 F.4th 77, 87 (2d Cir. 2024) (citations and internal quotation marks omitted). The mandate rule "is subject to only 'narrow exception' for 'compelling circumstances, consisting principally of (1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice.'" *Id.* (quoting *United States v. Valente*, 915 F.3d 916, 924 (2d Cir. 2019)). The Second Circuit explicitly decided in 2016 that FTE's Lanham Act claims were timely pursuant to the six-month grace period of N.Y. C.P.L.R. § 205(a). 809 F.3d at 746. The Court is therefore bound by that determination under the mandate rule unless an exception to the rule applies.

SPI contends that the First Department's decision in *Craft II* is an "intervening change in controlling law" that frees this Court from the "rigid[] binds" of the mandate rule. SPI is incorrect. To begin with, *Craft II* is simply a brief, barebones, four-paragraph order from an intermediate New York appellate court which lower New York courts have cited fleetingly a half dozen times in the six-and-a-half years since it was issued. Moreover, *Craft II* is neither controlling nor a change in law.

4

*First*, *Craft II* is not controlling on federal courts and is therefore insufficient to permit the Court to depart from the Second Circuit's decision. State intermediate appellate court decisions are persuasive authority to the extent they illuminate how the highest state court might rule on a matter of state law. *See, e.g.*, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) ("We are bound, of course, by the law of New York as interpreted by the New York Court of Appeals. We consider the language of the state intermediate appellate courts to be helpful indicators of how the state's highest court would rule." (citations and internal quotation marks omitted)). But the decisions of state intermediate appellate courts are not themselves controlling on federal courts applying state law. *Id.*; *see Comm'r v. Bosch's Estate*, 387 U.S. 456, 465 (1967) ("Even in diversity cases, [the U.S. Supreme] Court has further held that while the decrees of lower state courts should be attributed some weight, the decision is not controlling where the highest court of the State has not spoken on the point." (cleaned up)).

*Second*, *Craft II* is not a change in law but rather an application of a preexisting legal rule. Indeed, *Craft II* does not purport in its four paragraphs to establish new law or to effect a dramatic change in the legal landscape. Instead, the First Department's decision cites the New York Court of Appeals' earlier decision in *Reliance Insurance Co. v. PolyVision Corp.*, 9 N.Y.3d 52 (2007), to support the conclusion that Craft should not get the benefit of N.Y. C.P.L.R. § 205(a).

In *Reliance*, the New York Court of Appeals determined that N.Y. C.P.L.R. § 205 does not permit a corporation to refile an action originally commenced in the name of a different, related corporate entity and subsequently dismissed for naming the wrong plaintiff. 9 N.Y.3d at 54. The *Reliance* court articulated a "same plaintiff" rule, stating that section 205 bestows a six-month grace period only "on 'the plaintiff' who prosecuted the initial action" and that the statutory phrase "the plaintiff" does not "include an individual or entity other than the original plaintiff." *Id.* at 57. The New York Court of Appeals emphasized that section 205 was not meant to apply to a new plaintiff seeking to enforce "its own, separate rights, rather than the rights of the plaintiff in the original action," and stated that section 205 should apply only where "it is the same person or entity whose rights are sought to be vindicated in both actions." *Id.* (citation omitted).

Both the state trial court in *Craft I* and the First Department in *Craft II* simply applied *Reliance's* "same plaintiff" rule to the facts of that case. The *Craft I* and *Craft II* courts distinguished between the plaintiff in the original action—Craft as issuer of the notes—and the plaintiff in the refiled action—HSBC as trustee through its assignee, Craft—and found that *Reliance*'s "same plaintiff" rule was not satisfied. *Craft II*

therefore was not a "change in controlling law" for purposes of the mandate rule, and the Court remains bound by the Second Circuit's determination.

## IV. CONCLUSION

SPI's motion for summary judgment on the basis of laches is denied because *Craft II* is not an intervening change in controlling law that permits this Court to disregard the Second Circuit's determination that FTE's claims are timely and are not barred by laches.


Dated:  New York, New York
        April 21, 2026


SO ORDERED:

Sidney H. Stein, U.S.D.J.

6