UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL TREASURY ENTERPRISE
SOJUZPLODOIMPORT and OAO
"MOSCOW DISTILLERY CRISTALL,"

Plaintiffs,

v.

SPIRITS INTERNATIONAL B.V., SPI
SPIRITS LIMITED, SPI GROUP S.A.,
YURI SHEFLER, ALEXEY OLIYNIK,
ALLIED DOMECQ INTERNATIONAL
HOLDINGS B.V., ALLIED DOMECQ
SPIRITS & WINE USA, INC., WILLIAM
GRANT & SONS USA, WILLIAM
GRANT & SONS, INC., STOLI GROUP
(USA) LLC, and ZHS IP AMERICAS
SARL,

Defendants.

---

14-cv-712 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Plaintiffs have moved for partial summary judgment, requesting a declaration that the All Union Foreign Economic Association Sojuzplodoimport ("VVO") did not legally transform or privatize into the Foreign Economic Joint Stock Company Sojuzplodoimport ("VAO"). The basis for plaintiffs' motion is the equitable doctrine of collateral estoppel: plaintiffs contend that the Court should not permit relitigation of the legality *vel non* of VVO's transformation into VAO because courts in the Netherlands and in Russia have previously determined that the transformation was invalid.

As set forth below, the Court will not apply the doctrine of collateral estoppel based on the Dutch or Russian decisions. Even assuming the foreign judgments were entitled to recognition and the requirements for collateral estoppel were satisfied, the differing procedural rules in the Netherlands and Russia and the extensive discovery already conducted in this litigation would make collateral estoppel based on these foreign judgments unfair in this case. Accordingly, the Court in its discretion declines to apply collateral estoppel.

1

## I. BACKGROUND

As the Court has recently noted, *see Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, No. 14-cv-712, 2026 WL 1075422, at *1 (S.D.N.Y. Apr. 21, 2026), this litigation revolves around a single question: who owns the U.S. trademarks for the Stolichnaya vodka brand? Plaintiffs Federal Treasury Enterprise Sojuzplodoimport ("FTE"), a state-chartered entity of the Russian Federation, and OAO "Moscow Distillery Cristall" contend the trademarks belong to FTE as the Russian Federation's assignee. Defendants Spirits International B.V., SPI Spirits Limited, SPI Group SA, Stoli Group (USA) LLC, ZHS IP Americas Sàrl, Yuri Shefler, and Alexey Oliynik (together, "SPI") along with William Grant & Sons USA and William Grant & Sons, Inc. (together, "William Grant") assert that SPI owns the marks.

A key question in determining whether it is SPI or the Russian Federation that owns the Stolichnaya marks today is whether VVO—the original owner of the marks— properly transformed into VAO around the time of the collapse of the Soviet Union. Plaintiffs contend that VVO did not properly transform into VAO and therefore VVO retained the Stolichnaya marks, which were eventually transferred to the Russian Federation. (*See* Dkt. No. 338, SPI Response to FTE's Local Rule 56.1 Statement ("SPI 56.1 Response") at 4.)[1] Defendants contend that VVO properly transformed into VAO and therefore VAO became the owner of the Stolichnaya marks in 1992 and that, through a series of transfers, SPI eventually obtained the marks as the successor to VAO. (*See id.* at 3–5.)

FTE and SPI have litigated the question of the legality of VVO's transformation into VAO in several jurisdictions around the world, including in the Netherlands and in Russia itself. (*Id.* at 6–7; Dkt. No. 349, FTE's Response to Defendants' Counter 56.1 Statements ("FTE 56.1 Reply") at 52, 57.) The Dutch courts determined that VAO was not the lawful successor to VVO under either Russian or Soviet law. (SPI 56.1 Response at 8, 12–13.) The Russian courts also determined that VAO was not the legal successor to VVO. (*Id.* at 48–49.)

Plaintiffs now ask this Court to apply collateral estoppel based on the Dutch and Russian determinations that VAO was not the lawful successor to VVO and to declare that the invalidity of the transformation of VVO into VAO has been established for purposes of this litigation. (Dkt. No. 323 ("Mot.") at 1.) As noted above, the Court declines to do so.

---

[1] Facts drawn from the parties' Local Rule 56.1 statements are undisputed unless otherwise noted.

## II.  APPLICABLE LAW

### A.  Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that a party may move for summary judgment on any claim or defense or on any part of any claim or defense. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### B.  Preclusive Effect of Foreign Judgments

The state of the law regarding the preclusive effect of foreign judgments in American civil litigation is decidedly murky. *See* Fed. Practice & Procedure (Wright & Miller) § 4473 ("The preclusion effects of judgments entered in other countries cannot be described here in any systematic way."); *Gamble v. United States*, 587 U.S. 678, 701 (2019) (noting in dicta that "the preclusive effect of a foreign judgment in civil litigation . . . even today is not uniformly accepted in this country"). This opacity is exacerbated by many courts' use of the same term — "comity" — simultaneously to describe and prescribe American courts' deference to foreign adjudications in different contexts. *See Diorinou v. Mezitis*, 237 F.3d 133, 139 (2d Cir. 2001) (noting that the principle of "comity" is employed regarding American courts' deference to foreign adjudication in three distinct contexts: (1) "whether to proceed with litigation properly within [the U.S. court's] jurisdiction because of the pendency or availability of litigation in a foreign forum," (2) "whether to enforce a foreign judgment," and (3) "whether to accept the adjudication of a foreign tribunal on a cause of action or a particular issue"). As a result of this ambiguity in courts' use of "comity," many broad statements about "comity" are inapplicable or inapt to the sort of "comity" most relevant to this motion — "comity" as the preclusive effect in this Court of a foreign forum's determination of a claim or issue. The Court will apply the following principles to assess the potential preclusive effect of the Dutch and Russian judgments.

"It is well-established that United States courts are not *obliged* to recognize judgments rendered by a foreign state, but [they] may *choose* to give res judicata effect to foreign judgments on the basis of comity." *Id.* at 139–40 (quoting *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 178–79 (S.D.N.Y. 1995)); *accord Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004).

Analysis of the potential preclusive effect of a foreign judgment logically proceeds in two stages: (1) the court must determine whether to recognize a foreign judgment and (2) if the foreign judgment is recognized, the court must determine the preclusive effect, if any, that should be afforded to the foreign judgment.

"In determining the preclusive effect of a foreign judgment, a court must first formally recognize the foreign judgment." *China Shipping Container Lines Co. v. Big Port Serv. DMCC*, No. 15-cv-2006, 2019 WL 9362547, at *5 (S.D.N.Y. Jan. 15, 2019) (citing *Alfadda v. Fenn*, 966 F. Supp. 1317, 1327 (S.D.N.Y. 1997), *aff'd* 159 F.3d 41 (2d Cir. 1998)), *aff'd* 803 F. App'x 481 (2d Cir. 2020) (summary order). Under federal law, the recognition of foreign judgments is governed by principles of comity. *Id.*

As the U.S. Court of Appeals for the Second Circuit has recognized, *see Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 456 (2d Cir. 1985), the leading case on the concept of comity is *Hilton v. Guyot*, 159 U.S. 113 (1895). *Hilton* described comity as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." 159 U.S. at 164. In *Hilton*, the U.S. Supreme Court held that it is appropriate to recognize and enforce a foreign judgment when "there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect." *Id.* at 202–03.

In short, "[c]omity will be granted to the decision or judgment of a foreign court if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." *Cunard*, 773 F.2d at 457. "Indeed, as long as the foreign court abides by 'fundamental standards of procedural fairness,' granting comity is appropriate." *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993) (citing *Cunard*, 773 F.2d at 457). Recognition of a foreign judgment as a matter of comity is within the court's discretion, and the burden of establishing that recognition of a foreign judgment as a matter of comity is appropriate falls on the party seeking recognition. *Id.; accord In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 75 (S.D.N.Y. 2007).

In the context of issue preclusion based on foreign judgments, "[t]he law is unsettled . . . as to what exactly 'comity' entails; thus it is primarily principles of fairness and reasonableness that should guide domestic courts in their preclusion determinations." *Films by Jove, Inc. v. Berov*, 250 F. Supp. 2d 156, 176–77 (E.D.N.Y. 2003) (quoting *Gordon & Breach Sci. Publishers*, 905 F. Supp. at 178–79). "[D]eference to a foreign adjudication as a matter of comity is by no means automatic." *Id.* at 191–92

4

(citing *Cunard*, 773 F.2d at 457).  Deciding whether deference to a foreign determination of a particular issue or claim is appropriate as a matter of comity "often entails consideration of the fairness of a foreign adjudicating system" as a whole, although "a case-specific inquiry is sometimes appropriate."  *Diorinou*, 237 F.3d at 143.

Courts often turn to the usual principles of collateral estoppel, also known as issue preclusion, in evaluating the preclusive effect of a foreign determination.  *See China Shipping Container Lines*, 2019 WL 9362547, at *6; *Alfadda*, 966 F. Supp. at 1330; *F.T. Mar. Servs. Ltd. v. Lambda Shipholding Ltd.*, 533 F. Supp. 3d 149, 155 (S.D.N.Y. 2021).

"Collateral estoppel bars relitigation of an issue that has already been fully and fairly litigated in a prior proceeding."  *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011) (internal quotation marks and citation omitted).  Such an issue is precluded when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."  *Id.* (citation omitted); *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79–80 (2d Cir. 2019).

Even where all four of the legal prongs for collateral estoppel have been established, however, the court "must still assure itself that it is fair to apply the doctrine."  *Bifolck*, 936 F.3d at 84 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)).  "[C]ollateral estoppel is an equitable doctrine—not a matter of absolute right. Its invocation is influenced by considerations of fairness in the individual case." *PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004).  Indeed, the U.S. Supreme Court has emphasized that district courts have "broad discretion" in deciding whether to apply collateral estoppel.  *Parklane Hosiery*, 439 U.S. at 331; *accord Bifolck*, 936 F.3d at 80 ("We review the district court's analysis of the four-prong legal test [for collateral estoppel] *de novo*.  The district court's fairness analysis . . . is reviewed for abuse of discretion." (citations omitted)).

"In exercising this discretion, a court typically considers judicial economy and the fairness of relying on collateral estoppel to either assert or preclude certain claims." *Stonewell Corp. v. Conestoga Title Ins. Co.*, No. 04-cv-9867, 2009 WL 3075661, at *5 n.12 (S.D.N.Y. Sept. 25, 2009) (citing *Parklane Hosiery*, 439 U.S. at 329–31).  *Parklane Hosiery* suggests courts should look to whether "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant," 439 U.S. at 330, and whether "the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result," *id.* at 331.  Other factors relevant to the fairness inquiry "include whether the defendant had little to no incentive to raise the issue in the earlier action," "whether the underlying case was tried before a jury or a judge sitting as trier of fact,"

and "whether applying collateral estoppel would [increase] the efficiency of the proceedings." *Bifolck,* 936 F.3d at 84 (citation modified).

## III. APPLICATION

The Court declines to apply collateral estoppel based on the Dutch or Russian judgments in its discretion in light of considerations of fairness in this action.

### A. Dutch Proceedings

As an initial matter, the Court will recognize the judgments of the Dutch courts.

The standard for recognition of the Dutch judgments is met here. There is no apparent dispute between the parties that the Dutch courts were courts of competent jurisdiction and generally abide by fundamental standards of procedural fairness such that recognizing decisions of Dutch courts is appropriate as a matter of comity. *See, e.g., Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.,* 874 F.3d 604, 617–19 (9th Cir. 2017) (recognizing Dutch judgment pursuant to state law for enforcement of foreign judgments); *In-Tech Mktg. Inc. v. Hasbro, Inc.,* 719 F. Supp. 312, 316–17 (D.N.J. 1989) ("Dutch courts have been found to be courts of competent jurisdiction." (citing *Dragon v. Gebr. Van Weelde Scheepvaarkantoor,* 574 F. Supp. 367, 372 (S.D.N.Y. 1983))); *Evolution Online Sys., Inc. v. Koninklijke Nederland N.V.,* 41 F. Supp. 2d 447, 451 (S.D.N.Y. 1999) (determining Dutch courts were adequate forum in forum *non conveniens* case); *Potomac Cap. Inv. Corp. v. Koninklijke Luchtavaapt Maatschaplj N.V.,* No. 97-cv-8141, 1998 WL 92416, at *5 (S.D.N.Y. Mar. 4, 1998) (same); (SPI 56.1 Response at 46). Defendants have produced no evidence of fraud or other special reasons to deny comity to the Dutch courts' judgments in this instance.

SPI contends that the Court should refuse to recognize the Dutch judgments because American-style pre-trial discovery and live witness testimony are generally unavailable in Dutch litigation, which SPI states resulted in a materially incomplete record in the Dutch proceedings. (Dkt. No. 337 ("SPI Opp.") at 11–18.) But "it is well established that mere divergence from American procedure does not render a foreign judgment unenforceable." *Sarl Louis Feraud Int'l v. Viewfinder, Inc.,* 489 F.3d 474, 479 (2d Cir. 2007) (citation omitted); *see Ackermann v. Levine,* 788 F.2d 830, 842 (2d Cir. 1986) ("We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home." (quoting *Loucks v. Std. Oil Co.,* 120 N.E. 198, 201 (1918) (Cardozo, J.))). Different procedural rules—including limits on the availability of pretrial discovery—do not render the Dutch judicial system fundamentally unfair such that a denial of recognition is appropriate. *See In-Tech Mktg.,* 719 F. Supp. at 316–17 ("[T]he fairness of the Dutch court procedures does not depend on its similarity or dissimilarity with United States court procedure but only upon its basic fairness."

(citing *Ingersoll Mill. Mach. Co. v. Granger*, 833 F.2d 680, 688 (7th Cir. 1987))); *Midbrook Flowerbulbs Holland*, 874 F.3d at 617–18.

Turning to the preclusive effect of the Dutch judgments, the Court determines that the Dutch judgments satisfy the four legal criteria for the application of collateral estoppel.

The first, second, and fourth requirements of collateral estoppel are satisfied. The parties agree that the identical issue of the propriety of VVO's transformation was raised, actually litigated, and decided in the Dutch proceedings, and that resolution of that issue was necessary to the Dutch courts' final judgment regarding ownership of the Stolichnaya trademarks in Belgium, the Netherlands, and Luxembourg. (*See* SPI 56.1 Response at 8 ("[T]he SPI Defendants do not dispute that the Dutch courts resolved the issue of whether VAO was the lawful successor to VVO in order to determine the issue of trademark ownership in the Benelux countries [i.e., Belgium, the Netherlands, and Luxembourg].").)

The parties dispute whether the third requirement of collateral estoppel—that the party against whom collateral estoppel is sought had a "full and fair opportunity to litigate" the issue—is satisfied. SPI contends that the limitations on discovery and live witness testimony in the Dutch proceedings deprived it of a "full and fair opportunity to litigate."[2]

SPI had a full and fair opportunity to litigate the legality of VVO's transformation into VAO in the Dutch proceedings despite the Dutch judicial system's limits on discovery and different procedural rules from those of American courts. "As the [U.S.] Supreme Court has explained, the 'full and fair opportunity' to litigate standard requires that a prior proceeding satisfy the constitutional minima of due process." *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 703–04 (S.D.N.Y. 2018) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82 (1982)), *aff'd in part, appeal dismissed in part sub nom. Exxon Mobil Corp. v. Healey*, 28 F.4th 383 (2d Cir. 2022); *see also Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1233 (2d Cir. 2006); *Rameau v. N.Y. State Dep't of Health*, 741 F. Supp. 68, 71 n.3 (S.D.N.Y. 1990) ("[A] full and fair litigation opportunity is provided if the procedures in the initial forum meet the minimum demands of procedural due process."). The Dutch courts' significant limits on discovery do not

---

[2] William Grant contends that it cannot be subject to collateral estoppel based on the Dutch or Russian proceedings because it was not a party to those proceedings. (Dkt. No. 335.) Plaintiffs counter that William Grant can be subject to collateral estoppel because it is in privity with SPI. (Dkt. No. 348 at 11–17.) The Court need not decide this question because, as set forth below, the Court declines to apply collateral estoppel based on the Dutch or Russian judgments against any defendant.

violate this standard because "the right to pretrial discovery is not a part of the U.S. concept of due process, let alone of international due process." *Soc'y of Lloyd's v. Ashenden*, 233 F.3d 473, 480 (7th Cir. 2000) (citations omitted); *see Midbrook Flowerbulbs Holland*, 874 F.3d at 618. Similarly, the Dutch courts' rejection of SPI's request to present live witnesses (SPI 56.1 Response at 69) does not violate the minima of due process such that SPI was denied a full and fair opportunity to litigate in the Dutch proceedings when the Dutch courts accepted evidence from SPI. *Cf. Kremer*, 456 U.S. at 483 ("[N]o single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause. The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." (citations omitted)).

Nevertheless, the Court determines that it would be neither fair nor reasonable to apply collateral estoppel in this action to preclude litigation concerning VVO's transformation into VAO based on the Dutch judgments.

First, while differences in the procedural rules and discovery available to SPI in the Dutch courts did not deprive SPI of a "full and fair opportunity to litigate" in those proceedings, such differences weigh against the application of collateral estoppel here to preempt presentation of evidence gathered in the considerably broader discovery in this litigation relevant to VVO's transformation into VAO.[3] *See Gordon & Breach Sci. Publishers*, 905 F. Supp. at 179 & n.10 (declining to give preclusive effect to foreign judgment due in part to "civil law procedural differences" and noting that, "with regard to civil law judgments, the rationale behind preclusion is weaker, due to substantial differences in the laws of procedure and evidence and in judicial training"); *Maersk, Inc. v. Neewra, Inc.*, No. 05-cv-4356, 2010 WL 2836134, at *13 (S.D.N.Y. July 9, 2010) (declining to defer to foreign judgment in light of "minimalist" evidentiary procedures in foreign court), *aff'd sub nom. Maersk, Inc. v. Sahni*, 450 F. App'x 3 (2d Cir. 2011); *In re Parmalat Sec. Litig.*, 493 F. Supp. 2d 723, 737 n.74 (S.D.N.Y. 2007) (suggesting claim preclusion might not be appropriate if foreign court's decision "involved no discovery or formal presentation of evidence"). The U.S. Supreme Court has stated that one "situation where it might be unfair to apply offensive [collateral] estoppel is where the second action affords the defendant procedural opportunities unavailable in the

---

[3] The inquiry into whether a party had a "full and fair opportunity to litigate" in the first proceeding (the third prong of the collateral estoppel analysis discussed above) is distinct from a court's analysis of whether application of collateral estoppel would be fair in the second proceeding, which is an equitable determination within the court's discretion. *See, e.g., Bifolck*, 936 F.3d at 80–81 (district court's equitable determination of fairness of application of collateral estoppel is distinct from district court's analysis of four legal prerequisites for collateral estoppel).

first action that could readily cause a different result," *Parklane Hosiery*, 439 U.S. at 330–31, and expressly noted that "[i]f, for example, the defendant in the first action was forced to defend in an inconvenient forum and therefore was unable to engage in full scale discovery or call witnesses, application of offensive collateral estoppel may be unwarranted," *id.* at 331 n.15. *Accord Sprecher v. Graber*, 716 F.2d 968, 972 (2d Cir. 1983) (declining to give preclusive effect to summary subpoena enforcement proceedings in part because the party was forced to litigate "without the aid of discovery").

This is a case in which the procedural differences between the Dutch courts and this Court are significant and could readily produce a different result such that application of offensive collateral estoppel against defendants (who did not choose the Dutch forum) based on the Dutch judgments would be unfair. *Parklane Hosiery*, 439 U.S. at 330–31, 331 n.15. Unlike in the Netherlands, the years-long pretrial discovery proceeding in this litigation has been extensive. According to SPI, that broader discovery has uncovered significant new evidence that was unavailable to SPI in the Dutch proceedings and which the Dutch courts did not consider. This counsels in favor of permitting the parties to litigate the issue of VVO's transformation based on all the evidence uncovered in the discovery process in this action rather than hamstringing defendants through the application of collateral estoppel after extensive discovery in this action.

Other fairness factors also counsel against applying collateral estoppel based on the Dutch judgments, including the easier availability of live witness testimony in U.S. courts. Moreover, unlike in the Netherlands, this case will be tried to a jury rather than to a judge. *See Bifolck,* 936 F.3d at 84 (different trier of fact weighs against application of collateral estoppel as a matter of fairness). There will be a trial in this action regardless of whether the Court affords preclusive effect to the Dutch judgments, so judicial economy does not weigh heavily in favor of applying collateral estoppel. *See id.*

Accordingly, in light of the factors informing the Court's analysis of the fairness of applying collateral estoppel in this case, the Court determines that it would be unfair to apply collateral estoppel to prevent SPI from asserting the propriety of VVO's transformation into VAO at trial. The Court therefore will not afford preclusive effect to the Dutch judgments.

### B.   Russian Proceedings

Plaintiffs devote roughly four pages of their opening memorandum to summarizing the Russian proceedings and to their contention that the Court should apply collateral estoppel on the question of VVO's transformation into VAO based on the Russian courts' judgments. (Mot. at 7–9, 19–22.) Plaintiffs do not address the Russian judgments at all in their reply brief.

As set forth above, recognition of a foreign judgment as a matter of comity is in the Court's discretion, and the burden of establishing that recognition of the Russian judgments as a matter of comity is appropriate falls on plaintiffs as the parties seeking recognition. *Allstate Life Ins.*, 994 F.2d at 999. In light of the paucity of detail plaintiffs have provided about the Russian proceedings, the Court would be hard-pressed to find that plaintiffs have carried this burden. The Court need not decide this question, however, because the Court in its discretion finds that the application of collateral estoppel based on the Russian judgments would be inappropriate in this case even if the Court were to recognize the Russian judgments as a matter of comity and find that the four legal prerequisites for collateral estoppel were satisfied.

The limited information the Court does have regarding the Russian proceedings demonstrates that, for the same reasons set forth above with respect to the Dutch proceedings, it would be unfair to apply collateral estoppel based on the Russian judgments.

Similar to the limited discovery available in the Dutch judicial system, SPI has represented that in Russian arbitrazh courts, "[i]n contrast to U.S. discovery, the Code of Arbitrazh Procedure gives a litigant limited ability to obtain evidence from other parties." (Dkt. No. 342 ¶ 9.) "A litigant before the arbitrazh court has no right to request categories of documents from an adversary or third party," and "[a]lthough a litigant may petition the court for an order requiring an adversary or third party to produce specifically identified documents, arbitrazh courts have wide discretion in deciding whether to grant such petitions." (*Id.*) "The participation of witnesses in arbitrazh proceedings is rare and limited" and, even when witnesses do testify, "U.S.-style cross examination of witnesses is generally not possible in arbitrazh proceedings." (*Id.* ¶ 10.) The Russian courts heard no witness testimony in the litigation between FTE and SPI that resulted in the judgments against SPI. (FTE 56.1 Reply at 26.)

In light of these procedural differences between the Russian courts and this Court, this is a case where it would be unfair to apply offensive collateral estoppel because this litigation "affords the defendant[s] procedural opportunities unavailable in the first action that could readily cause a different result." *Parklane Hosiery*, 439 U.S. at 330–31. In the Russian proceedings, SPI "was forced to defend in an inconvenient forum" where it was "unable to engage in full scale discovery or call witnesses," which suggests that "application of offensive collateral estoppel may be unwarranted." *Id.* at 331 n.15.

As set forth above, this action will be tried to a jury rather than to a judge as was the case in the Russian proceedings. *See Bifolck*, 936 F.3d at 84. Giving preclusive effect to the Russian judgments would not obviate the need for a trial in this action, so judicial economy does not weigh heavily in favor of applying collateral estoppel. *See id.*

10

In light of these factors, the Court finds—even assuming the Russian judgments should be recognized as a matter of comity and the four legal prerequisites for collateral estoppel are met—that application of collateral estoppel based on the Russian judgments would be unfair in this case. The Court thus will not afford preclusive effect to the Russian judgments.

## IV. CONCLUSION

Plaintiffs' motion for partial summary judgment (Dkt. No. 322) is denied because it would be unfair to apply collateral estoppel on the basis of either the Dutch or the Russian judgments regarding the validity of VVO's transformation into VAO.

Dated: New York, New York
      May 15, 2026

SO ORDERED:

Sidney H. Stein, U.S.D.J.

11